

**FILED**

JAN 7 2014

U.S. COURT OF
FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

**GUARDIAN ANGELS MEDICAL SERVICE
DOGS, INC.,**

       Plaintiff,

   v.

**UNITED STATES OF AMERICA,**

       Defendant.

---

Case No.



14-    20C

## <u>COMPLAINT</u>

COMES NOW, plaintiff, Guardian Angels Medical Service Dogs, Inc. ("GA"), and hereby brings a civil action for breach of contract against the defendant, United States of America through the Department of Veteran Affairs ("VA" or "Government") in Contract No. VA248-BP-0218 ("Contract"), including all amendments made thereto, and states its claim as follows:

### <u>Parties</u>

1.     Plaintiff, GA, is a Florida Domestic Not-For-Profit Corporation with its principle place of business in Levy County, Florida.

2.     Defendant, VA, is the United States Government acting in its capacities as the Depart of Veteran Affairs acting under Contract No. VA248-BP-0218.

### <u>Jurisdiction</u>

3.     This is an action for damages arising under Contract No. VA248-BP-0218 resulting from VA's alleged breach for cause, and denial of GA's claim that VA breached for convenience as more fully described herein. GA filed a dispute making a claim with the Contracting Officer after it made its a determination that VA allegedly breached the Contract for

cause and not for convenience as stated therein. As such, this Court has jurisdiction over the matter pursuant to 41 U.S.C. § 7104(b).

Summary

4.     GA was created for the charitable purpose of rescuing, raising, training and then donating medical service/assistance dogs to mentally and/or physically impaired individuals to provide assistance, independence and improve the quality of life of both the recipient and the dog.

5.     On June 26, 2011, GA and VA entered into firm fixed-price blanket purchase agreement Contract No. VA248-BP-0218. The Contracted is attached herein and marked as **Exhibit A**.

6.     On or about January 2012, the Contract was placed on hold by the VA. The contractual work between the GA and the VA did not resume again until the amended contract ("Amended Contract") began on June 18, 2012. There were subsequent revisions made on July 5, 2012 and August 5, 2012, however the pertinent provisions of the Contract remained the same in the Amended Contract and subsequent revisions. Please see the Amended Contract of June 18, 2012 along with the subsequent revisions of July 5, 2012 and August 5, 2012 attached herein and marked as **Composite Exhibit B**.

7.     The purpose of the Contract/Amend Contract, (collectively referred to herein as "Contracts"), was for GA to provide service dogs to veterans suffering from post traumatic stress disorder (PTSD) and the VA would cover the cost of the service dogs.

8.     The Contracts entered between GA and VA are firm-fixed price, blanket purchase agreement. Under section A.5 the Government reserved the right to make multiple awards to accommodate the indefinite quantity of service dogs to be produced.

9.      As stated by the Contracts GA and VA both had an understanding that there would be a high demand for service dogs, however, the specific number of dogs need was unknown.

10.     Pursuant to section A.2a of the Contracts GA was required to have the maximum capacity of providing two hundred (200) service dogs to disabled veterans under the program. The Government, under state section, still reserved the right to revise the maximum requirement if necessary.

11.     Prior to entering the Contracts, GA generally produced service dogs at a much slower pace since the demand requirements and funding support were significantly less than the Contracts with the Government.

12.     In anticipation of fulfilling its contractual obligations with the Government, GA began to build up resources, including but not limited to canine supplies, equipment, leasing space, personnel, training materials, office supplies, veterinarian supplies, breeding suppliers, and other necessary items in the preparation and creation of service dog.

13.     GA considerably expanded its operations in reliance upon the Contracts.

14.     During the period of performance under the Contracts, GA successfully paired fifteen (15) dogs with veterans who had a host of disabilities including but not limited to PTSD.

15.     On August 31, 2012, the Contracting Officer sent GA a letter terminating the Contracts between GA and VA ("Termination Letter"). The letter and email transmission are attached herein and marked as **Exhibit C**.

16.     At the GA received the Termination Letter, while working diligently under the Contracts, GA had already incurred the liability of expense, time and costs required to pair another forty-seven (47) dogs.

3

17.     Prior to receiving the Termination Letter, GA was given no prior notice of default or the possibility of termination of the Contracts. Furthermore, GA was given no reasonable opportunity to cure any alleged default. The Contracts were compulsorily terminated by the Government.

18.     The Contracts themselves are void of any default clauses and have not included the appropriate default language under the Federal Acquisition Regulation (F.A.R.). However, pursuant to the default procedures in firm-fixed price contracts such as these, F.A.R. 49.402 and 52.249-8 require that the Government give the contractor notice and a reasonable opportunity to cure prior to termination of the contract. Neither notice nor opportunity to cure were given to GA before the Contracts were terminated.

19.     Pursuant to the Termination Letter, VA was allegedly terminating the Contracts for cause under F.A.R. 52.212-4(m). The letter specifically states that the "agreement terminates for default".

20.     Under F.A.R. 52.212-4(m) "[i]f it is determined that the Government improperly terminated this contract for default, such termination shall be deemed a termination for convenience. F.A.R. 52.212-4(l) contains the guidelines for termination for convenience. Under a termination for convenience "the Contractor shall be paid a percentage of the contract price reflecting the percentage of the work performed prior to the notice of termination, plus reasonable charges the Contractor can demonstrate . . . have resulted from the termination.

21.     As a result of failing to provide GA with notice of default and a reasonable opportunity to cure under FAR, the Government improperly breached for cause pursuant to F.A.R. 52.212-4(m) and therefore breached for convenience pursuant to F.A.R. 52.212-4(l). Since the Government breached for convenience, it owes GA a percentage of the contract price

for the work performed prior to the notice of termination and the reasonable charges incurred that have resulted from the termination.

22.     Furthermore, GA patently objected and objects to the allegation made by the Government in regard to its actions referenced in the Termination Letter.

23.     In the Termination Letter, the Government states that GA has made actions or omissions that caused a default in sections C.2, C.3, C.4, H.1, H.2, H.4 and E of the Amended Contract.

24.     As it relates to the Government's allegations under section E of the Amended Contract, GA never paired any dog attributable to the Government prior to the Contracts or even during the period of suspension between Contracts.

25.     The Amended Contract added a new provision labeled as section H subpart 1 to the section for Confidentiality and Nondisclosure formerly labeled as section I in the Contract. GA maintains that its actions were in compliance with the Contracts when each contract was respectively in force.

26.     In regard to the alleged breaches under cection C, Amended Contract states therein that "[t]he contractor shall provide the specific deliverables described below within the performance periods stated in Section 4 . . . ."

27.     Section A.4 of the Amended Contract states "[t]he period of performance is June 24, 2011, through June 24, 2015. The period of performance for each order will be identified on that particular order."

28.     Under section C of the Amended Contract, each subsection has a specified period for delivery. As pertinent to the arguments in this Complaint the delivery dates are as follows: section C.2 to be determined on individual orders and due within 5 months of the order; section

C.3 to be determined on individual orders and due under varying times depending on the subpart of C.3; and section C.4 to be determined on individual orders and due within 30 days of the veterinarian visit.

29.     It is clear from the language of the Contracts that GA's performance pursuant to all deliverables specified under section C were not due immediately rather each had very specific and identifiable timeline. Furthermore, GA complied with all timelines required by the Contracts.

30.     The Termination Letter is silent as to the specific "individual orders" upon which the Government is basing its allegations for termination as they relate to C.2, C.3, and C.4.

31.     Furthermore, in subsection (d) on page 18 of the Contract it states:
Inspection/Acceptance. The Contractor shall tender for acceptance only those items that conform to the requirements of this contract. The Government reserves the right to inspect or test any supplies or services that have been tendered for acceptance. The Government may require repair or replacement of nonconforming supplies or reperformance of nonconforming services at no increase in the contract price. The Government must exercise its post acceptance rights- (1) within a reasonable period of time after the defect was discovered or should have been discovered; and (2) before any substantial change occurs in the condition of the item, unless the change is due to the defect in the item.

32.     Nowhere in the above referenced subsection does the Government have the right to declare the entire Contract/Amended Contract in default as the result of a singular order pursuant to the deliverable required under section C. In fact, the Government would have been required by subsection (d) to provide reasonable notice to GA and then request repair or reperformance before take any further action. The Government did not take any such action to provide notice and instead declared the Contracts in default and terminated.

33.     It is clear that the Government's action terminating the Contracts for the alleged default has failed because GA was never given notice or the opportunity to cure. It must be determined that these Contracts were terminated for convenience and therefore the Government owes GA a percentage of the contract price for the work performed prior to the notice of termination and the reasonable charges incurred that have resulted from the termination.

34.     On February 28, 2013, GA sent the Government a letter make a formal dispute under F.A.R. 52.233-1 in regards to the Government's alleged termination for cause. In addition GA made a claim demanding payment for a percentage of the contract price for the work performed prior to the notice of termination and the reasonable charges incurred that have resulted from the Government's actual termination for convenience. Please see the Formal Dispute Letter attached herein and marked as **Exhibit D**.

35.     On March 21, 2013, the Government responded to the Formal Dispute Letter requesting that GA provide all expense documentation supporting its claim as its earliest convenience. The Government's Response to Formal Dispute is attached herein and marked as **Exhibit E**.

36.     Pursuant to the Government's Response to Formal Dispute, GA began gathering all of its supporting documentation to demonstrate to the Government its expenses and damages claimed in the Formal Dispute Letter.

37.     On May 3, 2013, the Government sent another letter to GA before GA had the opportunity to completely gather the supporting documentation of its expenses and present them to the Government. In this letter the Contracting Officer on behalf of the Government states "[m]y August 31, 2012, decision [Termination Letter] stated: This notice hereby constitutes a decision that Guardian Angels Medical Services Dogs, Inc. is in default as specified and that the

contractor has the right to appeal under the Dispute clause. **I have not and shall not reconsider that decision.**" Please see Government's Final Letter attached herein and marked as **Exhibit F**.

38.     Pursuant to F.A.R. 3.101-1 "Government business shall be conducted in a manner above reproach and, . . . with complete impartiality and with preferential treatment for none."

39.     GA was entitled to have the Contracting Officer act with complete impartiality and with preferential treatment for none when making a decision with regards to its claim pursuant to F.A.R. 52-233-1(d)(1) that was filed in GA's Formal Dispute Letter.

40.     The Contracting Officer has acted willfully, purposefully and egregiously to procedurally disfavor GA in regards to its Formal Dispute Letter under F.A.R. 52.233-1. The Contracting Officer states "I have not and shall not reconsider that decision." F.A.R. 52.233-1(d)(1) requires that Contracting Officer to provide a written decision with regard to a claim made by a contractor. F.A.R. 3.101-1 requires that this decision will be made impartially. Through the Contracting Officer's statement she has told GA, that they will receive no review at all, not even a partial one.

41.     As a result of the Contracting Officer's actions, GA has been procedurally prejudiced. GA did not receive an impartial review of the Contracting Officer's prior decision made in the Termination Letter. Furthermore, GA did not receive an impartial review with regard to the claims it raised in the Formal Dispute Letter. In fact, GA did not receive any review at all with regard to its dispute and claim under F.A.R. 52.233-1.

Conclusion

42.     Based upon the foregoing, Plaintiff alleges that as a result of the Government's actions, including but not limited to:

8

    a. Failing to provide Plaintiff with any notice of default and a reasonable opportunity to cure;

    b. Improperly determining that the Contracts were terminated for cause;

    c. Prejudicing Plaintiff's claim by refusing to review the termination and failing to remain impartial in the process;

    d. Failing to properly revise the termination of the Contracts as termination for convenience;

    e. Failing to pay Plaintiff its damages incurred as a result of the termination for convenience;

Plaintiff has incurred significant damages and will continue to incur damages as result of its reliance upon the Contracts. As a result of its breach for convenience, the Government owes Plaintiff a percentage of the contract price for the work performed prior to the notice of termination and the reasonable charges incurred that have resulted from the termination.

WHEREFORE, Plaintiff prays that this Honorable Court provide relief by entering a judgment holding that the Government improperly terminated the Contracts for cause and as a result the Contracts have been terminated for convenience and further enter judgment against the Government requiring it to compensate Plaintiff in the amount of $1,046,474.30.

Date: January 2, 2014

Respectfully submitted by,

JOSEPH A. DAVIDOW
Attorney for Plaintiff
Florida Bar No. 65885
DAVIDOW LAW, P.A.
975 6th Avenue South, Suite 200
Naples, Florida 34105
(239) 465-0531
jdavidow@davidowlaw.net

# EXHIBIT A

Jun 24 11 04:04p        Guardian Angels Medical                    3525283554                        p.2

# SOLICITATION/CONTRACT/ORDER FOR COMMERCIAL ITEMS
## OFFEROR TO COMPLETE BLOCKS 12, 17, 23, 24, & 30

| | |
|---|---|
| 1. REQUISITION NO. | PAGE 1 OF  5 |

| 2. CONTRACT NO. | 3. AWARD/EFFECTIVE DATE | 4. ORDER NO. | 5. SOLICITATION NUMBER | 6. SOLICITATION ISSUE DATE |
|---|---|---|---|---|
| VA248-BP-0218 | | 0001 | | |

| 7. FOR SOLICITATION INFORMATION CALL: | a. NAME | b. TELEPHONE NO. (No Collect Calls) | 8. OFFER DUE DATE/LOCAL TIME |
|---|---|---|---|
| | Tiffany Garfield | 813-631-2618 | |

**9. ISSUED BY**          CODE

Department of Veterans Affairs
James A. Haley Veterans Hospital (90C)

13000 Bruce B. Downs Blvd
Tampa FL 33612

**10. THIS ACQUISITION IS**
☐ UNRESTRICTED OR     X SET ASIDE: 100 % FOR  501(c)(3)

NAICS:   812910         ☐ SMALL BUSINESS
SIZE STANDARD:          ☐ HUBZONE SMALL BUSINESS
                        ☐ SERVICE-DISABLED VETERAN-OWNED SMALL BUSINESS   ☐ (8A)

| 11. DELIVERY FOR FOR DESTINATION UNLESS BLOCK IS MARKED | 12. DISCOUNT TERMS | | 13a. RATING |
|---|---|---|---|
| ☐ SEE SCHEDULE | | ☐ 13a. THIS CONTRACT IS A RATED ORDER UNDER DPAS (15 CFR 700) | N/A |
| | | | 14. METHOD OF SOLICITATION |
| | | | ☐ RFQ   ☐ IFB   ☐ RFP |

| 15. DELIVER TO | CODE | 16. ADMINISTERED BY | CODE |
|---|---|---|---|
| | | Department of Veterans Affairs James A. Haley Veterans Hospital (90C) 13000 Bruce B. Downs Blvd Tampa FL 33612 | |

| 17a. CONTRACTOR/OFFEROR    CODE | FACILITY CODE | 18a. PAYMENT WILL BE MADE BY | CODE |
|---|---|---|---|
| GUARDIAN ANGELS MEDICAL SERVICE DOGS, INC. 3251 NE 186TH AVENUE WILLISTON, FL  33856-6812 TELEPHONE NO.  352-423-1582 | | Department of Veterans Affairs Financial Services Center P.O. Box 149971 Austin TX 78714-9971 | |

☐ 17b. CHECK IF REMITTANCE IS DIFFERENT AND PUT SUCH ADDRESS IN OFFER

18b. SUBMIT INVOICES TO ADDRESS SHOWN IN BLOCK 18a UNLESS BLOCK BELOW IS CHECKED  ☐ SEE ADDENDUM

| 19. ITEM NO. | 20. SCHEDULE OF SUPPLIES/SERVICES | 21. QUANTITY | 22. UNIT | 23. UNIT PRICE | 24. AMOUNT |
|---|---|---|---|---|---|
| | **SEE SCHEDULE** | | | | |
| | | | | | |

(Use Reverse and/or Attach Additional Sheets as Necessary)

| 25. ACCOUNTING AND APPROPRIATION DATA | 26. TOTAL AWARD AMOUNT (For Govt. Use Only) |
|---|---|
| 673-360/10160-1370-812400-2660 820010100 | $68,749.00 |

| 27a. SOLICITATION INCORPORATES BY REFERENCE FAR 52.212-1, 52.212-4. FAR 52.212-3 AND 52.212-5 ARE ATTACHED. ADDENDA | ☐ ARE | ☐ ARE NOT ATTACHED. |
|---|---|---|
| 27b. CONTRACT/PURCHASE ORDER INCORPORATES BY REFERENCE FAR 52.212-4. FAR 52.212-5 IS ATTACHED. ADDENDA | ☐ ARE | ☐ ARE NOT ATTACHED |

28. CONTRACTOR IS REQUIRED TO SIGN THIS DOCUMENT AND RETURN ___ COPIES TO ISSUING OFFICE. CONTRACTOR AGREES TO FURNISH AND DELIVER ALL ITEMS SET FORTH OR OTHERWISE IDENTIFIED ABOVE AND ON ANY ADDITIONAL SHEETS SUBJECT TO THE TERMS AND CONDITIONS SPECIFIED.

29. AWARD OF CONTRACT: REF ___ OFFER DATED ___. YOUR OFFER ON SOLICITATION (BLOCK 5), INCLUDING ANY ADDITIONS OR CHANGES WHICH ARE SET FORTH HEREIN IS ACCEPTED AS TO ITEMS:

| 30a. SIGNATURE OF OFFEROR/CONTRACTOR | 31a. UNITED STATES OF AMERICA (SIGNATURE OF CONTRACTING OFFICER) |
|---|---|
| *(signature)* | MICHAEL WILSON  *(signature)* |
| 30b. NAME AND TITLE OF SIGNER (TYPE OR PRINT)    Executive Director | 31b. NAME OF CONTRACTING OFFICER (TYPE OR PRINT) |
| 30c. DATE SIGNED   6-28-11 | 31c. DATE SIGNED   26 June 11 |

AUTHORIZED FOR LOCAL REPRODUCTION
PREVIOUS EDITION IS NOT USABLE

STANDARD FORM 1449 (REV. 10/2010)
Prescribed by GSA - FAR (48 CFR) 53.212

## Table of Contents

A.1 PRICE/COST SCHEDULE ......................................................................................................4

**SECTION B - GENERAL TERMS** ...........................................................................................**9**

B.1 INTRODUCTION ..............................................................................................................9
B.2 TERMS AND CONDITIONS ............................................................................................9
B.3 ADMINISTRATIVE DATA ..............................................................................................9
B.4 PRICING DATA ..............................................................................................................10
B.5 OPTION TO EXTEND THE TERM OF THE BPA ........................................................10
B.6 GENERAL SERVICES ORDERS ...................................................................................10
B.7 GENERAL SUPPLY ORDERS .......................................................................................11
B.8 AUTHORIZED LIMITS ..................................................................................................11
B.9 OBLIGATION OF FUNDS ..............................................................................................11
B.10 PERIOD OF PERFORMANCE .......................................................................................11
B.11 ORDER FORMAT ...........................................................................................................11
B.12 AUTHORIZED REPRESENTATIVES ...........................................................................12
B.13 FEDERAL HOLIDAYS ...................................................................................................13
B.14 TRAVEL REIMBURSEMENT .......................................................................................13
B.15 PERFORMANCE .............................................................................................................13
B.16 MANAGEMENT CONTROL ..........................................................................................14
B.17 INVOICES .......................................................................................................................14
B.18 PRECEDENCE .................................................................................................................15

**SECTION C - CLAUSES** .........................................................................................................**16**

C.1 52.213-4 TERMS AND CONDITIONS - SIMPLIFIED ACQUISITIONS (OTHER THAN
COMMERCIAL ITEMS) (JAN 2011) ..............................................................................16
C.2 NOTICE LISTING CLAUSES INCORPORATED BY REFERENCE ............................19

**VA248BP0218  VA673D15106  0001**

The purpose of this modification is to revise line items 0001 & 0002 by increasing the quantities and to revise the accounting and appropriation data to reflect the new purchase order number and amount.

## A.1 PRICE/COST SCHEDULE

Line Items 0001 & 0002 are changed from:

| ITEM NO. | DESCRIPTION OF SUPPLIES/SVCS | QTY UNIT | UNIT PRICE | AMOUNT |
|----------|------------------------------|----------|------------|--------|
| 0001 | Service Dog Firm-Fixed Price | 6.00 EA | $10,000.0000 | $60,000.00 |
| 0002 | Dog Health Insurance in accordance with the Statement of Work. This line item is an ESTIMATE ONLY until a firm proposal is received from the contractor. Upon a firm proposal a modification will be executed to incorporate a firm-fixed price per dog. | 1.00 LOT | $8,749.0000 | $8,749.00 |

GRAND TOTAL --- $68,749.00

To Read:

| ITEM NO. | DESCRIPTION OF SUPPLIES/SVCS | QTY UNIT | UNIT PRICE | AMOUNT |
|----------|------------------------------|----------|------------|--------|
| 0001 | Service Dog Firm-Fixed Price | 12.00 EA | $10,000.00 | $120,000.00 |
| 0002 | Dog Health Insurance in accordance with the Statement of Work. Firm-Fixed Price | 12.00 EA | $1,342.92 | $16,115.04 |

GRAND TOTAL --- $136,115.04

**VA248BP0218  VA673D15106  0001**

The Accounting and Appropriation Data is changed from:

ACCOUNTING AND APPROPRIATION DATA:

APPROPRIATION
360/10161-1370-812400-2660

REQUISITION NUMBER
673-11-3-1370-0047

PURCHASE ORDER #
673-D10018

AMOUNT
$68,749.00

To Read:

ACCOUNTING AND APPROPRIATION DATA:

APPROPRIATION
360/10161-1370-812400-2660

REQUISITION NUMBER
673-11-4-1370-0061

PURCHASE ORDER #
673-D15106

AMOUNT
$136,115.04

SUBMITTING INVOICES:  Ensure the Purchase Order # listed above is
referenced on all invoices.

CONTINUATION PAGE

## A.1 PRICE/COST SCHEDULE

| ITEM NO. | DESCRIPTION OF SUPPLIES/SVCS | QTY UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|
| 1 | Service Dog | 1.00 EA | $10,000.0000 | $10,000.00 |
| 2 | Dog Health Insurance in accordance with the Statement of Work.  This line item is an ESTIMATE ONLY until a firm proposal is received from the contractor.  Upon a firm proposal a modification will be executed to incorporate a firm-fixed price per dog. | 1.00 LOT | $8,749.0000 | $8,749.00 |

GRAND TOTAL --- $18,749.00
=====================

## STATEMENT OF WORK
### A. GENERAL INFORMATION : PILOT SERVICE DOG PROJECT

1.     This agreement is issued under the authority of Public Law (P.L.) 111-84, U.S. Senate Bill S.1390, Section 1077.

2.     <u>Scope of Work:</u> The contractor shall provide all resources necessary to accomplish the deliverables described in this statement of work (SOW), except as may otherwise be specified. The purpose of this Pilot project is to determine how the use of service dogs (SD) may impact the overall outcomes including cognitive, functional and quality of life, for veterans who have been diagnosed with post traumatic stress disorder syndrome (PTSD).

2a.     <u>Government Requirement:</u>    The Government's maximum requirement of two hundred (200) service dogs may be required for this project. The Government reserves the right to revise its maximum requirement at any time during contract performance.

3.     <u>Background:</u> An estimated 16,000 individuals are partnered with SDs today; these highly skilled dogs typically work for eight (8) years each. Section 2 of Bill H.R. 2792, the Disabled Veterans Service Dog and Health Care Improvement Act of 2001, allows the VA to reimburse cost s of SFs and associated training for qualified veterans. An additional bill was passed in 2010, Bill S.1390, sec 1084 which authorize appropriations to conduct a pilot program on use of service dogs for the treatment and or rehabilitation of veterans with physical or mental injuries or disabilities. This pilot program is to be implemented "120 days after the enactment of this Act, and a three (3) year pilot program to assess the benefits of, feasibility and advisability of using service dogs for the treatment or rehabilitation of veterans with physical or mental injuries or disabilities, including post-traumatic stress disorder (PTSD)" is to be completed. Due to the previous research conducted by the Principal Investigator

(PI) of this proposal, the research team has chosen to focus on PTSD and subsequent mental health improvements which may result from provision of a service dog.

4.   Periods of Performance: The period of performance is June 24, 2011 through June 24, 2015. The period of performance for each order will be identified on that particular order.

If work is required at a government site it shall not take place on Federal holidays or weekends unless directed by the Contracting Officer (CO). The following Federal Holidays are observed:

New Years Day; Dr. Martin Luther King, Jr Day; Presidents Day; Memorial Day; Independence Day; Labor Day; Columbus Day; Veterans Day; Thanksgiving Day; Christmas Day

5.   Type of Contract: Firm-Fixed Price, Blanket Purchase Agreement (BPA). The government reserves the right to make multiple awards in order to accommodate the indefinite quantity of service dogs to be procured.

6.   Place of Performance:   The research study shall be conducted at Guardian Angels Medical Service Dogs, Inc., 3251 NE 180ᵗʰ Avenue, Williston, FL 32696-6812.

7.   Contract Award Meeting:   A contract award meeting will occur either in person or by telephone, at the convenience of both parties.

8.   Final Pairing between Veteran & Dog:   If a match does not work out for a veteran the contractor will: a) replace the dog unless the veteran is the issue. The contractor will never allow a dog to remain in an environment that is not conducive to it's well being or a dangerous situation; b) In the case that the veteran is an issue, then the contractor will pair that service dog with a new veteran on the study program; and c) In the case that the service dog was the problem, the contractor will revisit the training issues and re-pair the dog in an environment and with a veteran more suitable to each other's character.

## B. GENERAL REQUIREMENTS

1. For every task, the contractor shall identify in writing all necessary subtasks (if any), associated costs by task, together with associated sub milestones dates for accomplishment of tasks. The contractor's subtask structure shall be reflected in the technical proposal and detailed project management plan (PMP).

2. All written deliverables shall be phrased in layperson language. Statistical and other technical terminology shall not be used without providing a glossary of terms.

3. Where a written milestone deliverable is required in draft form, the VA will complete their review of the draft deliverable within 10 calendar days from date of receipt. The contractor shall have 30 calendar days to deliver the final deliverable from date of receipt of the government's comments.

## C. SPECIFIC MANDATORY TASKS AND ASSOCIATED DELIVERABLES

Description of Tasks and Associated Deliverables: The contractor shall provide the specific deliverables described below within the performance periods stated in Section A. 4 of this SOW.

**Task One:** The contractor shall provide a detailed PMP and briefing for the VBA Project team, which represents the contractor's plan for completing the task order. The contractor's plan shall be responsive to this SOW and describe, in further derail, the approach to be used for each aspect of the task order as defined in its technical proposal. At a minimum, the PMP shall include the risk, quality and technical management approach, work breakdown structure (WBS), detailed schedule, cost estimate requirements and proposed personnel. The contractor shall keep the PMP up to date throughout the period of performance.

**Deliverable for Task One:** A detailed PMP and briefing. The Project Management Plan shall be delivered within 15 days after date of contract award.

**Task Two:** Dogs shall be trained by personnel at contractors with a favorable history of providing service dogs. Service dogs shall be provided by each contractor with the first service dog placed within five (5) months of receipt of contract award. All service dogs shall be identified with an implanted microchip to ensure consistent identification throughout the study and all deliverables shall reference both the service dog's name and the microchip ID number.

**Deliverable for Task Two:** Contractor's shall provide trained service dogs. First dog(s) shall be placed within five (5) months after date of contract award.

**Task Three:** The Contractor shall provide service dogs trained to meet needs of veterans with PTSD. The training shall be tailored to the needs of the veterans and shall meet or exceed the needs of the Americans with

Disabilities Act (ADA) in that a minimum of tasks shall be trained. This includes the service dogs meeting minimum standards for public access and shall include:

- 3A-Documented minimum of 120 hours of schooling over six (6) months
- 3B-Thirty (30) hours (Documented) shall be devoted to outings that prepare the service dog for work in public places.
- 3C-Documented obedience training (sit, stay, come, down, heel and off leash recall) in response to verbal or hand commands.
- Documentation shall be provided to prove that the dogs have manners which include non-aggressive behavior, no begging of food, no urination without command, no sniffing of other dogs and people when they pass.

**Deliverables for Task Three:**
**Deliverable 3A** shall consist of providing proof of appropriate training for each service dog prior to matching with veteran. The dog shall be identified to allow a match. Deliverable 3A shall be submitted at least Thirty (30) days before dog will be provided to the veteran.
**Deliverable 3B** shall consist of documentation of pairing a service dog with a veteran participating in the study. The Contractor shall assure that after training and matching, Service Dogs shall demonstrate basic obedience skills by responding to voice and/or hand commands. For example, these skills shall be completed 90% of the time on time on the first attempt of asking. The dog shall be trained in a minimum of three (3) tasks based on the individual needs/challenges of the veteran. The tasks are those the paired veteran needs/would benefit from and shall be identified and the dog trained either before placement or during the trial pairing period.
The documentation shall consist of the dog's identification, the name of the veteran, the address of the veteran's residence, the date of the pairing, notes on potential problems with the pairing, and the dates and method(s) of planned follow-ups with the veteran. Deliverable 3B shall be submitted within 10 days of the pairing a dog with a veteran.
**Deliverable 3C** shall consist of a quarterly, cumulative report of all dogs currently paired. The report shall consist of the dog's identification, the address of the veteran's residence, the date of pairing, notes on potential problems with the pairing and the dates and method(s) of actual follow-ups with the veteran.
**Task Four :** The contractor shall aid in establishing a veterinary care program (VCP) for the duration of the proposed three (3) year study, which shall include a preventative health care (wellness) evaluation for the service dogs. This evaluation shall include routine canine immunizations, physical examinations, parasite surveillance and treatment including but not limited to heartworm checks, as well as other common internal and external canine parasites.
**Deliverable for Task Four:** The contractor shall deliver a report per veterinarian visit regarding the service dog's health. The report shall be from the veterinarian and provided to the VA within 30 days of the visit. The report shall include data of visit, evaluation of service dog, general health information (e.g., weight, temperature, health assessment, etc.). This visit will take place prior to the pairing with the veteran.
**Task Five:** The contractor shall provide health insurance for each dog. The insurance will cover the maximum percentage of the cost of treatments and provide coverage for hereditary and congenital conditions. The insurance will also include the maximum percentage of accident, illness and injury with an annual deductible if applicable. In addition, the insurance shall include two annual routine wellness check-ups, one routine check-for the first year that the dog and veteran pairing and a second routine check-up within the second year of pairing.
**Deliverable for Task Five:** The contractor shall provide proof of health insurance within 30 days of a BPA order.

## D. SCHEDULE FOR DELIVERABLES

1. If for any reason the scheduled time for a deliverable cannot be met, the contractor shall explain why (and include the original Deliverable due date) in writing to the Contracting Officer (CO), including a firm commitment of when the work shall be completed. This notice to the CO shall cite the reasons for the delay and the impact of the delay on the overall project. The CO will review the facts along with the VA investigative team and issue a response in accordance with applicable regulations that include terms and conditions of the contract.

## E. CHANGES TO STATEMENT OF WORK/MODIFICATION OF CONTRACT

Only the Contracting Officer (CO) is authorized to make any changes to the contract terms and conditions or the SOW. Changes or modifications to the contract shall be made, authorized and approved only through the written correspondence from the CO. Any cost incurred by the contractor(s) without the written authorization of the CO shall be the sole responsibility of the contractor, and will not be authorized for payment by the government and shall be borne by the contractor.

## F. CONTRACTOR EXPERIENCE REQUIREMENTS – KEY PERSONNEL

The contractor shall identify its skilled, experienced professional and/or technical personnel that shall be responsible for training the service dog(s). The contractor shall provide a resume for these personnel that shall include past performance and historical documentation of performance in the service dog industry. Contractor documentation of Past performance shall provide evidence of personnel's proficiency in this Task. These are defined as KEY PERSONNEL and are those persons whose resumes are to be submitted. The contractor agrees that the Key personnel shall not be removed, diverted, or replaced from work without approval of the CO. Any personnel the contractor offers as substitutes shall have the ability and qualifications equal to or better than the key personnel that are being replaced. Requests to substitute personnel shall be approved by the CO. All requests for approval of substitute personnel shall be submitted to the CO within 30 calendar days prior to making any change in key personnel. The request shall be written and provide a detailed explanation of the circumstances necessitating the proposed substitution. The contractor shall submit a complete resume for the proposed substitute, any changes to the rate specified in the contract (as applicable) and any information requested by the CO needed to approve or disapprove the proposed substitution. The CO shall evaluate such requests and promptly notify the contractor of approval or disapproval thereof in writing.

## G. CONTRACTOR PERSONNEL SECURITY TRAINING

1. Security Training and Background Investigation

All contractor and subcontractor employees performing work under this contract or order shall complete the VA's on-line Security Awareness and Privacy Awareness Training Courses annually. Contractors shall provide signed certifications of training course completion to the CO during each year of the Contract. This requirement is in addition to any other training that may be required of the contractor(s) and subcontractor(s).

The position sensitivity impact for this research study has been designated as a **LIMITED** Risk and the level of background investigation is NACI.

2. Contractor Responsibilities

a. The contractor shall bear the expense of obtaining background investigations. If the investigation is conducted by the Office of Personnel Management (OPM) through the VA, the contractor shall reimburse the VA within 30 days.

## I. CONFIDENTIALITY AND NONDISCLOSURE

It is agreed that:

1. The preliminary and final deliverables and all associated working papers, application source code, and other material deemed relevant by the VA which has been generated by the contractor in the performance of this task order are the exclusive property of the U.S. Government and shall be submitted to the CO at the conclusion of this contract.

2. The CO will be the sole authorized official to release verbally or in writing, any data, the draft deliverables, the final deliverables, or any other written or printed materials pertaining to this contract. No information shall be released by the contractor. Any request for information relating to the study under this contract presented to the contractor(s) and /or subcontractor(s), shall be submitted to the CO for his/her response.

3. Press releases, marketing material or any other printed or electronic documentation related to this project shall not be publicized without the written approval of the CO.

## ATTACHMENT A - SCHEDULE OF DELIVERABLES

| DELIVERABLE No. | DELIVERABLE | QUANTITY | DATE DUE |
|---|---|---|---|
| Task One | Detailed PMP briefing | To be determined on individual orders | Within 15 days after Contract Award |
| Task Two | Provide trained Service Dog | To be determined on individual orders | Within 5 months of order |
| Task Three A | Proof of appropriate training prior to placement of service dogs | To be determined on individual orders | 30 days prior to paring with Veteran |
| Task Three B | Documentation of pairing & potential problems & require training | To be determined on individual orders | 10 days after paring has occurred |
| Task Three C | Documentation regarding follow-up of pairing | To be determined on individual orders | Every 90 days starting of pairing |
| Task Four | Report from veterinarian | To be determined on individual orders | Within 30 days of the veterinarian visit |
| Task Five | Proof of health insurance | To be determined on individual orders | Within 30 days of BPA Order |

Department of Veterans Affairs          BLANKET PURCHASE AGREEMENT

## SECTION B - GENERAL TERMS

## B.1 INTRODUCTION

In the spirit of the Federal Acquisition Streamlining Act, the Department of Veterans Affairs DVA and GUARDIAN ANGELS MEDICAL SERVICE DOGS, INC. hereby enter into a cooperative agreement, otherwise referred to as a Blanket Purchase Agreement (BPA), to further reduce the administrative costs of acquiring supplies/services.

The agreement details all supplies and services with accompanying prices and descriptions, which may be ordered under this BPA.

All orders placed against this BPA are subject to the terms and conditions of all the clauses and provisions in full text or incorporated by reference in this document.

(End of Clause)

## B.2 TERMS AND CONDITIONS

The Contractor agrees to the following terms of a Blanket Purchase Agreement (BPA) EXCLUSIVELY WITH the Department of Veterans Affairs:

(End of Clause)

## B.3 ADMINISTRATIVE DATA

A Blanket Purchase Agreement (BPA) is hereby established between GUARDIAN ANGELS MEDICAL SERVICE DOGS, INC. and the Department of Veterans Affairs under the following terms and conditions incorporated in this BPA:

Primary Point of Contact:
GUARDIAN ANGELS MEDICAL SERVICE DOGS, INC.
3251 NE 180TH AVE
WILLISTON, FL  32696-6812
DUNS NUMBER:   030264362

Cognizant DVA Office (Include Department of Veterans Affairs complete address):
Department of Veterans Affairs
James A. Haley Veterans Hospital (90C)
13000 Bruce B. Downs Blvd
Tampa, FL  33612

(End of Clause)

Department of Veterans Affairs          BLANKET PURCHASE AGREEMENT

## B.4 PRICING DATA

1. The prices included on the BPA list (or applicable "discounted" rates submitted in a proposal response to an RFQ resulting in award) that are in effect on the effective date of an order shall govern that order's basic performance period. With regard to any option years, which are later exercised, the proposed option year rates as incorporated into the order award are in effect until such time, if applicable, that the contractor has been authorized a rate increase culminating from a negotiation with the Contracting Officer.

2. The BPA holder can voluntarily reduce offered prices at any time by giving 24-hour advance notice (by facsimile or electronic-mail) to the Department of Veterans Affairs/Contracting Officer. This BPA also allows for additional discounts if a "large order" is placed at one time. An advanced notice is not required for discounts offered for only an individual order. Whether an order is large enough to warrant such a discount is subject to the discretion of the BPA holder.

3. The BPA holder may also increase BPA prices at any time. Any BPA price increase shall not take effect until the Department of Veterans Affairs Contracting Officer receives written notification (U.S. mail, facsimile, or electronic-mail). Any order already issued shall not be affected by any change to BPA pricing. The prices offered under this BPA will undergo annual review by the Department of Veterans Affairs Contracting Officer.

(End of Clause)

## B.5 OPTION TO EXTEND THE TERM OF THE BPA

a. The Government may extend the term of this BPA by written notice to the Contractor at any time prior to the expiration of the BPA, provided that the Government shall give the Contractor a preliminary written notice of its intent to extend at least 60 days before the BPA expires. The preliminary notice does not commit the Government to an extension.

b. If the Government exercises this option, the extended BPA shall be considered to include this option provision.

(End of Clause)

## B.6 GENERAL SERVICES ORDERS

a. The BPA holder shall furnish all the necessary qualified personnel, materials, facilities and management resources to furnish the services set forth in the Statement of Objectives (SOO) or the Performance Work Statement (PWS) within the terms specified and at the price(s) stated.

b. It is understood and agreed that the BPA holder shall provided Fixed-Price proposals when requested by the Contracting Officer (CO). The contractor's proposal shall be priced using labor rates and labor categories here in provided. The CO will issue Fixed Priced Orders upon completion of negotiations of contractor proposals.

(End of Clause)

Department of Veterans Affairs              BLANKET PURCHASE AGREEMENT

## B.7  GENERAL SUPPLY ORDERS

A properly appointed Department of Veterans Affairs Contracting Officer will request a quote from the Contractor based upon the requirements of the individual calls/orders, usually in the form of a Statement of Work (SOW). The information provided to the Contractor will include the place of performance, required period of performance, and other particular task requirements. Travel may be required (reimbursement of travel expenses will be IAW applicable Federal travel regulations).  The vendor will reply within 5 business days with a Firm Fixed Price quote depending on the details required by the SOW.  The Contractor may offer additional spot discounts on any order, as they deem appropriate.  All subcontractor activity must be clearly identified in each new order proposal as applicable.

(End of Clause)

## B.8  AUTHORIZED LIMITS

The Government estimates, but does not guarantee, that individual BPA Orders placed against this Agreement may reach $150,000.00/per Order. This Order Limit may be increased by mutual agreement of the parties as necessary, in whole or part.  The authorized Ceiling Limit of the Agreement is set at  over the period covered by the Agreement; this ceiling is also not a guarantee.  The Ceiling Limit may also be raised in association with Order Limit increases or other conditions which, by mutual agreement of the parties, maybe considered necessary.  Authorization for individual orders above the stated order and/or Ceiling Limits must be coordinated through the Contracting Officer before larger valued orders can be issued and prior to commencement of work.  All unauthorized work, regardless of amount, will be processed through the ratification process.

(End of Clause)

## B.9  OBLIGATION OF FUNDS

This BPA does not obligate any funds.  The Government is obligated only to the extent of authorized orders actually issued under the BPA by the Contracting Officer.

(End of Clause)

## B.10  PERIOD OF PERFORMANCE

This BPA expires on 06-24-2015 or such later ending date as determined by the exercise of any option.

(End of Clause)

## B.11  ORDER FORMAT

Orders will be placed against this BPA via e-mail, Electronic Data Interchange (EDI), FAX, or in hardcopy format.  Each individual BPA Order will describe the tasks, services and deliverables required.

(End of Clause)

**Department of Veterans Affairs**          **BLANKET PURCHASE AGREEMENT**

## B.12 AUTHORIZED REPRESENTATIVES

The primary Contracting Officer (CO) for this Agreement is:

Michael Wilson

Department of Veterans Affairs
James A. Haley Veterans Hospital (90C)
13000 Bruce B. Downs Blvd
Tampa, FL 33612

The Primary Contracting Officer's Representative (COR) for projects under this Agreement is:

SHARON BRYANT
813.558.7611
sharon.bryant2@va.gov
fax - 813-558-3990

The Primary and/or Secondary COR will be responsible for technical monitoring of the contractor's performance and deliveries. The COR and the Contractor's Representative shall work together to ensure that all contractual requirements are being met. The COR will interpret specifications or technical portions of the work. The COR is not authorized to perform, formally or informally, any of the following actions:

(1) Promise, award, agree to award, or execute any contract, contract modification, or notice of intent that changes or may change this contract;
(2) Waive or agree to modification of the delivery schedule;
(3) Make any final decision on any contact matter subject to the Disputes Clause;
(4) Terminate, for any reason, the contractor's right to proceed;
(5) Obligate in any way, the payment of money by the Government. Only a warranted Contracting Officer is authorized to obligate funds on this or any other contract action.

The contractor shall immediately notify the Contracting Officer in writing if the COR has taken an action (or fails to take action) or issues directions (written or oral) that the contractor considers to exceed the above limitations.

The contractor shall provide the Contracting Officer information copies of all correspondence to the COR.

(End of Clause)

Department of Veterans Affairs          BLANKET PURCHASE AGREEMENT

## B.13  FEDERAL HOLIDAYS

Unless specifically authorized in writing by the Contracting Officer, no services will be provided and no charges will be incurred and/or billed to any order on this contract on any of the Federal Holidays listed below.

| | |
|---|---|
| New Years Day | Labor Day |
| Martin Luther King Day | Columbus Day |
| Presidents' Day | Veterans' Day |
| Memorial Day | Thanksgiving Day |
| Independence Day | Christmas Day |

(End of Clause)

## B.14  TRAVEL REIMBURSEMENT

The Government will reimburse the cost of travel required in conjunction with performance of orders issued under this contract. Reimbursement for travel is limited to that which is required in the performance of the order. Specific Government direction to attend meetings or gather information shall be reimbursed on a cost reimbursable basis only. Local travel or the relocation of BPA holder personnel from other geographic areas for the purpose of staffing an order, are not subject to reimbursement. The Government will not pay travel charges for travel to and from the BPA holder employee's home and the DVA Office or to and from one company building to another (either within a company or to and from a prime to a sub company). Travel costs subject to reimbursement are limited to travel occurring at the direction of the Government, performed in conjunction with a specific requirement for a trip authorized in the order. Any administrative/clerical support travel costs shall be considered and approved by the Contracting Officer on a case-by-case basis.

(End of Clause)

## B.15  PERFORMANCE

The following terms and conditions are applicable:

a. All services will be initiated within 3 calendar days following receipt of a valid order, unless otherwise specified in the order.

b. The BPA holder shall be familiar with Federal Government and Department of Veterans Affairs acquisition regulations, directives and instructions. If a particular document is required in a specific order, it will be cited within the order's PWS.

c. The BPA holder shall not provide technical direction to any other acquisition BPA holder(s) or government personnel at any time.  Neither shall the Government directly supervise BPA holder employees.  The BPA holder Task Leader should conduct day to day supervision of BPA holder personnel wherever the BPA holder personnel are located. All direction of the BPA holder shall be through the Contracting Officer (CO) of the ordering organization specified in each individual order. Technical "tasking" assignments for the BPA holder will be transmitted by the program office's COTR (or program manager) to the BPA holder's Task Leader.

**Department of Veterans Affairs**          **BLANKET PURCHASE AGREEMENT**

d. The "ordering period" will run from BPA award to 06-24-2015, or until such ending date of any option year, which may be exercised under the Agreement. The "performance period" will terminate with the end of the BPA, unless the ordering CO elects to extend performance as provided under the BPA. If the ordering CO elects to extend performance beyond the end of the BPA, he/she may extend performance up to six (6) months beyond the end of the order period.

e. Capitalization Requirements: The BPA holder shall provide their employees sufficient computer equipment to support orders. The BPA holder shall be able to support the automatic transmission of unclassified data only to the requiring Program Office by modem if so requested. Any computers connected to, or transmits to (connected or via magnetic media) the government shall be properly protected from computer viruses. The BPA holder shall be capable of supporting the software packages utilized by Department of Veterans Affairs for the indicated processors. Specific software packages utilized within a program office shall be stated in the order PWS if it is other than Microsoft Office Professional or Microsoft Project.

f. Cancellation: This BPA may be canceled if the BPA holder fails to perform in accordance with the terms and conditions of the this BPA, any order established under this BPA, or if deemed as in the best interests of the Government. The BPA holder must strictly comply with all terms and conditions or the Department of Veterans Affairs/ Contracting Officer may determine that performance by the BPA holder has been unsatisfactory and cancel this BPA.

(End of Clause)

## B.16 MANAGEMENT CONTROL

The BPA holder shall provide to the Contracting Officer (CO) a list of all teaming partners or subcontractors within 5 calendar days after order award. As subcontractors and/or teaming partners are added, and/or deleted, an updated listing will be provided to the CO within 5 calendar days of such change. All BPA holder personnel shall display identification badges at all times while charging hours to the order or at a government or government contractor location. Authorized Government personnel shall accompany all visits to Department of Veterans Affairs Program Offices, unless other specific arrangements have been made.

(End of Clause)

## B.17 INVOICES

1. Contract Administration:  All contract administration matters will be handled by the following individuals:

a. CONTRACTOR:

b. GOVERNMENT:  Contracting Officer 00673
Department of Veterans Affairs
James A. Haley Veterans Hospital (90C)
13000 Bruce B. Downs Blvd
Tampa FL 33612

2. CONTRACTOR REMITTANCE ADDRESS:  All payments by the Government to the contractor will be made in accordance with:

**Department of Veterans Affairs**            **BLANKET PURCHASE AGREEMENT**

[X]                          52.232-33, Payment by Electronic Funds Transfer -
                             Central Contractor Registration, or

[]                           52.232-36, Payment by Third Party


3.  INVOICES:  Invoices shall be submitted in arrears:

a.  Quarterly              []

b.  Semi-Annually          []

c.  Other                  [X] Monthly

4.  GOVERNMENT INVOICE ADDRESS:  Invoices from the contractor shall be submitted in one of the two following methods:

1.  Faxed to FMS Austin 512-460-5544.
2.  Or mailed to the following address:

Department of Veterans Affairs
   Financial Services Center
   P.O. Box 149971
   Austin TX 78714-9971



**B.18  PRECEDENCE**

The Terms and conditions included in this BPA apply to all purchases made pursuant to it.  In the event of an inconsistency between the provisions of this BPA and the Contractor's invoice, the provisions of this BPA will take precedence.

(End of Clause)

Department of Veterans Affairs          BLANKET PURCHASE AGREEMENT

## SECTION C - CLAUSES

### C.1  52.213-4 TERMS AND CONDITIONS - SIMPLIFIED ACQUISITIONS (OTHER THAN COMMERCIAL ITEMS) (JAN 2011)

(a) The Contractor shall comply with the following Federal Acquisition Regulation (FAR) clauses that are incorporated by reference:

(1) The clauses listed below implement provisions of law or Executive order:

(i)  52.222-3, Convict Labor (June 2003) (E.O. 11755).

(ii) 52.222-21, Prohibition of Segregated Facilities (Feb 1999) (E.O. 11246).

(iii) 52.222-26, Equal Opportunity (Mar 2007) (E.O. 11246).

(iv) 52.222-50, Combating Trafficking in Persons (Feb 2009) (22 U.S.C. 7104(g)).

(v) 52.225-13, Restrictions on Certain Foreign Purchases (June 2008) (E.o.s, proclamations, and statutes administered by the Office of Foreign Assets Control of the Department of the Treasury).

(vi) 52.233-3, Protest After Award (Aug 1996) (31 U.S.C. 3553).

(vii) 52.233-4, Applicable Law for Breach of Contract Claim (Oct 2004) (Pub. L. 108-77, 108-78).

(2) Listed below are additional clauses that apply:

(i) 52.204-10, Reporting Executive Compensation and First-Tier Subcontract Awards (JUL 2010) (Pub. L. 109-282) (31 U.S.C. 6101 note).

(ii)  52.232-1, Payments (Apr 1984).

(iii) 52.232-8, Discounts for Prompt Payment (Feb 2002).

(iv) 52.232-11, Extras (Apr 1984).

(v) 52.232-25, Prompt Payment (Oct 2008).

(vi)  52.233-1, Disputes (Jul 2002).

(vii) 52.244-6, Subcontracts for Commercial Items (JAN 2011).

(viii) 52.253-1, Computer Generated Forms (Jan 1991).

(b) The Contractor shall comply with the following FAR clauses, incorporated by reference, unless the circumstances do not apply:

**Department of Veterans Affairs**        **BLANKET PURCHASE AGREEMENT**

(1) The clauses listed below implement provisions of law or Executive order:

(i) 52.222-19, Child Labor--Cooperation with Authorities and Remedies (JUL 2010) (E.O. 13126). (Applies to contracts for supplies exceeding the micro-purchase threshold.)

(ii) 52.222-20, Walsh-Healey Public Contracts Act (Oct 2010) (41 U.S.C. 35-45) (Applies to supply contracts over $15,000 in the United States, Puerto Rico, or the U.S. Virgin Islands).

(iii) 52.222-35, Equal Opportunity for Veterans (SEP 2010) (38 U.S.C. 4212) (Applies to contracts of $100,000 or more).

(iv) 52.222-36, Affirmative Action for Workers with Disabilities (Oct 2010) (29 U.S.C. 793). (Applies to contracts over $15,000, unless the work is to be performed outside the United States by employees recruited outside the United States.) (For purposes of this clause, United States includes the 50 States, the District of Columbia, Puerto Rico, the Northern Mariana Islands, American Samoa, Guam, the U.S. Virgin Islands, and Wake Island.)

(v) 52.222-37, Employment Reports on Veterans (SEP 2010) (38 U.S.C. 4212) (Applies to contracts of $100,000 or more).

(vi) 52.222-41, Service Contract Act of 1965 (Nov 2007) (41 U.S.C. 351, et seq.). (Applies to service contracts over $2,500 that are subject to the Service Contract Act and will be performed in the United States, District of Columbia, Puerto Rico, the Northern Mariana Islands, American Samoa, Guam, the U.S. Virgin Islands, Johnston Island, Wake Island, or the outer continental shelf lands).

(vii) 52.223-5, Pollution Prevention and Right-to-Know Information (Aug 2003) (E.O. 13148) (Applies to services performed on Federal facilities).

(viii) 52.223-15, Energy Efficiency in Energy-Consuming Products (DEC 2007) (42 U.S.C. 8259b) (Unless exempt pursuant to 23.204, applies to contracts when energy-consuming products listed in the ENERGY STAR Program or Federal Energy Management Program (FEMP) will be--

(A) Delivered;

(B) Acquired by the Contractor for use in performing services at a Federally-controlled facility;

(C) Furnished by the Contractor for use by the Government; or

(D) Specified in the design of a building or work, or incorporated during its construction, renovation, or maintenance.)

(ix) 52.225-1, Buy American Act--Supplies (FEB 2009) (41 U.S.C. 10a-10d) (Applies to contracts for supplies, and to contracts for services involving the furnishing of supplies, for use in the United States or its outlying areas, if the value of the supply contract or supply portion of a service contract exceeds the micro- purchase threshold and the acquisition--

(A) Is set aside for small business concerns; or

(B) Cannot be set aside for small business concerns (see 19.502-2), and does not exceed $25,000.)

**Department of Veterans Affairs**　　　　**BLANKET PURCHASE AGREEMENT**

(x) 52.232-33, Payment by Electronic Funds Transfer—Central Contractor Registration (Oct 2003). (Applies when the payment will be made by electronic funds transfer (EFT) and the payment office uses the Central Contractor Registration (CCR) database as its source of EFT information.)

(xi) 52.232-34, Payment by Electronic Funds Transfer--Other than Central Contractor Registration (May 1999). (Applies when the payment will be made by EFT and the payment office does not use the CCR database as its source of EFT information.)

(xii) 52.247-64, Preference for Privately Owned U.S.-Flag Commercial Vessels (Feb 2006) (46 U.S.C. Appx 1241). (Applies to supplies transported by ocean vessels (except for the types of subcontracts listed at 47.504(d).)

(2) Listed below are additional clauses that may apply:

(i) 52.209-6, Protecting the Government's Interest When Subcontracting with Contractors Debarred, Suspended, or Proposed for Debarment (DEC 2010) (Applies to contracts over $30,000). (Not applicable to subcontracts for the acquisition of commercially available off-the-shelf items).

(ii) 52.211-17, Delivery of Excess Quantities (Sept 1989) (Applies to fixed-price supplies).

(iii) 52.226-6, Promoting Excess Food Donation to Nonprofit Organizations. (MAR 2009)(Pub. L. 110-247)(Applies to contracts greater than $25,000 that provide for the provision, the service, or the sale of food in the United States.)

(iv) 52.247-29, F.o.b. Origin (Feb 2006) (Applies to supplies if delivery is f.o.b. origin).

(v) 52.247-34, F.o.b. Destination (Nov 1991) (Applies to supplies if delivery is f.o.b. destination).

(c) FAR 52.252-2, Clauses Incorporated by Reference (Feb 1998). This contract incorporates one or more clauses by reference, with the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available. Also, the full text of a clause may be accessed electronically at this/these address(es):

http://www.acquisition.gov/far/index.html http://www.va.gov/oamm/oa/ars/policyreg/vaar/index.cfm

(d) Inspection/Acceptance. The Contractor shall tender for acceptance only those items that conform to the requirements of this contract. The Government reserves the right to inspect or test any supplies or services that have been tendered for acceptance. The Government may require repair or replacement of nonconforming supplies or reperformance of nonconforming services at no increase in contract price. The Government must exercise its postacceptance rights--

(1) Within a reasonable period of time after the defect was discovered or should have been discovered; and

(2) Before any substantial change occurs in the condition of the item, unless the change is due to the defect in the item.

(e) Excusable delays. The Contractor shall be liable for default unless nonperformance is caused by an occurrence beyond the reasonable control of the Contractor and without its fault or negligence, such as acts of God or the public enemy, acts of the Government in either its sovereign or contractual capacity, fires, floods, epidemics, quarantine restrictions, strikes, unusually severe weather, and delays of common

**Department of Veterans Affairs**          **BLANKET PURCHASE AGREEMENT**

carriers. The Contractor shall notify the Contracting Officer in writing as soon as it is reasonably possible after the commencement of any excusable delay, setting forth the full particulars in connection therewith, shall remedy such occurrence with all reasonable dispatch, and shall promptly give written notice to the Contracting Officer of the cessation of such occurrence.

(f) Termination for the Government's convenience. The Government reserves the right to terminate this contract, or any part hereof, for its sole convenience. In the event of such termination, the Contractor shall immediately stop all work hereunder and shall immediately cause any and all of its suppliers and subcontractors to cease work. Subject to the terms of this contract, the Contractor shall be paid a percentage of the contract price reflecting the percentage of the work performed prior to the notice of termination, plus reasonable charges that the Contractor can demonstrate to the satisfaction of the Government, using its standard record keeping system, have resulted from the termination. The Contractor shall not be required to comply with the cost accounting standards or contract cost principles for this purpose. This paragraph does not give the Government any right to audit the Contractor's records. The Contractor shall not be paid for any work performed or costs incurred that reasonably could have been avoided.

(g) Termination for cause. The Government may terminate this contract, or any part hereof, for cause in the event of any default by the Contractor, or if the Contractor fails to comply with any contract terms and conditions, or fails to provide the Government, upon request, with adequate assurances of future performance. In the event of termination for cause, the Government shall not be liable to the Contractor for any amount for supplies or services not accepted, and the Contractor shall be liable to the Government for any and all rights and remedies provided by law. If it is determined that the Government improperly terminated this contract for default, such termination shall be deemed a termination for convenience.

(h) Warranty. The Contractor warrants and implies that the items delivered hereunder are merchantable and fit for use for the particular purpose described in this contract.

(End of Clause)

## C.2 NOTICE LISTING CLAUSES INCORPORATED BY REFERENCE

The following clauses are hereby incorporated by reference (by Citation Number, Title, and Date) in accordance with the clause at FAR "52.252-2 CLAUSES INCORPORATED BY REFERENCE" contained in this document. FAR 52.252-2 contains the internet address for electronic access to the full text of a clause.

| NUMBER | TITLE | DATE |
|---|---|---|
| | FEDERAL ACQUISITION REGULATION (48 CFR Chapter 1) | |
| 52.222-42 | STATEMENT OF EQUIVALENT RATES FOR FEDERAL HIRES | MAY 1989 |
| 52.222-50 | COMBATING TRAFFICKING IN PERSONS | FEB 2009 |
| 52.223-18 | CONTRACTOR POLICY TO BAN TEXT MESSAGING WHILE DRIVING | SEP 2010 |
| 52.225-13 | RESTRICTIONS ON CERTAIN FOREIGN PURCHASES | JUN 2008 |
| 52.233-1 | DISPUTES | JUL 2002 |
| 52.233-3 | PROTEST AFTER AWARD | AUG 1996 |
| 52.233-4 | APPLICABLE LAW FOR BREACH OF | OCT 2004 |

**Department of Veterans Affairs**          **BLANKET PURCHASE AGREEMENT**

|           | CONTRACT CLAIM          |          |
| 52.243-1  | CHANGES--FIXED-PRICE    | AUG 1987 |
| 852.203-70| COMMERCIAL ADVERTISING  | JAN 2008 |
| 852.216-70| ESTIMATED QUANTITIES    | APR 1984 |

# EXHIBIT B

| AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT | BPA NO. VA248-BP-0218 | 1 CONTRACT ID CODE | | PAGE 1 | OF 10 |
|---|---|---|---|---|---|

| 2. AMENDMENT/MODIFICATION NO. 0002 | 3. EFFECTIVE DATE 06-15-2011 18 | 4. REQUISITION/PURCHASE REQ. NO. | 5. PROJECT NO. (If applicable) NONE |
|---|---|---|---|

| 6. ISSUED BY | CODE | 00240E |
|---|---|---|

US Department of Veterans Affairs
Veterans Health Administration
Service Area Organization (SAO) East
323 North Shore Drive, Suite 500
Pittsburgh PA 15212-5319

| 7. ADMINISTERED BY  (If other than Item 6) | CODE | 00240E |
|---|---|---|

US Department of Veterans Affairs
Veterans Health Administration
Service Area Organization (SAO) East
323 North Shore Drive, Suite 500
Pittsburgh PA 15212-5319

8. NAME AND ADDRESS OF CONTRACTOR   (No., street, county, State and ZIP Code)

GUARDIAN ANGELS MEDICAL SERVICE DOGS, INC.

3251 NE 180TH AVE

WILLISTON FL 326966812

| (X) | |
|---|---|
| | 9A. AMENDMENT OF SOLICITATION NO. |
| | 9B. DATED  (SEE ITEM 11) |
| X | 10A. MODIFICATION OF CONTRACT/ORDER NO. VA248-BP-0218 |
| | 10B. DATED  (SEE ITEM 13) 06-24-2011 |

| CODE | | FACILITY CODE | |
|---|---|---|---|

## 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

[ ] The above numbered solicitation is amended as set forth in Item 14.  The hour and date specified for receipt of Offers [ ] is extended, [ ] is not extended.
Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods:
(a) By completing Items 8 and 15, and returning _____ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers.  FAILURE OF YOUR AC-KNOWLEDGEMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER.  If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA   (If required)
See CONTINUATION Page

## 13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS,
## IT  MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

| (X) | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO:   (Specify authority)   THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. |
|---|---|
| | 52.243-1, Alternate II |

| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES   (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b). |
|---|---|

| | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: |
|---|---|

| | D. OTHER  (Specify type of modification and authority) |
|---|---|

E. IMPORTANT:   Contractor [ ] is not, [X] is required to sign this document and return 1 _____ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION   (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

See attached schedule and statement of work.

This Change Order represents a complete equitable adjustment for all costs, direct and indirect, associated with the work and time agreed to herein, including, but not limited to, all costs incurred for extended overhead, supervision, disruption or suspension of work, labor inefficiencies and this change?s impact on unchanged work.

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER   (Type or print) | 16A. NAME AND TITLE OF CONTRACTING OFFICER   (Type or print) |
|---|---|
| CAROL BORDEN, Executive Director | Cheryl Homison Contract Officer |
| 15B. CONTRACTOR/OFFEROR *Carol Borden* (Signature of person authorized to sign) | 15C. DATE SIGNED 6-15-12 | 16B. UNITED STATES OF AMERICA BY (Signature of Contracting Officer) | 16C. DATE SIGNED 6/18/2012 |

NSN 7540-01-152-8070
PREVIOUS EDITION NOT USABLE

STANDARD FORM 30   (REV. 10-83)
Prescribed by GSA - FAR (48 CFR) 53 243

## AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT

| | | |
|---|---|---|
| **AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT** | BPA NO. VA248-BP-0218 | 1. CONTRACT ID CODE | PAGE 1 | OF 10 |

| 2. AMENDMENT/MODIFICATION NO. 0002 | 3. EFFECTIVE DATE 06-15-2011 | 4. REQUISITION/PURCHASE REQ. NO. | 5. PROJECT NO.(If applicable) NONE |

| 6. ISSUED BY | CODE 00240E | 7. ADMINISTERED BY (If other than Item 6) | CODE 00240E |
|---|---|---|---|
| US Department of Veterans Affairs Veterans Health Administration Service Area Organization (SAO) East 323 North Shore Drive, Suite 500 Pittsburgh PA 15212-5319 | | US Department of Veterans Affairs Veterans Health Administration Service Area Organization (SAO) East 323 North Shore Drive, Suite 500 Pittsburgh PA 15212-5319 | |

| 8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and ZIP Code) | | (X) | 9A. AMENDMENT OF SOLICITATION NO. |
|---|---|---|---|
| GUARDIAN ANGELS MEDICAL SERVICE DOGS, INC. 3251 NE 180TH AVE WILLISTON FL 326966812 | | | 9B. DATED (SEE ITEM 11) |
| | | | 10A. MODIFICATION OF CONTRACT/ORDER NO. VA248-BP-0218 |
| CODE | FACILITY CODE | X | 10B. DATED (SEE ITEM 13) 06-24-2011 |

### 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended.
Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods:
(a) By completing Items 8 and 15, and returning _____ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR AC-KNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)
See CONTINUATION Page

### 13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS, IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

| (X) | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. |
|---|---|
| | 52.243-1, Alternate II |
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b). |
| | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: |
| | D. OTHER (Specify type of modification and authority) |

**E. IMPORTANT:** Contractor ☐ is not, ☒ is required to sign this document and return 1 _____ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

See attached schedule and statement of work.

This Change Order represents a complete equitable adjustment for all costs, direct and indirect, associated with the work and time agreed to herein, including, but not limited to, all costs incurred for extended overhead, supervision, disruption or suspension of work, labor inefficiencies and this change?s impact on unchanged work.

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remain unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER (Type or print) | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print) |
|---|---|
| CAROL BORDEN, Executive Director | Cheryl Homison Contract Officer |
| 15B. CONTRACTOR/OFFEROR Carol Borden (Signature of person authorized to sign) | 15C. DATE SIGNED 6-15-12 | 16B. UNITED STATES OF AMERICA BY _____ (Signature of Contracting Officer) | 16C. DATE SIGNED |

NSN 7540-01-152-8070
PREVIOUS EDITION NOT USABLE

STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA - FAR (48 CFR) 53.243

**VA248-BP-0218 0002**

CONTINUATION PAGE

Modification to BPA VA248-BP-0218  **(all modifications to original BPA are noted in red)**
<u>**Change to Price/Cost Schedule (page 4 of 20)**</u>
**FROM:**
**A.1 PRICE/COST SCHEDULE**

| ITEM NO. | DESCRIPTION OF SUPPLIES/SVCS | QTY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 1 | Service Dog | 1 | EA | $10,000.00 | $10,000.00 |
| 2 | Insurance Dog Health Insurance in accordance with the Statement of Work. FFP | 1 | EA | $1,342.92 | $1,342.92 |

**TO:**

**A.1 PRICE/COST SCHEDULE**

| ITEM NO. | DESCRIPTION OF SUPPLIES/SVCS | QTY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 1 | Service Dog | 1 | EA | $10,000.00 | $10,000.00 |
| 2 | Insurance Dog Health Insurance in accordance with the Statement of Work. Price based on locality where veteran lives. | 1 | LOT | $2,062.00 | $2,062.00 |
| 3 | Initial home visits and Follow-up Visits | | 1 | | EA |
| | 0-50 miles | | | $70.00 | $70.00 |
| | 51-100 miles | | | $120.00 | $120.00 |
| | 101-150 miles | | | $170.00 | $170.00 |
| | 151-200 miles | | | $220.00 | $220.00 |
| | 201-250 miles | | | $270.00 | $270.00 |
| | 251-300 miles | | | $310.00 | $310.00 |

Note:
1. Veterans who are eligible for this study will reside within a radius of 150 miles of
Guardian Angels Medical Service Dogs (GAMSD) and live in Florida. Thirteen (13)

2

VA248-BP-0218 0002

Veterans living outside the 150 mile radius will be included in the study because they were enrolled prior to the study suspension. Veterans living outside 150 miles who contacted the study team after January 18, 2012 will be excluded.

2. Visits as required in Task 3, Deliverable 3B,C, and D. These require preapproval as noted in "Task" and "Schedule of Deliverables."

## STATEMENT OF WORK
## A. GENERAL INFORMATION : PILOT SERVICE DOG PROJECT

1.      This agreement is issued under the authority of Public Law (P.L.) 111-84, U.S. Senate Bill S.1390, Section 1077.

2.      Scope of Work: The contractor shall provide all resources necessary to accomplish the deliverables described in this statement of work (SOW), except as may otherwise be specified. The purpose of this Pilot project is to determine how the use of service dogs (SD) may impact the overall outcomes including cognitive, functional and quality of life, for veterans who have been diagnosed with post-traumatic stress disorder syndrome (PTSD).

2a.     Government Requirement:   The Government's maximum requirement of two hundred (200) service dogs may be required for this project. The Government reserves the right to revise its maximum requirement at any time during contract performance.

3.      Background: An estimated 16,000 individuals are partnered with SDs today; these highly skilled dogs typically work for eight (8) years each. Section 2 of Bill H.R. 2792, the Disabled Veterans Service Dog and Health Care Improvement Act of 2001, allows the VA to reimburse costs of SFs and associated training for qualified veterans. An additional bill was passed in 2010, Bill S.1390, sec 1084 which authorize appropriations to conduct a pilot program on use of service dogs for the treatment and or rehabilitation of veterans with physical or mental injuries or disabilities. This pilot program is to be implemented "120 days after the enactment of this Act, and a three (3) year pilot program to assess the benefits of, feasibility and advisability of using service dogs for the treatment or rehabilitation of veterans with physical or mental injuries or disabilities, including post-traumatic stress disorder (PTSD)" is to be completed. Due to the previous research conducted by the Principal Investigator (PI) of this proposal, the research team has chosen to focus on PTSD and subsequent mental health improvements which may result from provision of a service dog.

4.      Periods of Performance: The period of performance is June 24, 2011 through June 24, 2015.   The period of performance for each order will be identified on that particular order.
If work is required at a government site it shall not take place on Federal holidays or weekends unless directed by the Contracting Officer (CO). The following Federal Holidays are observed:
New Year's Day; Dr. Martin Luther King, Jr Day; Presidents Day; Memorial Day; Independence Day; Labor Day; Columbus Day; Veterans Day; Thanksgiving Day; Christmas Day

5.      Type of Contract: Firm-Fixed Price, Blanket Purchase Agreement (BPA).   The government reserves the right to make multiple awards in order to accommodate the indefinite quantity of service dogs to be procured.

3

VA248-BP-0218 0002

6.      Place of Performance:  The research study shall be conducted at Guardian Angels Medical Service Dogs (GAMSD), Inc., 3251 NE 180th Avenue, Williston, FL  32696-6812.

7.      Contract Award Meeting:  A contract award meeting will occur either in person or by telephone, at the convenience of both parties.

8.      Pairing Failures between Veteran & Service Dog:  If a match does not work out for a veteran the contractor will:
a)   immediately remove the service dog and replace the dog unless the veteran is the issue.  The contractor will never allow a dog to remain in an environment that is not conducive to its well-being or a dangerous situation; b) In the case that the veteran is an issue the principal investigator (and study team) of the study will review and determine if the veteran should remain in the study, , then the contractor will pair that service dog with a new veteran on the study program; c) In the case that the service dog was the problem, the contractor will immediately remove the service dog  revisit the training issues and re-pair the dog in an environment and with a veteran more suitable to each other's character; d) if a veteran experiences difficulty with a trainer or service dog agency, the VA may ultimately obtain training elsewhere.

b.   General statement regarding pairings.   In general, VA will rely upon GAMSD's experience and judgment to determine when a pairing is not successful and should be dissolved.  Although a variety of circumstances can result in an unsuccessful pairing, the following definitions define some possible situations:
        i.   A situation in which the pairing and/or care for the dog is resulting in additional stress to the veteran over an extended period of time, resulting in concerns that the presence of the service dog is adversely affecting the veteran directly or indirectly through problems in the home environment.  VA acknowledges that a certain amount of stress is expected until the veteran and dog bond completely to each other and the dog becomes integrated into the veteran's life and home environment.   Such stress would not be considered a pairing failure.
        ii.   A situation in which the veteran's ability to care for the dog or create a safe environment is of sufficient concern that the health and well-being of the dog cannot be reasonably assured.
        iii.   A situation in which the service dog is unable to perform commands or behaviors such that people or other animals are at risk of biting or other injury caused by the dog.
        iv.   A situation in which the veteran is unable to maintain behaviors in a manner that provides a safe   environment for the veteran, the veteran's family, and any people coming into contact with the dog.

c.   Statement regarding aggressive behavior by a service dog.   The contractor must never allow a dog to remain in a pairing if it exhibits behaviors that suggest that people or other animals could be harmed by the dog.   This statement does to apply to species-appropriate defensive measures taken by a service dog if it is attacked or threatened by another animal.   If GAMSD learns of aggressive behavior, VA must be notified within 8 hours.

d. When a pairing is not successful, GAMSD will remove the existing service dog and replace it with a new one, within a reasonable amount of time (as negotiated with the COR) unless the veteran is unable or unwilling to care for the dog (see paragraph 8.a. above).  GAMSD will make a good faith attempt to utilize the returned service dog in another pairing with another veteran,

VA248-BP-0218 0002

unless circumstances such as those described in 8.a.iii or 8.b. apply that cannot reasonable be corrected by additional training.

e. In exceptional circumstances, GAMSD and VA may not agree that a pairing is successful or that a service dog is suitable for pairing or re-pairing. If no agreement can be reached after discussions, VA shall have the right of a final decision.

f. VA also retains the right to seek additional training for a GAMSD service dog with another vendor at VA's expense if VA deems it to be in the best interests of the veteran.

## B. GENERAL REQUIREMENTS

1. For every task, the contractor shall identify in writing all necessary subtasks (if any), associated costs by task, together with associated sub milestones dates for accomplishment of tasks. The contractor's subtask structure shall be reflected in the technical proposal and detailed project management plan (PMP).
2. All written deliverables shall be phrased in layperson language. Statistical and other technical terminology shall not be used without providing a glossary of terms.
3. Where a written milestone deliverable is required in draft form, the VA will complete their review of the draft deliverable within 10 calendar days from date of receipt. The contractor shall have 30 calendar days to deliver the final deliverable from date of receipt of the government's comments.

## C. SPECIFIC MANDATORY TASKS AND ASSOCIATED DELIVERABLES

Description of Tasks and Associated Deliverables: The contractor shall provide the specific deliverables described below within the performance periods stated in Section A. 4 of this SOW.

**Task One:** The contractor shall provide a detailed Project Management Plan (PMP) and briefing for the VA Project team, which represents the contractor's plan for completing the task order. The contractor's plan shall be responsive to this SOW and describe, in further detail, the approach to be used for each aspect of the task order as defined in its technical proposal. At a minimum, the PMP shall include the risk, quality and technical management approach, work breakdown structure (WBS), detailed schedule, cost estimate requirements and proposed personnel. The contractor shall keep the PMP up to date throughout the period of performance.

**Deliverable for Task One:** A detailed PMP and briefing. The  PMP shall be delivered within 15 days after date of contract award.

**Task Two:** Dogs shall be trained by personnel at contractors with a favorable history of providing service dogs. Service dogs shall be provided by each contractor with the first service dog placed within five (5) months of receipt of contract award. All service dogs shall be identified with an implanted microchip to ensure consistent identification throughout the study and all deliverables shall reference both the service dog's name and the microchip ID number.   This tracking will be monitored by the Contract Officer's Representative (COR) and maintained in a contract file to be submitted to the Contract Officer (CO) annually.

**Deliverable for Task Two:** Contractor's shall provide trained service dogs. First dog(s) shall be placed within five (5) months after date of contract award.

5

**VA248-BP-0218 0002**

**Deliverable** 2A:   All service dogs shall be identified with an implanted microchip to ensure consistent identification throughout the study, and all deliverables shall reference both the service dog's name and the microchip ID number.   This tracking will be monitored by the COR and maintained in a contract file to be submitted to the CO annually.

**Deliverable** 2B:   Before a new trainer begins work, contractor shall provide a written summary of the trainer's background, training experience, and description of the training methods to VA.   The summary must be in adequate detail to allow VA to understand the trainer's experience level and training approach to service dogs.

**Deliverable for Task Two:** Contractor's shall provide trained service dogs. First dog(s) shall be placed within five (5) months after date of contract award.

**Task Three:**   The Contractor shall provide healthy, well-trained service dogs that are trained to meet needs of veterans with PTSD. The training shall be tailored to the needs of the veterans and shall meet or exceed the needs of the Americans with Disabilities Act (ADA) by providing a minimum of three trained tasks appropriate for the individual veteran. Service dogs must meet minimum standards for public access. Training shall include:

- Documented minimum of 120 hours of schooling over six (6) months
- Thirty (30) hours (Documented) shall be devoted to outings that prepare the service dog for work in public places.
- Documented obedience training (sit, stay, come, down, heel and off leash recall) in response to verbal or hand commands.
- The contractor will provide a thorough physical exam for all service dogs along with confirmation of health and wellness insurance and catastrophic insurance which will cover each dog for two years.   This documentation should be provided to the COR prior to the dog being placed with a veteran.
- Document shall be provided to prove that the dogs have been thoroughly evaluated for manners which include non-aggressive behavior, no begging of food, no urination without command, and no inappropriate sniffing or interest in other dogs and people when they pass.

The contractor will perform pre-placement home visits with each veteran that is to be paired with a service dog.   When the veteran is paired with a service dog the contractor will perform follow up visits to ensure additional training is provided if required and to observe the veteran together with the service dog ensuring both are working well together.

**Deliverables for Task Three:**

**Deliverable 3A:** shall consist of providing proof of appropriate training for each service dog prior to matching with veteran. The dog shall be identified to allow a match. Deliverable 3A shall be submitted at least Thirty (30) days before dog will be provided to the veteran.

**Deliverable 3B:** shall consist of documentation of pairing a service dog with a veteran participating in the study. The Contractor shall assure that after training and matching, Service Dogs shall demonstrate basic obedience skills by responding to voice and/or hand commands.   For example, these skills shall be

VA248-BP-0218 0002

completed 90% of the time on time on the first attempt of asking. The dog shall be trained in a minimum of three (3) tasks based on the individual needs/challenges of the veteran.   Documentation will include information on which tasks were trained. The tasks are those the paired veteran needs/would benefit from and shall be identified and the dog trained either before placement or during the trial pairing period. The documentation shall consist of the dog's identification, the name of the veteran, the address of the veteran's residence, the date of the pairing, notes on potential problems with the pairing, and the dates and method(s) of planned follow-ups with the veteran. Regarding the likelihood of a pairing success, the report shall also include an assessment of the veteran's home environment and the effect of other people in that environment. The dog shall be trained to accurately repeat the tasks either before placement or during a trial pairing period. Deliverable 3B shall be submitted within 10 days of the pairing a dog with a veteran. Prior to initiating a pairing, contractor shall send a trained representative to visit the home of the veteran to assess whether the home environment is conducive to a successful pairing.   In addition, before pairing, a good faith effort shall be made to meet and appropriately train all people expected to be in the household after the service dog is assigned.

**Deliverable 3C:** shall consist of a quarterly, cumulative report of all dogs currently paired. The report shall consist of the dog's identification, the address of the veteran's residence, the date of pairing, notes on potential problems with the pairing and the dates and method(s) of actual follow-ups with the veteran.   If concerns with a pairing arise and the agency feels follow-up visits are required as noted in Item #3 of Price/Cost Schedule, the agency should alert the COR of the need prior to scheduling the visit with the veteran.

**Deliverable 3D:** Pre-placement home visits will be conducted by the contractor prior to placement with a service dog and documentation will be provided to the COR after each home visit.   Face to face visits with the veteran and service dog will be coordinated by the contractor and performed one time a month for the first three months then quarterly thereafter for two years.   Reports documenting these face to face visits and progress of pairing will be provided to the COR.

**Task Four :** The contractor shall aid in establishing a veterinary care program (VCP) for the duration of the proposed three (3) year study, which shall include a preventative health care (wellness) evaluation for the service dogs. This evaluation shall include routine canine immunizations, physical examinations, parasite surveillance and treatment including but not limited to heartworm checks, as well as other common internal and external canine parasites.

**Deliverable for Task Four:** The contractor shall deliver a report per veterinarian visit regarding the service dog's health. The report shall be from the veterinarian and provided to the VA within 30 days of the visit. The report shall include data of visit, evaluation of service dog, general health information (e.g., weight, temperature, health assessment, etc.).   This visit will take place prior to the pairing with the veteran.

**Task Five:** The contractor shall provide health insurance for each dog for two years.   The insurance will cover the maximum percentage of the cost of treatments and provide coverage for hereditary and congenital conditions.  The insurance will also include the maximum percentage of accident, illness and injury with an annual deductible if applicable.   In addition, the insurance shall include four routine wellness check-ups per year.

7

VA248-BP-0218 0002

**Deliverable for Task Five:** The contractor shall provide proof of health insurance and physical exam prior to the service dog going home with the veteran.

## D. SCHEDULE FOR DELIVERABLES

1. If for any reason the scheduled time for a deliverable cannot be met, the contractor shall explain why (and include the original Deliverable due date) in writing to the CO, including a firm commitment of when the work shall be completed. This notice to the CO shall cite the reasons for the delay and the impact of the delay on the overall project. The CO will review the facts along with the VA investigative team and issue a response in accordance with applicable regulations that include terms and conditions of the contract.

## E. CHANGES TO STATEMENT OF WORK/MODIFICATION OF CONTRACT

Only the CO is authorized to make any changes to the contract terms and conditions or the SOW. Changes or modifications to the contract shall be made, authorized and approved only through the written correspondence from the CO. Any cost incurred by the contractor(s) without the written authorization of the CO shall be the sole responsibility of the contractor, and will not be authorized for payment by the government and shall be borne by the contractor.

## F. CONTRACTOR EXPERIENCE REQUIREMENTS – KEY PERSONNEL

The contractor shall identify its skilled, experienced professional and/or technical personnel that shall be responsible for training the service dog(s). The contractor shall provide a resume for these personnel that shall include past performance and historical documentation of performance in the service dog industry. Contractor documentation of past performance shall provide evidence of personnel's proficiency in this Task. These are defined as KEY PERSONNEL and are those persons whose resumes are to be submitted. The contractor agrees that the Key Personnel shall not be removed, diverted, or replaced from work without approval of the CO.

Any personnel the contractor offers as substitutes shall have the ability and qualifications equal to or better than the key personnel that are being replaced. Requests to substitute personnel shall be approved by the CO. All requests for approval of substitute personnel shall be submitted to the CO within 30 calendar days prior to making any change in key personnel. The request shall be written and provide a detailed explanation of the circumstances necessitating the proposed substitution. The contractor shall submit a complete resume for the proposed substitute, any changes to the rate specified in the contract (as applicable) and any information requested by the CO needed to approve or disapprove the proposed substitution. The CO shall evaluate such requests and promptly notify the contractor of approval or disapproval thereof in writing.

## G. CONTRACTOR PERSONNEL SECURITY TRAINING

1. Security Training and Background Investigation

All contractor and subcontractor employees performing work under this contract or order shall complete the VA's on-line Security Awareness and Privacy Awareness Training Courses annually. Contractors shall provide signed certifications of training course completion to the CO during each year of the Contract. This requirement is in addition to any other training that may be required of the contractor(s) and subcontractor(s).

8

VA248-BP-0218 0002

The position sensitivity impact for this research study has been designated as a **LIMITED** Risk and the level of background investigation is NACI.   Currently the pricing for a NACI investigation is $267.00. That price may increase/decrease and will be updated as necessary.

2. Contractor Responsibilities

a. All training and/or agency personnel who will perform services at the veterans home are required to obtain background investigations through the VA.   The contractor shall bear the expense of obtaining background investigations. Upon award the contractor shall provide to the COR or CO information necessary for each contractor employee to obtain a background investigation.   Investigation will be conducted by VA in coordination with the Office of Personnel Management (OPM) requirements; costs incurred by the VA should be reimbursed by the contractor within 30 days.

## H. CONFIDENTIALITY AND NONDISCLOSURE
It is agreed that:
1. Employees, affiliates and volunteers working with the veterans are expected to adhere to VA confidentiality laws, regulations and rules that govern confidentiality related to VA research participants.  Personally Identifiable Information (PIF) about research participants is not to be shared by anybody involved in the research project with anyone, at any time, under any circumstances without the explicit consent of the veteran. The consenting veteran must be made aware of possible repercussions of revealing participation in the study before PIF can be released.
2. The preliminary and final deliverables and all associated working papers, application source code, and other material deemed relevant by the VA which has been generated by the contractor in the performance of this task order are the exclusive property of the U.S. Government and shall be submitted to the CO at the conclusion of this contract.
3. The CO will be the sole authorized official to release verbally or in writing, any data, the draft deliverables, the final deliverables, or any other written or printed materials pertaining to this contract. No information shall be released by the contractor. Any request for information relating to the study under this contract presented to the contractor(s) and /or subcontractor(s), shall be submitted to the CO for his/her response.
4. Press releases, marketing material or any other printed or electronic documentation related to this project shall not be publicized without the written approval of the CO.

## ATTACHMENT A - SCHEDULE OF DELIVERABLES

| DELIVERABLE No. | DELIVERABLE | QUANTITY | DATE DUE |
| --- | --- | --- | --- |
| Task One | Detailed PMP briefing | To be determined on individual orders | Within 15 days after Contract Award |
| Task Two | Provide trained.Service Dog | To be determined on individual orders | Within 5 months of order |
| Task Three A | Proof of appropriate training prior to placement of service dogs | To be determined on individual orders | 30 days prior to paring with Veteran |

9

VA248-BP-0218 0002

| Task Three B | Documentation of pairing & potential problems & potential for further training. | To be determined on individual orders | 10 days after paring has occurred |
| Task Three C | Documentation regarding follow-up of pairing & need/ approval for follow-up visits | To be determined on individual orders | Every 90 days starting at pairing |
| Task Three D | Pre-placement home visits, Follow-up, face to face visit Reports | To be determined on individual orders | Within 10 days of each visit |
| Task Four | Report from veterinarian | To be determined on individual orders | Within 30 days of the veterinarian visit |
| Task Five | Proof of health insurance and physical exam | To be determined on individual orders | Within 10 days of being paired with a veteran |

| SOLICITATION/CONTRACT/ORDER FOR COMMERCIAL ITEMS OFFEROR TO COMPLETE BLOCKS 12, 17, 23, 24, & 30 | | 1. REQUISITION NO. 508-12-3-2103-0251 | | PAGE 1 OF 5 |
|---|---|---|---|---|

| 2. CONTRACT NO. | 3. AWARD/EFFECTIVE DATE 07-05-2012 | 4. ORDER NO. VA248-BP-0218 VA240-12-J-0055 | 5. SOLICITATION NUMBER | 6. SOLICITATION ISSUE DATE |
|---|---|---|---|---|

| 7. FOR SOLICITATION INFORMATION CALL: | a. NAME Paula Stankovic | | b. TELEPHONE NO. (No Collect Calls) 412-822-3439 | 8. OFFER DUE DATE/LOCAL TIME |
|---|---|---|---|---|

**9. ISSUED BY**   CODE 00240E
US Department of Veterans Affairs
Veterans Health Administration
Service Area Organization (SAO) East
323 North Shore Drive, Suite 500
Pittsburgh PA 15212-5319

| 10. THIS ACQUISITION IS | UNRESTRICTED OR ☐ SET ASIDE: _____ % FOR: |
|---|---|
| ☐ SMALL BUSINESS | ☐ WOMEN-OWNED SMALL BUSINESS (WOSB) ELIGIBLE UNDER THE WOMEN-OWNED SMALL BUSINESS PROGRAM |
| ☐ HUBZONE SMALL BUSINESS | ☐ EDWOSB          NAICS: 812910 |
| ☐ SERVICE-DISABLED VETERAN-OWNED SMALL BUSINESS | ☐ 8(A)          SIZE STANDARD: $7 Million |

| 11. DELIVERY FOR FOB DESTINATION UNLESS BLOCK IS MARKED ☒ SEE SCHEDULE | 12. DISCOUNT TERMS | 13a. THIS CONTRACT IS A RATED ORDER UNDER DPAS (15 CFR 700) | 13b. RATING N/A |
|---|---|---|---|
| | | | 14. METHOD OF SOLICITATION ☐ RFQ  ☐ IFB  ☐ RFP |

**15. DELIVER TO**   CODE 00240E
US Department of Veterans Affairs
Veterans Health Administration
Service Area Organization (SAO) East
323 North Shore Drive, Suite 500
Pittsburgh PA 15212-5319

**16. ADMINISTERED BY**   CODE 00240E
US Department of Veterans Affairs
Veterans Health Administration
Service Area Organization (SAO) East
323 North Shore Drive, Suite 500
Pittsburgh PA 15212-5319

**17a. CONTRACTOR/OFFEROR**   CODE ____   FACILITY CODE 6EXW4
GUARDIAN ANGELS MEDICAL SERVICE DOGS, INC.

3251 NE 180TH AVE

WILLISTON FL 326966812
TELEPHONE NO.

**18a. PAYMENT WILL BE MADE BY**   CODE 00240E
US Department of Veterans Affairs
Financial Services Center (FSC)

P.O. Box 149971
Austin TX 78714-8971

PHONE:          FAX:

☐ 17b. CHECK IF REMITTANCE IS DIFFERENT AND PUT SUCH ADDRESS IN OFFER

18b. SUBMIT INVOICES TO ADDRESS SHOWN IN BLOCK 18a UNLESS BLOCK BELOW IS CHECKED ☐ SEE ADDENDUM

| 19. ITEM NO. | 20. SCHEDULE OF SUPPLIES/SERVICES | 21. QUANTITY | 22. UNIT | 23. UNIT PRICE | 24. AMOUNT |
|---|---|---|---|---|---|
| | See CONTINUATION Page | | | | |
| | | | | | |
| | See Schedule Page 3 | | | | |

(Use Reverse and/or Attach Additional Sheets as Necessary)

| 25. ACCOUNTING AND APPROPRIATION DATA   See CONTINUATION Page | 26. TOTAL AWARD AMOUNT (For Govt. Use Only) $150,000.00 |
|---|---|

| ☐ 27a. SOLICITATION INCORPORATES BY REFERENCE FAR 52.212-1, 52.212-4, FAR 52.212-3 AND 52.212-5 ARE ATTACHED. ADDENDA ☐ ARE ☐ ARE NOT ATTACHED. |
|---|
| ☐ 27b. CONTRACT/PURCHASE ORDER INCORPORATES BY REFERENCE FAR 52.212-4. FAR 52.212-5 IS ATTACHED. ADDENDA ☐ ARE ☐ ARE NOT ATTACHED. |

| ☐ 28. CONTRACTOR IS REQUIRED TO SIGN THIS DOCUMENT AND RETURN ___ COPIES TO ISSUING OFFICE. CONTRACTOR AGREES TO FURNISH AND DELIVER ALL ITEMS SET FORTH OR OTHERWISE IDENTIFIED ABOVE AND ON ANY ADDITIONAL SHEETS SUBJECT TO THE TERMS AND CONDITIONS SPECIFIED | ☐ 29. AWARD OF CONTRACT: REF. _____ OFFER DATED _____. YOUR OFFER ON SOLICITATION (BLOCK 5), INCLUDING ANY ADDITIONS OR CHANGES WHICH ARE SET FORTH HEREIN IS ACCEPTED AS TO ITEMS: |
|---|---|

| 30a. SIGNATURE OF OFFEROR/CONTRACTOR *Carol Borden* | 31a. UNITED STATES OF AMERICA (SIGNATURE OF CONTRACTING OFFICER) |
|---|---|
| 30b. NAME AND TITLE OF SIGNER (TYPE OR PRINT) CAROL BORDEN, EXECUTIVE DIRECTOR | 30c. DATE SIGNED 7-5-12 | 31b. NAME OF CONTRACTING OFFICER (TYPE OR PRINT) Trevor Martin | 31c. DATE SIGNED |

AUTHORIZED FOR LOCAL REPRODUCTION
PREVIOUS EDITION IS NOT USABLE

STANDARD FORM 1449 (REV. 2/2012)
Prescribed by GSA - FAR (48 CFR) 53.212

## Table of Contents

SECTION A ........................................................................................................................................ 1

    A.1  SF 1449  SOLICITATION/CONTRACT/ORDER FOR COMMERCIAL ITEMS ........................ 1

SECTION B - GENERAL TERMS ........................................................................................................ 5

    B.1  BPA TERMS AND CONDITIONS ................................................................................................ 5

CONTINUATION PAGE

**PRICE/COST SCHEDULE**

| ITEM NO. | DESCRIPTION OF SUPPLIES/SVCS | QTY | UNIT | UNIT PRICE | AMOUNT |
|----------|------------------------------|-----|------|------------|--------|
| 1 | Service Dog | 10 | EA | $10,000.00 | $100,000.00 |
| 2 | Insurance Dog Health Insurance in accordance with the Statement of Work. Price based on locality where veteran lives. | 10 | LOT | $2,062.00 | $20,620.00 |
| 3 | Initial home visits and Follow-up Visits | as required | EA | | |
| | 0-50 miles | | | $70.00 | $70.00 |
| | 51-100 miles | | | $120.00 | $120.00 |
| | 101-150 miles | | | $170.00 | $170.00 |
| | 151-200 miles | | | $220.00 | $220.00 |
| | 201-250 miles | | | $270.00 | $270.00 |
| | 251-300 miles | | | $310.00 | $310.00 |

Note:

1. Veterans who are eligible for this study will reside within a radius of 150 miles of Guardian Angels Medical Service Dogs (GAMSD) and live in Florida. Thirteen (13) Veterans living outside the 150 mile radius will be included in the study because they were enrolled prior to the study suspension. Veterans living outside 150 miles who contacted the study team after January 18, 2012 will be excluded.

2. Visits as required in Task 3, Deliverable 3B,C, and D. These require preapproval as noted in "Task" and "Schedule of Deliverables."

Total for delivery order, inclusive of CLIN 1, 2, and 3 - not to exceed $150,000.00.

**ACCOUNTING AND APPROPRIATION DATA:**

**APPROPRIATION**
820010100

**REQUISITION NUMBER**
508-12-3-2103-0251

**PURCHASE ORDER#**
508D27128

**AMOUNT**
$150,000.00

**SUBMITTING INVOICES:** Ensure the Purchase Order # listed above is referenced on all invoices.

**GOVERNMENT INVOICE ADDRESS:** Invoices from the contractor shall be submitted in one of the two following methods:

    1.  Faxed to FMS Austin 512-460-5544

    2. Or mailed to the following address:

        Department of Veterans Affairs
        Financial Services Center
        P.O. Box 149971
        Austin TX    78714-9971

Department of Veterans Affairs                    BLANKET PURCHASE AGREEMENT

## SECTION B - GENERAL TERMS

### B.1   BPA TERMS AND CONDITIONS

This order is subject to the terms referenced in BPA VA248-BP-0218.

Aug 05 11 10:59a       Guardian Angels Medical                    3525283554              p.3

| AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT | | BPA NO<br>VA243-BP-0018 | 1 CONTRACT ID CODE | PAGE<br>1 | OF PAGES<br>3 |
|---|---|---|---|---|---|

| 2 AMENDMENT/MODIFICATION NO<br>0001 | 3 EFFECTIVE DATE<br>8-4-11 | 4 REQUISITION/PURCHASE REQ NO | | 5 PROJECT NO (If applicable)<br>0 |
|---|---|---|---|---|

| 6 ISSUED BY                          CODE | | 7 ADMINISTERED BY (If other than Item 6)        CODE |
|---|---|---|
| Department of Veterans Affairs<br>James A. Haley Veterans Hospital (900)<br>13000 Bruce B. Downs Blvd<br>Tampa FL 33612 | | Department of Veterans Affairs<br>James A. Haley Veterans Hospital (900)<br>13000 Bruce B. Downs Blvd<br>Tampa FL 33612 |

| 8 NAME AND ADDRESS OF CONTRACTOR (No, street, county, State and ZIP Code) | | | (X) | 9A AMENDMENT OF SOLICITATION NO |
|---|---|---|---|---|
| GUARDIAN ANGELS MEDICAL SERVICE DOGS, INC.<br><br>3501 NE 171 ST AVE<br>WILLISTON FL 326966800 | | | X | 9B DATED (SEE ITEM 11) |
| | | | | 10A MODIFICATION OF CONTRACT/ORDER NO<br>VA24883P0212 VA69730L9106 |
| CODE                          FACILITY CODE | | | | 10B DATED (SEE ITEM 13) |

## 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended.

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods: (a) By completing Items 8 and 15, and returning _____ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12 ACCOUNTING AND APPROPRIATION DATA    (If required)

## 13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS, IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

| (X) | |
|---|---|
| | A THIS CHANGE ORDER IS ISSUED PURSUANT TO (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO IN ITEM 10A |
| | B THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES    (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43 103(b) |
| X | C THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF        FAR 52.212-5 |
| | D OTHER (Specify type of modification and authority) |

E. IMPORTANT:   Contractor ☐ is not, ☒ is required to sign this document and return __1__ copies to the issuing office.

14 DESCRIPTION OF AMENDMENT/MODIFICATION   (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

SEE ATTACHED SCHEDULE

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A NAME AND TITLE OF SIGNER    (Type or print) | | 16A NAME AND TITLE OF CONTRACTING OFFICER    (Type or print) |
|---|---|---|
| Carol Borden | | Michael Wilson |
| 15B CONTRACTOR/OFFEROR<br><br>*Carol Borden*<br>(Signature of person authorized to sign) | 15C DATE SIGNED<br>8-5-11 | 16B UNITED STATES OF AMERICA<br><br>By *Michael Wilson*<br>(Signature of Contracting Officer) | 16C DATE SIGNED<br>8-5-11 |

NSN 7540-01-152-8070<br>PREVIOUS EDITION NOT USABLE

STANDARD FORM 30 (REV. 10-83)<br>Prescribed by GSA    FAR (48 CFR) 53.243

**VA248BP0218  VA673D15106  0001**

The purpose of this modification is to revise line items 0001 &
0002 by increasing the quantities and to revise the accounting
and appropriation data to reflect the new purchase order number
and amount.

## A.1 PRICE/COST SCHEDULE

Line Items 0001 & 0002 are changed from:

| ITEM NO. | DESCRIPTION OF SUPPLIES/SVCS | QTY UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|
| 0001 | Service Dog Firm-Fixed Price | 6.00 EA | $10,000.0000 | $60,000.00 |
| 0002 | Dog Health Insurance in accordance with the Statement of Work.  This line item is an ESTIMATE ONLY until a firm proposal is received from the contractor.  Upon a firm proposal a modification will be executed to incorporate a firm-fixed price per dog. | 1.00 LOT | $8,749.0000 | $8,749.00 |

GRAND TOTAL --- $68,749.00
============================

To Read:

| ITEM NO. | DESCRIPTION OF SUPPLIES/SVCS | QTY UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|
| 0001 | Service Dog Firm-Fixed Price | 12.00 EA | $10,000.00 | $120,000.00 |
| 0002 | Dog Health Insurance in accordance with the Statement of Work. Firm-Fixed Price | 12.00 EA | $1,342.92 | $16,115.04 |

GRAND TOTAL --- $136,115.04
============================

**VA248BP0218  VA673D15106  0001**

The Accounting and Appropriation Data is changed from:

ACCOUNTING AND APPROPRIATION DATA:

APPROPRIATION                          REQUISITION NUMBER
360/10161-1370-812400-2660             673-11-3-1370-0047

PURCHASE ORDER #                       AMOUNT
673-D10018                             $68,749.00

To Read:

ACCOUNTING AND APPROPRIATION DATA:

APPROPRIATION                          REQUISITION NUMBER
360/10161-1370-812400-2660             673-11-4-1370-0061

PURCHASE ORDER #                       AMOUNT
673-D15106                             $136,115.04


SUBMITTING INVOICES:  Ensure the Purchase Order # listed above is
referenced on all invoices.

Aug 08 11 08:58a      Guardian Angels Medical          3525283554                    p 2

| AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT | | REM NO | 1 CONTRACT ID CODE | PAGE | OF PAGES |
|---|---|---|---|---|---|
| | | VA248-PPP-031? | | 1 | ? |

| 2 AMENDMENT/MODIFICATION NO | 3 EFFECTIVE DATE | 4 REQUISITION/PURCHASE REQ NO | 5 PROJECT NO (if applicable) |
|---|---|---|---|
| 0001 | 8-4-11 | YOUR | |

| 6 ISSUED BY | CODE | 7 ADMINISTERED BY (if other than item 6) | CODE |
|---|---|---|---|
| Department of Veterans Affairs | | Department of Veterans Affairs | |
| James A. Haley Veterans Hospital (90?0) | | James A. Haley Veterans Hospital (90?0) | |
| 13000 Bruce B. Downs Blvd | | 13000 Bruce B. Downs Blvd | |
| Tampa FL 33612 | | Tampa FL 33612 | |

| 8 NAME AND ADDRESS OF CONTRACTOR (No. street, county, State and ZIP Code) | | (x) | 9A AMENDMENT OF SOLICITATION NO |
|---|---|---|---|
| GUARDIAN ANGELS MEDICAL SERVICE DOGS, INC. | | | 9B DATED (SEE ITEM 11) |
| WILLISTON FL 32696 | | X | 10A MODIFICATION OF CONTRACT/ORDER NO |
| W | | | VA248-PPP-031? |
| CODE                      FACILITY | | | 10B DATED (SEE ITEM 13) |

## 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended.
Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods:
(a) By completing Items 8 and 15, and returning _____ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12 ACCOUNTING AND APPROPRIATION DATA (if required)

## 13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS,
## IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

| (X) | |
|---|---|
| | A THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A |
| | B THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14 PURSUANT TO THE AUTHORITY OF FAR 43.103(b) |
| X | C THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: FAR 52.2?-5 |
| | D OTHER (Specify type of modification and authority) |

E. IMPORTANT:     Contractor ☐ is not, ☒ is required to sign this document and return _____ copies to the issuing office.

14 DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

SEE ATTACHED SCHEDULE

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A NAME AND TITLE OF SIGNER (Type or print) | | 16A NAME AND TITLE OF CONTRACTING OFFICER (Type or print) | |
|---|---|---|---|
| Carol Borden | | Michael Wilson | |
| 15B CONTRACTOR/OFFEROR | 15C DATE SIGNED | 16B UNITED STATES OF AMERICA | 16C DATE SIGNED |
| *Carol Borden* | 8-5-11 | *Michael Wilson* | 8-5-11 |
| (Signature of person authorized to sign) | | (Signature of Contracting Officer) | |

NSN 7540-01-152-8070
PREVIOUS EDITION NOT USABLE

STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA - FAR (48 CFR) 53.243

The purpose of this modification is to Revise Line Item 2 to reflect a Firm Fixed Price (FFP) and to Revise the Statement of Work (changes are highlighted in red).

### A.1 PRICE/COST SCHEDULE

Line Item 2 is changed from:

| ITEM NO. | DESCRIPTION OF SUPPLIES/SVCS | QTY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 2 | Dog Health Insurance in accordance with the Statement of Work. This line item is an ESTIMATE ONLY until a firm proposal is received from the contractor. Upon a firm proposal a modification will be executed to incorporate a firm-fixed price per dog. | 1.00 | LOT | $8,749.0000 | $8,749.00 |

To Read:

| ITEM NO. | DESCRIPTION OF SUPPLIES/SVCS | QTY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 2 | Insurance Dog Health Insurance in accordance with the Statement of Work. FFP | 1.00 | EA | $1,342.92 | $1,342.92 |

The Statement of Work if revised to read the following (changes are highlighted in red):

## STATEMENT OF WORK
### A.  GENERAL INFORMATION : PILOT SERVICE DOG PROJECT

1.      This agreement is issued under the authority of Public Law (P.L.) 111-84, U.S. Senate Bill S.1390, Section 1077.

2.      Scope of Work: The contractor shall provide all resources necessary to accomplish the deliverables described in this statement of work (SOW), except as may otherwise be specified. The purpose of this Pilot project is to determine how the use of service dogs (SD) may impact the overall outcomes including cognitive, functional and quality of life, for veterans who have been diagnosed with post traumatic stress disorder syndrome (PTSD).

2a.     Government Requirement:      The Government's maximum requirement of two hundred (200) service dogs may be required for this project. The Government reserves the right to revise its maximum requirement at any time during contract performance.

# EXHIBIT C

| AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT | BPA NO. VA248-BP-0218 | 1. CONTRACT ID CODE | PAGE 1 | OF 3 |
|---|---|---|---|---|

| 2. AMENDMENT/MODIFICATION NO. P00003 | 3. EFFECTIVE DATE 08-31-2012 | 4. REQUISITION/PURCHASE REQ. NO. | 5. PROJECT NO.(if applicable) NONE |
|---|---|---|---|

| 6. ISSUED BY | CODE | 00240E |
|---|---|---|

US Department of Veterans Affairs
Veterans Health Administration
Service Area Organization (SAO) East
323 North Shore Drive, Suite 500
Pittsburgh PA 15212-5319

7. ADMINISTERED BY  (if other than item 6)     CODE   00240E

US Department of Veterans Affairs
Veterans Health Administration
Service Area Organization (SAO) East
323 North Shore Drive, Suite 500
Pittsburgh PA 15212-5319

8. NAME AND ADDRESS OF CONTRACTOR     (No., street, county, State and ZIP Code)

GUARDIAN ANGELS MEDICAL SERVICE DOGS, INC.

3251 NE 180TH AVE

WILLISTON FL 326966812

CODE                                   FACILITY CODE

(X)

9A. AMENDMENT OF SOLICITATION NO.

9B. DATED (SEE ITEM 11)

10A. MODIFICATION OF CONTRACT/ORDER NO.
VA248-BP-0218

10B. DATED (SEE ITEM 13)
06-24-2011

X

## 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended.
Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods:
(a) By completing items 8 and 15, and returning _____ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR AC-KNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA     (if required)

## 13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS, IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

| (X) | |
|---|---|
| | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO:  (Specify authority)   THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. |
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES  (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b). |
| X | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF:   in accordance with FAR clause 52.212-4(m) |
| | D. OTHER (Specify type of modification and authority) |

E. IMPORTANT:   Contractor ☒ is not,  ☐ is required to sign this document and return _____ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION   (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

This supplemental agreement terminates for default: BPA VA248-BP-0218, in its entirety, in accordance with FAR 52.212-4(m), and the cancellation clause in the BPA. This also includes any open delivery or task orders issued on the BPA.

Adherence to confidentiality and nondisclosure as listed in the BPA shall continue. Information gathered as a direct result of the performance of this BPA shall be considered confidential and shall not be disclosed without proper consent of the VA.

See Continuation Page

Except as provided herein, all terms and conditions of the document referenced in item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER     (Type or print) | 16A. NAME AND TITLE OF CONTRACTING OFFICER   (Type or print) Cheryl Homison Contract Officer |
|---|---|
| 15B. CONTRACTOR/OFFEROR (Signature of person authorized to sign) | 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA BY (Signature of Contracting Officer) | 16C. DATE SIGNED 8/31/2012 |

NSN 7540-01-152-8070
PREVIOUS EDITION NOT USABLE

STANDARD FORM 30  (REV. 10-83)
Prescribed by GSA - FAR (48 CFR) 53.243

(1) Contract number: VA248-BP-0218; Dated: 06-24-2011

(2) The acts or omissions constituting the default (BPA, Sections C {Specific Mandatory Tasks and Associated Deliverables}, H {Confidentiality and Nondisclosure}, and E {Changes to Statement of Work/Modification of Contract})

A) Improper/inadequate Veterinary Care Program, including a lack of needed professional veterinary care and diagnosis [Section C, Tasks 3 and 4]:

1) Pairing underweight dogs and at least one dog exhibiting diarrhea at the time of pairing;

2) Pairing at least two dogs with clinical signs of hip dysplasia, another dog with radiographic evidence of hip dysplasia, and a lack of a hip dysplasia screening program to prevent premature retirement of service dogs;

3) Pairing dogs with undiagnosed yet very serious potential hereditary problems such as a suspected coagulation disorder;

4) Refusal to obtain timely veterinary care for dogs on the property with severe medical needs such as corneal lacerations and extensive ear damage due to bites by other dogs.

5) Inadequate diagnosis of skin lesions, resulting in a failure to rule out potentially zoonotic agents in paired dogs.

6) Lack of oversight by a licensed veterinarian in the veterinary medical program, including the parasite control program.

B) Pairing dogs prior to microchip placement. [Section C, Task 2]

C) Lack of a consistent and effective de-worming and parasite control program at Contractor facility, resulting in chronic zoonotic parasitic infections which are a threat to dogs and people. [Section C, Task 4]

D) Failure to provide healthy and trained service dogs in accordance with BPA, including the violation of the prohibition against placing dogs with known aggressive behavior toward people or other animals. [Section C, Task 3]

E) Violations of the confidentiality and nondisclosure provisions by allowing videography of veteran images in the study without VA approval. [Section H items 1, 2, and 4]

F) Pairing at VA expense before contract execution and during contract performance suspensions. [Section E]

(3) Guardian Angels Medical Service Dogs, Incorporated's right to proceed further under the contract (or a specified portion of the contract) is hereby terminated;

(4) The supplies and/or services terminated may be purchased against Guardian Angels Medical Service Dogs, Inc. account, and that Guardian Angels Medical Service Dogs, Inc. will be held liable for any excess costs, including those incurred by VA to return paired dogs to an acceptable state of health;

(5) Guardian Angels Medical Service Dogs, Incorporated's failure to perform under this BPA is not excusable, and this notice of termination constitutes as such a decision.  Accordingly, Guardian Angels Medical Service Dogs, Inc. has the right to appeal such decision under the Disputes clause;

(6) The Government reserves all rights and remedies provided by law or under the contract, in addition to charging excess costs; and

(7) This notice hereby constitutes a decision that Guardian Angels Medical Service Dogs, Inc. is in default as specified and that the contractor has the right to appeal under the Disputes clause.

# EXHIBIT D

# DAVIDOW LAW, P.A.

**Practice Areas**
- Business Litigation
- Personal Injury
- DUI & Criminal Defense

Joseph A. Davidow
975 6ᵗʰ Avenue South, Suite 200
Naples, FL 34102
Tel: (239) 465-0531
Fax: (239) 465-0530
jdavidow@davidowlaw.net

*"keeping the doors of the courthouse open"*

February 28, 2013

**VIA U.S. Certified Mail**
Cheryl Homison
Veterans Health Administration
U.S. Dept. of Veterans Affairs
Service Area Organization (SAO) East
323 North Shore Drive, Suite 500
Pittsburgh, P.A. 15212-5319

RE:     **Formal Dispute – BPA No. VA248-BP-0218**

Dear Ms. Homison:

Please be informed that the above addressed law firm represents Guardian Angels Medical Service Dogs, Inc., ("GA") with regard to its disputes and request for review and appeal of your decision in the attached **Exhibit A**.

Pursuant to FAR 52.233-1, GA is hereby making a formal demand against the United States Department of Veterans Affairs ("VA") over the contract ("Contract") attached herein and marked as **Exhibit B**. On December 21, 2013, GA sent a demand letter directly to the VA and has not received an answer or response. This letter is attached herein as though fully and specifically set out and marked as **Exhibit C**.

In your decision, you state that the Contract between GA and VA is terminated for cause pursuant to FAR 52.212-4(m). GA materially disagrees with this decision as it is unsupported by the Contract itself and the laws governing contracts similar in nature. None of the allegations set forth in **Exhibit A** rise to the level of a "default" as described in the Contract.

Since there was no default by GA, this Contract must be determined to have been terminated by VA pursuant to FAR 52.212-4(l)- termination for convenience. With regard to terminations for convenience the VA is obligated to pay a percentage of the contract price reflecting the percentage of work performed prior to the notice of termination, plus reasonable charges that have resulted and will continue to result from

# EXHIBIT E



VETERANS HEALTH ADMINISTRATION

SAO EAST

SERVICE AREA OFFICE ★ *EAST*

March 21, 2013

Joseph A. Davidow, Esq.
Davidow Law, P.A.
975 6th Avenue South, Suite 200
Naples, FL 34102

RE: Response to "Formal Dispute – BPA No. VA248-BP-0218"

Mr. Davidow,

VA has received your claim dated February 28, 2013, referenced above on March 1, 2013.  At this time VA is unable to reasonably evaluate or respond to your claim due to the lack of supporting documentation provided with the claim in reference to actual expenses incurred as alleged in Exhibit D.

The claimant does not present any documentation whatsoever that substantiates or supports its cost claims.  Summaries of costs incurred without the supporting receipts, checks paid with supporting documents, and receipts for costs should have been included in its claim for VA to reasonably address it.

In accordance with FAR 33.207 and the Contractor Certification provided with the claim, please provide all expense documentation to support the claim at your earliest convenience. Once VA has received supporting documentation from the claimant, VA can then proceed with a review of the material and provide a response as required by the Federal Acquisition Regulation.

Further correspondence should be directed to the undersigned, and the Administrative Contract Officer, Paula Stankovic, at the SAO East Office.

Sincerely,

Cheryl Homison
Contracting Officer

cc: VHA/OGC

**323 North Shore Drive**          **Suite 500**          **Pittsburgh, PA 15212**

# EXHIBIT F



VETERANS HEALTH ADMINISTRATION

**SAO EAST**

**SERVICE AREA OFFICE ★ EAST**

May 3, 2013

Joseph A. Davidow, Esq.
Davidow Law, P.A.
975 6th Avenue South, Suite 200
Naples, FL 34102

RE: Response to Formal Dispute – BPA No. VA248-BP-0218

Mr. Davidow,

We received your Formal Dispute, dated February 28, 2013, on behalf of Guardian Angels Medical Service Dogs, Inc. (GAMSD) with regard to the BPA referenced above on March 1, 2013. As of the date of this letter, I have not received any response to my March 21, 2013, letter requesting documentation supporting your claim.

In any event, your Formal Dispute provides that GAMSD "materially disagrees" with my decision, dated August 31, 2012, terminating this BPA for cause and asserts a claim in the amount of $1,046,474.30.

As my August 31, 2012, decision set forth, GAMSD was in default, the rationale supporting the failure to perform was explicitly detailed in my decision, GAMSD's failure to perform was not excusable, and GAMSD's BPA, including any open delivery or task orders issued pursuant to the BPA, was terminated for cause. My August 31, 2012, decision stated:

> This notice hereby constitutes a decision that Guardian Angels Medical Service Dogs, Inc, is in default as specified and that the contractor has the right to appeal under the Disputes clause.

I have not and shall not reconsider that decision. As your February 28, 2013, correspondence also noted, you have the right to appeal my decision at the U.S. Court of Federal Claims pursuant to 41 U.S.C. § 7104(b).

Sincerely,

Cheryl Homison
Contracting Officer

cc: VHA/OGC

**323 North Shore Drive**          **Suite 500**          **Pittsburgh, PA 15212**