## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

**GUARDIAN ANGELS MEDICAL**
**SERVICE DOGS, INC.,**

**Plaintiff,**

**v.**                                                    **Case No. 14-20C**
                                                         **Judge Coster Williams**
**THE UNITED STATES,**

**Defendant.**

<u>**PLAINTIFF'S RESPONSE IN OPPOSITION TO**</u>
<u>**DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**</u>

COMES NOW, the plaintiff, Guardian Angels Medical Service Dogs, Inc. ("Plaintiff"), by and through undersigned counsel, and hereby files this Response in Opposition to the Motion to Dismiss the Complaint filed by the defendant, The United States ("Defendant"), and in support thereof would state the following:

<u>STATEMENT OF FACTS</u>

1.      On April 1, 2014, Defendant filed a Motion to Dismiss alleging the Court does not possess jurisdiction of the above-captioned matter because Plaintiff failed to file its Complaint within twelve months of receiving the contracting officer's decision terminating the contract for default. Accordingly, a timeline of the relevant occurrences giving rise to the filing of Plaintiff's Complaint would benefit this Honorable Court.

2.      On June 26, 2011, Plaintiff and Defendant entered into a firm fixed-place Blanket Purchase Agreement Contract No. VA248-BP-0218 ("Contract"). Please see a copy of the Contract attached hereto and incorporated herein as **Exhibit A**.

3.      On or about January 2012, said Contract was placed on hold by Defendant and the work did not resume again until an amended contract ("Amended Contract") began on June 18, 2012.

4.      On August 31, 2012, the Contracting Officer sent Plaintiff a letter terminating the Contracts between Plaintiff and Defendant ("Termination Letter"). Please see a copy of the Termination Letter attached hereto and incorporated herein as **Exhibit B.** The letter specifically states that the "agreement terminates for default".

5.      On February 28, 2013, Plaintiff sent Defendant a Formal Dispute Letter under F.A.R. 52.233-1 in regards to the Defendant's Termination Letter. In addition, Plaintiff made a claim demanding payment for a percentage of the contract price for the work performed prior to the notice of termination and the reasonable charges incurred that have resulted from the Defendant's actual termination for convenience. Please see the Formal Dispute Letter attached herein and marked as **Exhibit C.**

6.      On March 21, 2013, Defendant responded to the Formal Dispute Letter requesting that Plaintiff provide all expense documentation supporting its claim as its earliest convenience. The Defendant's Response to Formal Dispute is attached herein and marked as **Exhibit D.**

7.      On May 3, 2013, while Plaintiff was in the process of putting together the materials for its response but before it actually responded, Defendant sent Plaintiff a letter indicating that Plaintiff had not responded to Defendant's March 21, 2013 letter. However, at that time, Plaintiff was in the process of calculating damages to disclose to Defendant. Further, Defendant's May 3, 2013 letter indicated the Contracting Officer

would not reconsider her August 31, 2012 decision. Please See the Contracting Officer's May 3, 2013 letter attached herein and marked as **Exhibit E**.

8. On January 7, 2014, Plaintiff filed the Complaint in the present matter.

<u>APPLICABLE LEGAL STANDARDS</u>

9. "[E]ach claim by a contractor against the Federal Government relating to a contract and each claim by the Federal Government against a contractor relating to a contract shall be submitted within 6 years after the accrual of the claim." 41 U.S.C. § 7103(a)(4)(A).

10. "A contractor shall file any action under paragraph (1) or (2) within 12 months from the date of receipt of a contracting officer's decision under section 7103 of this title." 41 U.S.C. § 7104(b)(3).

11. "The one-year statute of limitations under § 7104(b)(3) does not begin to run, however, until the contractor has received from the contracting officer a final decision on its claim." *Uniglobe General Trading & Contracting Co., W.L.L. v. United States*, (Fed. Cir. 2014); see also *Int'l Air Response v. United States,* 302 F.3d 1363, 1366 n.2 (Fed. Cir. 2002) ("The one-year period within which to challenge a contracting officer's final decision in the Court of Federal Claims begins to run from the 'date of the receipt by the contractor of the decision.'" (quoting 41 U.S.C. § 609(a)(3), the predecessor to § 7104(b)(3))).

12. In *Uniglobe General Trading & Contracting Co.,* the Court set out a three-prong analysis for whether a plaintiff has satisfied the one-year statute of limitations set out in § 7104(b)(3). "[T]he court must determine: (1) when Uniglobe submitted written claims to the contracting officer with respect to the 442 contract; (2) when Uniglobe

received final decisions on those claims from the contracting officer; and (3) whether Uniglobe filed this suit within one year of receiving those final decisions" *Uniglobe General Trading & Contracting Co.,* (No. 10-204-C: April 2, 2014).

LEGAL ANALYSIS

13.     The crux of Defendant's Motion to Dismiss is that Plaintiff failed to timely file its Complaint within twelve months of receiving the contracting officer's decision terminating the contract for default. Significantly, Defendant's argument presumes the August 31, 2012 Termination Letter started the twelve (12) month timeframe provided in 41 U.S.C. § 7104(b)(3) for filing a Complaint.

14.     Under F.A.R. 52.233-1(d)(1), "[a] claim by the Contractor shall be made in writing, and, unless otherwise stated in this contract, submitted within 6 years after accrual of the claim to the Contracting Officer for a written decision." Thus, Plaintiff was required to make a claim to a Contracting Officer prior to filing a complaint.

15.     F.A.R. 52.233-1(d)(1) is part of the Contract that is the subject matter of this case as set out in Section C of the Contract attached to Plaintiff's Complaint as Exhibit A.

16.     Accordingly, Plaintiff avers the Defendant's determination that the twelve (12) month timeframe for filing a Complaint started on August 31, 2012 is incorrect. Instead, Plaintiff asserts May 3, 2013 would be the appropriate date on which the twelve (12) month statute of limitations under 41 U.S.C. § 7104(b)(3) began to run.

17.     To construe the August 31, 2012 Termination Letter in Defendant's proposed fashion would be to entirely negate the six (6) year statute of limitations provided by 41 U.S.C. § 7103(a)(4)(A). Section 7104(b)(3) only limits the timeframe for

filing a complaint to twelve (12) months after a decision has been rendered under 41 U.S.C. § 7103(a)(4)(A).

18.     Defendant's Motion improperly interprets the August 31, 2012 Termination Letter to be the start of the timeframe for *both* the six (6) year statute of limitations under Section 7103(a)(4)(A) and the twelve (12) month statute of limitations under Section 7104(b)(3). However, it is imperative to recognize that without the August 31, 2012 Termination Letter, Plaintiff could never have formally commenced the claims process under Section 7103(a)(4)(A).

19.     By the letter of the law, Plaintiff could have begun the claims process under Section 7103(a)(4)(A) exactly five (5) years and three hundred sixty-four (364) days after the August 31, 2012 Termination Letter and subsequently filed a complaint within twelve (12) months after a decision was rendered in the Section 7103(a)(4)(A) process.

20.     It was not until Defendant's Letter on May 3, 2013 that Plaintiff's rights under Section 7103(a)(4)(A) were terminated, thereby triggering the twelve (12) month statute of limitations under Section 7104(b)(3). Thus, Plaintiff had a deadline of May 2, 2014 to file a complaint, which Plaintiff satisfied when the Complaint in the above-captioned case was filed on January 7, 2014.

21.     In applying the three-prong analysis set out in *Uniglobe General Trading & Contracting Co.*, the Court will be led to find Plaintiff's Complaint, as filed in this case, timely satisfied the one-year statute of limitations set out in § 7104(b)(3). On February 28, 2013, Plaintiff sent Defendant a Formal Dispute Letter under F.A.R. 52.233-1 in regards to the Defendant's alleged termination for cause. Subsequently, on

May 3, 2013, Plaintiff received a final decision those claims under 41 U.S.C. § 7103(a)(4)(A). Finally, on January 7, 2014, within twelve months of the May 3, 2013 final decision, Plaintiff filed its Complaint in the above-captioned case.

22.   Contrary to the three-prong analysis set out in *Uniglobe General Trading & Contracting Co.*, Defendant's Motion seeks to expedite the application of the one-year statute of limitations set out in § 7104(b)(3) immediately upon the issuance of the termination letter.

27.   Defendant's Motion attempts to construe Plaintiff's claim on February 28, 2013 as irrelevant pursuant to *Malone v. United States*, 849 F.2d 1441 (Fed. Cir. 1988).

29.   *Malone v. United States*, however, is inapplicable and factually distinguishable from the case at bar. In *Malone v. United States*, the court narrowly addressed the sole issue of "whether the CDA[1] grants the BCAs[2] jurisdiction over default terminations absent a monetary claim by the parties." *Id.* at 1444. The *Malone* court recognized that because a government decision to terminate a contractor for default is a government claim, it is permissible for a contractor to appeal a government claim to an appropriate BCA without having to submit a monetary claim to its own contracting officer. See *Id.* at 1443.

30.   Contrary to the facts in *Malone,* Plaintiff has submitted a claim to the contracting officer within the proper timeframe of Section 7103. *Malone* did not even explain or analyze the proper implementation of the statute of limitations under Section 7103(a)(4)(A) and the twelve (12) month statute of limitations under Section 7104(b)(3). Further, there were no findings in *Malone* that the default termination begins the statute

---

[1] Contract Disputes Act of 1978 (CDA)
[2] Board of Contract Appeals (BCA)

of limitations under Section 7103(a)(4)(A). Instead, *Uniglobe General Trading & Contracting Co.* outlines the proper analysis, applicable to the present matter, for evaluating the timeliness of the twelve month timeframe for filing a complaint pursuant to Section 7104(b)(3).

30.     Accordingly, Plaintiff avers the Complaint in the above-captioned case was timely, and Defendant's Motion to Dismiss should be denied.

WHEREFORE, Plaintiff respectfully requests this Honorable Court deny Defendant's Motion to Dismiss and require Defendant to file an Answer to the Complaint.

Respectfully submitted,

s/ JOSEPH A. DAVIDOW
Joseph A. Davidow
Attorney for the Plaintiff
Florida Bar No. 66356
WILLIS & DAVIDOW, L.L.C.
975 6th Avenue South, Suite 200
Naples, Florida 34102
(239) 465-0531

Jun 24 11 04:04p        Guardian Angels Medical                    3525283554              p.2

# SOLICITATION/CONTRACT/ORDER FOR COMMERCIAL ITEMS
## OFFEROR TO COMPLETE BLOCKS 12, 17, 23, 24, & 30

| | | | |
|---|---|---|---|
| | | 1. REQUISITION NO. | PAGE 1 OF 5 |

| 2. CONTRACT NO. | 3. AWARD/EFFECTIVE DATE | 4. ORDER NO. | 5. SOLICITATION NUMBER | 6. SOLICITATION ISSUE DATE |
|---|---|---|---|---|
| VA248-BP-0218 | | 0001 | | |

**7. FOR SOLICITATION INFORMATION CALL:**

a. NAME
Tiffany Garfield

b. TELEPHONE NO. (No Collect Calls)
813-631-2818

8. OFFER DUE DATE/LOCAL TIME

**9. ISSUED BY**                                             CODE

Department of Veterans Affairs
James A. Haley Veterans Hospital (90C)

13000 Bruce B. Downs Blvd
Tampa FL 33612

10. THIS ACQUISITION IS

☐ UNRESTRICTED OR   ☒ SET ASIDE: 100 % FOR   501 (c) (3)

☐ SMALL BUSINESS

NAICS:        812910
SIZE STANDARD.

☐ HUBZONE SMALL BUSINESS

☐ SERVICE-DISABLED VETERAN-OWNED SMALL BUSINESS   (N/A)

| 11. DELIVERY FOR FOB DESTINATION UNLESS BLOCK IS MARKED | 12. DISCOUNT TERMS | 13a. THIS CONTRACT IS A RATED ORDER UNDER DPAS (15 CFR 700) | 13b. RATING N/A |
|---|---|---|---|
| ☐ SEE SCHEDULE | | | 14. METHOD OF SOLICITATION ☐ RFQ  ☐ IFB  ☐ RFP |

| 15. DELIVER TO | CODE | 16. ADMINISTERED BY | CODE |
|---|---|---|---|
| | | Department of Veterans Affairs
James A. Haley Veterans Hospital (90C)

13000 Bruce B. Downs Blvd
Tampa FL 33612 | |

| 17a. CONTRACTOR/OFFEROR   CODE | FACILITY CODE | 18a. PAYMENT WILL BE MADE BY | CODE |
|---|---|---|---|
| GUARDIAN ANGELS MEDICAL SERVICE DOGS, INC.

3251 NE 180TH AVENUE

WILLISTON, FL 32696-6012
TELEPHONE NO.  352-625-1982 | | Department of Veterans Affairs
Financial Services Center

P.O. Box 149971
Austin TX 78714-9971 | |

☐ 17b. CHECK IF REMITTANCE IS DIFFERENT AND PUT SUCH ADDRESS IN OFFER

18b. SUBMIT INVOICES TO ADDRESS SHOWN IN BLOCK 18a UNLESS BLOCK BELOW IS CHECKED
☐ SEE ADDENDUM

| 19. ITEM NO. | 20. SCHEDULE OF SUPPLIES/SERVICES | 21. QUANTITY | 22. UNIT | 23. UNIT PRICE | 24. AMOUNT |
|---|---|---|---|---|---|
| | SEE SCHEDULE | | | | |

(Use Reverse and/or Attach Additional Sheets as Necessary)

| 25. ACCOUNTING AND APPROPRIATION DATA | 26. TOTAL AWARD AMOUNT (For Govt. Use Only) |
|---|---|
| 673-360/10160-1370-812400-2660 820010100 | $68,749.00 |

27a. SOLICITATION INCORPORATES BY REFERENCE FAR 52.212-1, 52.212-4, FAR 52.212-3 AND 52.212-5 ARE ATTACHED. ADDENDA ☐ ARE ☒ ARE NOT ATTACHED.

27b. CONTRACT/PURCHASE ORDER INCORPORATES BY REFERENCE FAR 52.212-4, FAR 52.212-5 IS ATTACHED. ADDENDA ☐ ARE ☒ ARE NOT ATTACHED

28. CONTRACTOR IS REQUIRED TO SIGN THIS DOCUMENT AND RETURN ___ COPIES TO ISSUING OFFICE. CONTRACTOR AGREES TO FURNISH AND DELIVER ALL ITEMS SET FORTH OR OTHERWISE IDENTIFIED ABOVE AND ON ANY ADDITIONAL SHEETS SUBJECT TO THE TERMS AND CONDITIONS SPECIFIED

29. AWARD OF CONTRACT: REF ___ OFFER DATED ___. YOUR OFFER ON SOLICITATION (BLOCK 5), INCLUDING ANY ADDITIONS OR CHANGES WHICH ARE SET FORTH HEREIN, IS ACCEPTED AS TO ITEMS:

| 30a. SIGNATURE OF OFFEROR/CONTRACTOR | 31a. UNITED STATES OF AMERICA (SIGNATURE OF CONTRACTING OFFICER) |
|---|---|
| *signature* Guardian Angels Medical Service Dogs | MICHAEL WILSON  *signature* |
| 30b. NAME AND TITLE OF SIGNER (TYPE OR PRINT) | 31b. NAME OF CONTRACTING OFFICER (TYPE OR PRINT) | 31c. DATE SIGNED |
| *Executive Director* | | |
| 30c. DATE SIGNED  6-24-11 | | 26 June 11 |

AUTHORIZED FOR LOCAL REPRODUCTION
PREVIOUS EDITION IS NOT USABLE

STANDARD FORM 1449 (REV. 10/2010)
Prescribed by GSA - FAR (48 CFR) 53.212



EXHIBIT A

## Table of Contents

A.1 PRICE/COST SCHEDULE..................................................................................................4

**SECTION B - GENERAL TERMS** ......................................................................................**9**

B.1 INTRODUCTION ................................................................................................................9
B.2 TERMS AND CONDITIONS..............................................................................................9
B.3 ADMINISTRATIVE DATA.................................................................................................9
B.4 PRICING DATA ...............................................................................................................10
B.5 OPTION TO EXTEND THE TERM OF THE BPA ..........................................................10
B.6 GENERAL SERVICES ORDERS.....................................................................................10
B.7 GENERAL SUPPLY ORDERS.........................................................................................11
B.8 AUTHORIZED LIMITS....................................................................................................11
B.9 OBLIGATION OF FUNDS ...............................................................................................11
B.10 PERIOD OF PERFORMANCE .......................................................................................11
B.11 ORDER FORMAT ...........................................................................................................11
B.12 AUTHORIZED REPRESENTATIVES............................................................................12
B.13 FEDERAL HOLIDAYS...................................................................................................13
B.14 TRAVEL REIMBURSEMENT .......................................................................................13
B.15 PERFORMANCE.............................................................................................................13
B.16 MANAGEMENT CONTROL..........................................................................................14
B.17 INVOICES.......................................................................................................................14
B.18 PRECEDENCE ................................................................................................................15

**SECTION C - CLAUSES** ....................................................................................................**16**

C.1 52.213-4 TERMS AND CONDITIONS - SIMPLIFIED ACQUISITIONS (OTHER THAN
     COMMERCIAL ITEMS) (JAN 2011)............................................................................16
C.2 NOTICE LISTING CLAUSES INCORPORATED BY REFERENCE .............................19

**VA248BP0218  VA673D15106  0001**

The purpose of this modification is to revise line items 0001 & 0002 by increasing the quantities and to revise the accounting and appropriation data to reflect the new purchase order number and amount.

## A.1 PRICE/COST SCHEDULE

Line Items 0001 & 0002 are changed from:

| ITEM NO. | DESCRIPTION OF SUPPLIES/SVCS | QTY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0001 | Service Dog<br>Firm-Fixed Price | 6.00 | EA | $10,000.0000 | $60,000.00 |
| 0002 | Dog Health Insurance in accordance with the Statement of Work. This line item is an ESTIMATE ONLY until a firm proposal is received from the contractor. Upon a firm proposal a modification will be executed to incorporate a firm-fixed price per dog. | 1.00 | LOT | $8,749.0000 | $8,749.00 |

GRAND TOTAL ---  $68,749.00

To Read:

| ITEM NO. | DESCRIPTION OF SUPPLIES/SVCS | QTY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0001 | Service Dog<br>Firm-Fixed Price | 12.00 | EA | $10,000.00 | $120,000.00 |
| 0002 | Dog Health Insurance in accordance with the Statement of Work.<br>Firm-Fixed Price | 12.00 | EA | $1,342.92 | $16,115.04 |

GRAND TOTAL ---  $136,115.04

VA248BP0218  VA673D15106  0001

The Accounting and Appropriation Data is changed from:

ACCOUNTING AND APPROPRIATION DATA:

APPROPRIATION
360/10161-1370-812400-2660

REQUISITION NUMBER
673-11-3-1370-0047

PURCHASE ORDER #
673-D10018

AMOUNT
$68,749.00

To Read:

ACCOUNTING AND APPROPRIATION DATA:

APPROPRIATION
360/10161-1370-812400-2660

REQUISITION NUMBER
673-11-4-1370-0061

PURCHASE ORDER #
673-D15106

AMOUNT
$136,115.04

SUBMITTING INVOICES:  Ensure the Purchase Order # listed above is
referenced on all invoices.

CONTINUATION PAGE

## A.1 PRICE/COST SCHEDULE

| ITEM NO. | DESCRIPTION OF SUPPLIES/SVCS | QTY UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|
| 1 | Service Dog | 1.00 EA | $10,000.0000 | $10,000.00 |
| 2 | Dog Health Insurance in accordance with the Statement of Work. This line item is an ESTIMATE ONLY until a firm proposal is received from the contractor. Upon a firm proposal a modification will be executed to incorporate a firm-fixed price per dog. | 1.00 LOT | $8,749.0000 | $8,749.00 |

GRAND TOTAL ---     $18,749.00
======================

## STATEMENT OF WORK
## A.  GENERAL INFORMATION : PILOT SERVICE DOG PROJECT

1.       This agreement is issued under the authority of Public Law (P.L.) 111-84, U.S. Senate Bill S.1390, Section 1077.

2.       Scope of Work: The contractor shall provide all resources necessary to accomplish the deliverables described in this statement of work (SOW), except as may otherwise be specified. The purpose of this Pilot project is to determine how the use of service dogs (SD) may impact the overall outcomes including cognitive, functional and quality of life, for veterans who have been diagnosed with post traumatic stress disorder syndrome (PTSD).

2a.       Government Requirement:       The Government's maximum requirement of two hundred (200) service dogs may be required for this project. The Government reserves the right to revise its maximum requirement at any time during contract performance.

3.       Background: An estimated 16,000 individuals are partnered with SDs today; these highly skilled dogs typically work for eight (8) years each. Section 2 of Bill H.R. 2792, the Disabled Veterans Service Dog and Health Care Improvement Act of 2001, allows the VA to reimburse cost s of SFs and associated training for qualified veterans. An additional bill was passed in 2010, Bill S.1390, sec 1084 which authorize appropriations to conduct a pilot program on use of service dogs for the treatment and or rehabilitation of veterans with physical or mental injuries or disabilities. This pilot program is to be implemented "120 days after the enactment of this Act, and a three (3) year pilot program to assess the benefits of, feasibility and advisability of using service dogs for the treatment or rehabilitation of veterans with physical or mental injuries or disabilities, including post-traumatic stress disorder (PTSD)" is to be completed. Due to the previous research conducted by the Principal Investigator

(PI) of this proposal, the research team has chosen to focus on PTSD and subsequent mental health improvements which may result from provision of a service dog.

4.     <u>Periods of Performance:</u> The period of performance is June 24, 2011 through June 24, 2015.  The period of performance for each order will be identified on that particular order.

If work is required at a government site it shall not take place on Federal holidays or weekends unless directed by the Contracting Officer (CO). The following Federal Holidays are observed:

New Years Day; Dr. Martin Luther King, Jr Day; Presidents Day; Memorial Day; Independence Day; Labor Day; Columbus Day; Veterans Day; Thanksgiving Day; Christmas Day

5.     <u>Type of Contract:</u> Firm-Fixed Price, Blanket Purchase Agreement (BPA).  The government reserves the right to make multiple awards in order to accommodate the indefinite quantity of service dogs to be procured.

6.     <u>Place of Performance:</u>   The research study shall be conducted at Guardian Angels Medical Service Dogs, Inc., 3251 NE 180th Avenue, Williston, FL 32696-6812.

7.     <u>Contract Award Meeting:</u>  A contract award meeting will occur either in person or by telephone, at the convenience of both parties.

8.     <u>Final Pairing between Veteran & Dog</u>:  If a match does not work out for a veteran the contractor will:
a) replace the dog unless the veteran is the issue.  The contractor will never allow a dog to remain in an environment that is not conducive to it's well being or a dangerous situation; b) In the case that the veteran is an issue, then the contractor will pair that service dog with a new veteran on the study program; and c) In the case that the service dog was the problem, the contractor will revisit the training issues and re-pair the dog in an environment and with a veteran more suitable to each other's character.

## B. GENERAL REQUIREMENTS

1. For every task, the contractor shall identify in writing all necessary subtasks (if any), associated costs by task, together with associated sub milestones dates for accomplishment of tasks. The contractor's subtask structure shall be reflected in the technical proposal and detailed project management plan (PMP).

2. All written deliverables shall be phrased in layperson language. Statistical and other technical terminology shall not be used without providing a glossary of terms.

3. Where a written milestone deliverable is required in draft form, the VA will complete their review of the draft deliverable within 10 calendar days from date of receipt. The contractor shall have 30 calendar days to deliver the final deliverable from date of receipt of the government's comments.

## C. SPECIFIC MANDATORY TASKS AND ASSOCIATED DELIVERABLES

Description of Tasks and Associated Deliverables: The contractor shall provide the specific deliverables described below within the performance periods stated in Section A. 4 of this SOW.

**Task One:** The contractor shall provide a detailed PMP and briefing for the VBA Project team, which represents the contractor's plan for completing the task order. The contractor's plan shall be responsive to this SOW and describe, in further detail, the approach to be used for each aspect of the task order as defined in its technical proposal. At a minimum, the PMP shall include the risk, quality and technical management approach, work breakdown structure (WBS), detailed schedule, cost estimate requirements and proposed personnel. The contractor shall keep the PMP up to date throughout the period of performance.

<u>**Deliverable for Task One:**</u> A detailed PMP and briefing. The Project Management Plan shall be delivered within 15 days after date of contract award.

**Task Two:** Dogs shall be trained by personnel at contractors with a favorable history of providing service dogs. Service dogs shall be provided by each contractor with the first service dog placed within five (5) months of receipt of contract award. All service dogs shall be identified with an implanted microchip to ensure consistent identification throughout the study and all deliverables shall reference both the service dog's name and the microchip ID number.

<u>**Deliverable for Task Two:**</u> Contractor's shall provide trained service dogs. First dog(s) shall be placed within five (5) months after date of contract award.

**Task Three:** The Contractor shall provide service dogs trained to meet needs of veterans with PTSD. The training shall be tailored to the needs of the veterans and shall meet or exceed the needs of the Americans with

Disabilities Act (ADA) in that a minimum of tasks shall be trained. This includes the service dogs meeting minimum standards for public access and shall include:

- 3A-Documented minimum of 120 hours of schooling over six (6) months
- 3B-Thirty (30) hours (Documented) shall be devoted to outings that prepare the service dog for work in public places.
- 3C-Documented obedience training (sit, stay, come, down, heel and off leash recall) in response to verbal or hand commands.
- Documentation shall be provided to prove that the dogs have manners which include non-aggressive behavior, no begging of food, no urination without command, no sniffing of other dogs and people when they pass.

**Deliverables for Task Three:**
**Deliverable 3A** shall consist of providing proof of appropriate training for each service dog prior to matching with veteran. The dog shall be identified to allow a match. Deliverable 3A shall be submitted at least Thirty (30) days before dog will be provided to the veteran.
**Deliverable 3B** shall consist of documentation of pairing a service dog with a veteran participating in the study. The Contractor shall assure that after training and matching, Service Dogs shall demonstrate basic obedience skills by responding to voice and/or hand commands.  For example, these skills shall be completed 90% of the time on time on the first attempt of asking. The dog shall be trained in a minimum of three (3) tasks based on the individual needs/challenges of the veteran.  The tasks are those the paired veteran needs/would benefit from and shall be identified and the dog trained either before placement or during the trial pairing period.
The documentation shall consist of the dog's identification, the name of the veteran, the address of the veteran's residence, the date of the pairing, notes on potential problems with the pairing, and the dates and method(s) of planned follow-ups with the veteran. Deliverable 3B shall be submitted within 10 days of the pairing a dog with a veteran.
**Deliverable 3C** shall consist of a quarterly, cumulative report of all dogs currently paired. The report shall consist of the dog's identification, the address of the veteran's residence, the date of pairing, notes on potential problems with the pairing and the dates and method(s) of actual follow-ups with the veteran.
**Task Four :** The contractor shall aid in establishing a veterinary care program (VCP) for the duration of the proposed three (3) year study, which shall include a preventative health care (wellness) evaluation for the service dogs. This evaluation shall include routine canine immunizations, physical examinations, parasite surveillance and treatment including but not limited to heartworm checks, as well as other common internal and external canine parasites.
**Deliverable for Task Four:** The contractor shall deliver a report per veterinarian visit regarding the service dog's health. The report shall be from the veterinarian and provided to the VA within 30 days of the visit. The report shall include data of visit, evaluation of service dog, general health information (e.g., weight, temperature, health assessment, etc.).  This visit will take place prior to the pairing with the veteran.
**Task Five:**  The contractor shall provide health insurance for each dog.  The insurance will cover the maximum percentage of the cost of treatments and provide coverage for hereditary and congenital conditions.  The insurance will also include the maximum percentage of accident, illness and injury with an annual deductable if applicable. In addition, the insurance shall include two annual routine wellness check-ups, one routine check-for the first year that the dog and veteran pairing and a second routine check-up within the second year of pairing.
**Deliverable for Task Five:**  The contractor shall provide proof of health insurance within 30 days of a BPA order.

**D. SCHEDULE FOR DELIVERABLES**

1. If for any reason the scheduled time for a deliverable cannot be met, the contractor shall explain why (and include the original Deliverable due date) in writing to the Contracting Officer (CO), including a firm commitment of when the work shall be completed. This notice to the CO shall cite the reasons for the delay and the impact of the delay on the overall project. The CO will review the facts along with the VA investigative team and issue a response in accordance with applicable regulations that include terms and conditions of the contract.

**E. CHANGES TO STATEMENT OF WORK/MODIFICATION OF CONTRACT**

Only the Contracting Officer (CO) is authorized to make any changes to the contract terms and conditions or the SOW. Changes or modifications to the contract shall be made, authorized and approved only through the written correspondence from the CO. Any cost incurred by the contractor(s) without the written authorization of the CO shall be the sole responsibility of the contractor, and will not be authorized for payment by the government and shall be borne by the contractor.

**F. CONTRACTOR EXPERIENCE REQUIREMENTS – KEY PERSONNEL**

The contractor shall identify its skilled, experienced professional and/or technical personnel that shall be responsible for training the service dog(s). The contractor shall provide a resume for these personnel that shall include past performance and historical documentation of performance in the service dog industry. Contractor documentation of Past performance shall provide evidence of personnel's proficiency in this Task. These are defined as KEY PERSONNEL and are those persons whose resumes are to be submitted. The contractor agrees that the Key Personnel shall not be removed, diverted, or replaced from work without approval of the CO. Any personnel the contractor offers as substitutes shall have the ability and qualifications equal to or better than the key personnel that are being replaced. Requests to substitute personnel shall be approved by the CO. All requests for approval of substitute personnel shall be submitted to the CO within 30 calendar days prior to making any change in key personnel. The request shall be written and provide a detailed explanation of the circumstances necessitating the proposed substitution. The contractor shall submit a complete resume for the proposed substitute, any changes to the rate specified in the contract (as applicable) and any information requested by the CO needed to approve or disapprove the proposed substitution. The CO shall evaluate such requests and promptly notify the contractor of approval or disapproval thereof in writing.

**G. CONTRACTOR PERSONNEL SECURITY TRAINING**

1. Security Training and Background Investigation

All contractor and subcontractor employees performing work under this contract or order shall complete the VA's on-line Security Awareness and Privacy Awareness Training Courses annually. Contractors shall provide signed certifications of training course completion to the CO during each year of the Contract. This requirement is in addition to any other training that may be required of the contractor(s) and subcontractor(s).
The position sensitivity impact for this research study has been designated as a **LIMITED** Risk and the level of background investigation is NACI.

2. Contractor Responsibilities

a. The contractor shall bear the expense of obtaining background investigations. If the investigation is conducted by the Office of Personnel Management (OPM) through the VA, the contractor shall reimburse the VA within 30 days.

**I. CONFIDENTIALITY AND NONDISCLOSURE**

It is agreed that:

1. The preliminary and final deliverables and all associated working papers, application source code, and other material deemed relevant by the VA which has been generated by the contractor in the performance of this task order are the exclusive property of the U.S. Government and shall be submitted to the CO at the conclusion of this contract.

2. The CO will be the sole authorized official to release verbally or in writing, any data, the draft deliverables, the final deliverables, or any other written or printed materials pertaining to this contract. No information shall be released by the contractor. Any request for information relating to the study under this contract presented to the contractor(s) and /or subcontractor(s), shall be submitted to the CO for his/her response.

3.  Press releases, marketing material or any other printed or electronic documentation related to this project shall not be publicized without the written approval of the CO.

### ATTACHMENT A - SCHEDULE OF DELIVERABLES

| DELIVERABLE No. | DELIVERABLE | QUANTITY | DATE DUE |
|---|---|---|---|
| Task One | Detailed PMP briefing | To be determined on individual orders | Within 15 days after Contract Award |
| Task Two | Provide trained Service Dog | To be determined on individual orders | Within 5 months of order |
| Task Three A | Proof of appropriate training prior to placement of service dogs | To be determined on individual orders | 30 days prior to paring with Veteran |
| Task Three B | Documentation of pairing & potential problems & require training | To be determined on individual orders | 10 days after paring has occurred |
| Task Three C | Documentation regarding follow-up of pairing | To be determined on individual orders | Every 90 days starting of pairing |
| Task Four | Report from veterinarian | To be determined on individual orders | Within 30 days of the veterinarian visit |
| Task Five | Proof of health insurance | To be determined on individual orders | Within 30 days of BPA Order |

**Department of Veterans Affairs**          **BLANKET PURCHASE AGREEMENT**

## SECTION B - GENERAL TERMS

### B.1  INTRODUCTION

In the spirit of the Federal Acquisition Streamlining Act, the Department of Veterans Affairs DVA and GUARDIAN ANGELS MEDICAL SERVICE DOGS, INC. hereby enter into a cooperative agreement, otherwise referred to as a Blanket Purchase Agreement (BPA), to further reduce the administrative costs of acquiring supplies/services.

The agreement details all supplies and services with accompanying prices and descriptions, which may be ordered under this BPA.

All orders placed against this BPA are subject to the terms and conditions of all the clauses and provisions in full text or incorporated by reference in this document.

(End of Clause)

### B.2  TERMS AND CONDITIONS

The Contractor agrees to the following terms of a Blanket Purchase Agreement (BPA) EXCLUSIVELY WITH the Department of Veterans Affairs:

(End of Clause)

### B.3  ADMINISTRATIVE DATA

A Blanket Purchase Agreement (BPA) is hereby established between GUARDIAN ANGELS MEDICAL SERVICE DOGS, INC. and the Department of Veterans Affairs under the following terms and conditions incorporated in this BPA:

Primary Point of Contact:
GUARDIAN ANGELS MEDICAL SERVICE DOGS, INC.
3251 NE 180TH AVE
WILLISTON, FL  32696-6812
DUNS NUMBER:   030264362


Cognizant DVA Office (Include Department of Veterans Affairs complete address):
Department of Veterans Affairs
James A. Haley Veterans Hospital (90C)
13000 Bruce B. Downs Blvd
Tampa, FL  33612

(End of Clause)

**Department of Veterans Affairs**          **BLANKET PURCHASE AGREEMENT**

## B.4  PRICING DATA

1. The prices included on the BPA list (or applicable "discounted" rates submitted in a proposal response to an RFQ resulting in award) that are in effect on the effective date of an order shall govern that order's basic performance period.  With regard to any option years, which are later exercised, the proposed option year rates as incorporated into the order award are in effect until such time, if applicable, that the contractor has been authorized a rate increase culminating from a negotiation with the Contracting Officer.

2. The BPA holder can voluntarily reduce offered prices at any time by giving 24-hour advance notice (by facsimile or electronic-mail) to the Department of Veterans Affairs/Contracting Officer. This BPA also allows for additional discounts if a "large order" is placed at one time.  An advanced notice is not required for discounts offered for only an individual order.  Whether an order is large enough to warrant such a discount is subject to the discretion of the BPA holder.

3. The BPA holder may also increase BPA prices at any time.  Any BPA price increase shall not take effect until the Department of Veterans Affairs Contracting Officer receives written notification (U.S. mail, facsimile, or electronic-mail).  Any order already issued shall not be affected by any change to BPA pricing.  The prices offered under this BPA will undergo annual review by the Department of Veterans Affairs Contracting Officer.

(End of Clause)

## B.5  OPTION TO EXTEND THE TERM OF THE BPA

a. The Government may extend the term of this BPA by written notice to the Contractor at any time prior to the expiration of the BPA, provided that the Government shall give the Contractor a preliminary written notice of its intent to extend at least 60 days before the BPA expires. The preliminary notice does not commit the Government to an extension.

b. If the Government exercises this option, the extended BPA shall be considered to include this option provision.

(End of Clause)

## B.6  GENERAL SERVICES ORDERS

a. The BPA holder shall furnish all the necessary qualified personnel, materials, facilities and management resources to furnish the services set forth in the Statement of Objectives (SOO) or the Performance Work Statement (PWS) within the terms specified and at the price(s) stated.

b. It is understood and agreed that the BPA holder shall provided Fixed-Price proposals when requested by the Contracting Officer (CO). The contractor's proposal shall be priced using labor rates and labor categories here in provided.  The CO will issue Fixed Priced Orders upon completion of negotiations of contractor proposals.

(End of Clause)

**Department of Veterans Affairs**          **BLANKET PURCHASE AGREEMENT**

### B.7  GENERAL SUPPLY ORDERS

A properly appointed Department of Veterans Affairs Contracting Officer will request a quote from the Contractor based upon the requirements of the individual calls/orders, usually in the form of a Statement of Work (SOW). The information provided to the Contractor will include the place of performance, required period of performance, and other particular task requirements. Travel may be required (reimbursement of travel expenses will be IAW applicable Federal travel regulations). The vendor will reply within 5 business days with a Firm Fixed Price quote depending on the details required by the SOW. The Contractor may offer additional spot discounts on any order, as they deem appropriate. All subcontractor activity must be clearly identified in each new order proposal as applicable.

(End of Clause)

### B.8  AUTHORIZED LIMITS

The Government estimates, but does not guarantee, that individual BPA Orders placed against this Agreement may reach $150,000.00/per Order. This Order Limit may be increased by mutual agreement of the parties as necessary, in whole or part. The authorized Ceiling Limit of the Agreement is set at  over the period covered by the Agreement; this ceiling is also not a guarantee. The Ceiling Limit may also be raised in association with Order Limit increases or other conditions which, by mutual agreement of the parties, maybe considered necessary. Authorization for individual orders above the stated order and/or Ceiling Limits must be coordinated through the Contracting Officer before larger valued orders can be issued and prior to commencement of work. All unauthorized work, regardless of amount, will be processed through the ratification process.

(End of Clause)

### B.9  OBLIGATION OF FUNDS

This BPA does not obligate any funds. The Government is obligated only to the extent of authorized orders actually issued under the BPA by the Contracting Officer.

(End of Clause)

### B.10  PERIOD OF PERFORMANCE

This BPA expires on 06-24-2015 or such later ending date as determined by the exercise of any option.

(End of Clause)

### B.11  ORDER FORMAT

Orders will be placed against this BPA via e-mail, Electronic Data Interchange (EDI), FAX, or in hardcopy format. Each individual BPA Order will describe the tasks, services and deliverables required.

(End of Clause)

**Department of Veterans Affairs**          **BLANKET PURCHASE AGREEMENT**

## B.12 AUTHORIZED REPRESENTATIVES

The primary Contracting Officer (CO) for this Agreement is:

Michael Wilson

Department of Veterans Affairs
James A. Haley Veterans Hospital (90C)
13000 Bruce B. Downs Blvd
Tampa, FL 33612

The Primary Contracting Officer's Representative (COR) for projects under this Agreement is:

SHARON BRYANT
813.558.7611
sharon.bryant2@va.gov
*fax* - 813-558-3990

The Primary and/or Secondary COR will be responsible for technical monitoring of the contractor's performance and deliveries. The COR and the Contractor's Representative shall work together to ensure that all contractual requirements are being met. The COR will interpret specifications or technical portions of the work. The COR is not authorized to perform, formally or informally, any of the following actions:

(1) Promise, award, agree to award, or execute any contract, contract modification, or notice of intent that changes or may change this contract;
(2) Waive or agree to modification of the delivery schedule;
(3) Make any final decision on any contact matter subject to the Disputes Clause;
(4) Terminate, for any reason, the contractor's right to proceed;
(5) Obligate in any way, the payment of money by the Government. Only a warranted Contracting Officer is authorized to obligate funds on this or any other contract action.

The contractor shall immediately notify the Contracting Officer in writing if the COR has taken an action (or fails to take action) or issues directions (written or oral) that the contractor considers to exceed the above limitations.

The contractor shall provide the Contracting Officer information copies of all correspondence to the COR.

(End of Clause)

Department of Veterans Affairs            BLANKET PURCHASE AGREEMENT

## B.13  FEDERAL HOLIDAYS

Unless specifically authorized in writing by the Contracting Officer, no services will be provided and no charges will be incurred and/or billed to any order on this contract on any of the Federal Holidays listed below.

| | |
|---|---|
| New Years Day | Labor Day |
| Martin Luther King Day | Columbus Day |
| Presidents' Day | Veterans' Day |
| Memorial Day | Thanksgiving Day |
| Independence Day | Christmas Day |

(End of Clause)

## B.14  TRAVEL REIMBURSEMENT

The Government will reimburse the cost of travel required in conjunction with performance of orders issued under this contract. Reimbursement for travel is limited to that which is required in the performance of the order. Specific Government direction to attend meetings or gather information shall be reimbursed on a cost reimbursable basis only. Local travel or the relocation of BPA holder personnel from other geographic areas for the purpose of staffing an order, are not subject to reimbursement. The Government will not pay travel charges for travel to and from the BPA holder employee's home and the DVA Office or to and from one company building to another (either within a company or to and from a prime to a sub company). Travel costs subject to reimbursement are limited to travel occurring at the direction of the Government, performed in conjunction with a specific requirement for a trip authorized in the order. Any administrative/clerical support travel costs shall be considered and approved by the Contracting Officer on a case-by-case basis.

(End of Clause)

## B.15  PERFORMANCE

The following terms and conditions are applicable:

a. All services will be initiated within 3 calendar days following receipt of a valid order, unless otherwise specified in the order.

b. The BPA holder shall be familiar with Federal Government and Department of Veterans Affairs acquisition regulations, directives and instructions. If a particular document is required in a specific order, it will be cited within the order's PWS.

c. The BPA holder shall not provide technical direction to any other acquisition BPA holder(s) or government personnel at any time. Neither shall the Government directly supervise BPA holder employees. The BPA holder Task Leader should conduct day to day supervision of BPA holder personnel wherever the BPA holder personnel are located. All direction of the BPA holder shall be through the Contracting Officer (CO) of the ordering organization specified in each individual order. Technical "tasking" assignments for the BPA holder will be transmitted by the program office's COTR (or program manager) to the BPA holder's Task Leader.

**Department of Veterans Affairs**                    **BLANKET PURCHASE AGREEMENT**

d. The "ordering period" will run from BPA award to 06-24-2015, or until such ending date of any option year, which may be exercised under the Agreement. The "performance period" will terminate with the end of the BPA, unless the ordering CO elects to extend performance as provided under the BPA. If the ordering CO elects to extend performance beyond the end of the BPA, he/she may extend performance up to six (6) months beyond the end of the order period.

e. Capitalization Requirements: The BPA holder shall provide their employees sufficient computer equipment to support orders. The BPA holder shall be able to support the automatic transmission of unclassified data only to the requiring Program Office by modem if so requested. Any computers connected to, or transmits to (connected or via magnetic media) the government shall be properly protected from computer viruses. The BPA holder shall be capable of supporting the software packages utilized by Department of Veterans Affairs for the indicated processors. Specific software packages utilized within a program office shall be stated in the order PWS if it is other than Microsoft Office Professional or Microsoft Project.

f. Cancellation: This BPA may be canceled if the BPA holder fails to perform in accordance with the terms and conditions of the this BPA, any order established under this BPA, or if deemed as in the best interests of the Government. The BPA holder must strictly comply with all terms and conditions or the Department of Veterans Affairs/ Contracting Officer may determine that performance by the BPA holder has been unsatisfactory and cancel this BPA.

(End of Clause)

## B.16  MANAGEMENT CONTROL

The BPA holder shall provide to the Contracting Officer (CO) a list of all teaming partners or subcontractors within 5 calendar days after order award. As subcontractors and/or teaming partners are added, and/or deleted, an updated listing will be provided to the CO within 5 calendar days of such change. All BPA holder personnel shall display identification badges at all times while charging hours to the order or at a government or government contractor location. Authorized Government personnel shall accompany all visits to Department of Veterans Affairs Program Offices, unless other specific arrangements have been made.

(End of Clause)

## B.17  INVOICES

1. Contract Administration: All contract administration matters will be handled by the following individuals:

a. CONTRACTOR:

b. GOVERNMENT:  Contracting Officer 00673
                     Department of Veterans Affairs
                     James A. Haley Veterans Hospital (90C)
                     13000 Bruce B. Downs Blvd
                     Tampa FL 33612

2. CONTRACTOR REMITTANCE ADDRESS: All payments by the Government to the contractor will be made in accordance with:

**Department of Veterans Affairs**                **BLANKET PURCHASE AGREEMENT**

[X]                          52.232-33, Payment by Electronic Funds Transfer -
                             Central Contractor Registration, or

[]                           52.232-36, Payment by Third Party


3.  INVOICES:  Invoices shall be submitted in arrears:

a.  Quarterly                      []

b.  Semi-Annually                  []

c.  Other                          [X] Monthly

4.  GOVERNMENT INVOICE ADDRESS:  Invoices from the contractor shall be submitted in one of the two following methods:

1.   Faxed to FMS Austin 512-460-5544.
2.   Or mailed to the following address:

Department of Veterans Affairs
  Financial Services Center
  P.O. Box 149971
  Austin TX 78714-9971


**B.18  PRECEDENCE**

The Terms and conditions included in this BPA apply to all purchases made pursuant to it.  In the event of an inconsistency between the provisions of this BPA and the Contractor's invoice, the provisions of this BPA will take precedence.

(End of Clause)

**Department of Veterans Affairs**  **BLANKET PURCHASE AGREEMENT**

## SECTION C - CLAUSES

### C.1  52.213-4 TERMS AND CONDITIONS - SIMPLIFIED ACQUISITIONS (OTHER THAN COMMERCIAL ITEMS) (JAN 2011)

(a) The Contractor shall comply with the following Federal Acquisition Regulation (FAR) clauses that are incorporated by reference:

(1) The clauses listed below implement provisions of law or Executive order:

(i) 52.222-3, Convict Labor (June 2003) (E.O. 11755).

(ii) 52.222-21, Prohibition of Segregated Facilities (Feb 1999) (E.O. 11246).

(iii) 52.222-26, Equal Opportunity (Mar 2007) (E.O. 11246).

(iv) 52.222-50, Combating Trafficking in Persons (Feb 2009) (22 U.S.C. 7104(g)).

(v) 52.225-13, Restrictions on Certain Foreign Purchases (June 2008) (E.o.s, proclamations, and statutes administered by the Office of Foreign Assets Control of the Department of the Treasury).

(vi) 52.233-3, Protest After Award (Aug 1996) (31 U.S.C. 3553).

(vii) 52.233-4, Applicable Law for Breach of Contract Claim (Oct 2004) (Pub. L. 108-77, 108-78).

(2) Listed below are additional clauses that apply:

(i) 52.204-10, Reporting Executive Compensation and First-Tier Subcontract Awards (JUL 2010) (Pub. L. 109-282) (31 U.S.C. 6101 note).

(ii) 52.232-1, Payments (Apr 1984).

(iii) 52.232-8, Discounts for Prompt Payment (Feb 2002).

(iv) 52.232-11, Extras (Apr 1984).

(v) 52.232-25, Prompt Payment (Oct 2008).

(vi) 52.233-1, Disputes (Jul 2002).

(vii) 52.244-6, Subcontracts for Commercial Items (JAN 2011).

(viii) 52.253-1, Computer Generated Forms (Jan 1991).

(b) The Contractor shall comply with the following FAR clauses, incorporated by reference, unless the circumstances do not apply:

**Department of Veterans Affairs**                    **BLANKET PURCHASE AGREEMENT**

(1) The clauses listed below implement provisions of law or Executive order:

(i) 52.222-19, Child Labor--Cooperation with Authorities and Remedies (JUL 2010) (E.O. 13126). (Applies to contracts for supplies exceeding the micro-purchase threshold.)

(ii) 52.222-20, Walsh-Healey Public Contracts Act (Oct 2010) (41 U.S.C. 35-45) (Applies to supply contracts over $15,000 in the United States, Puerto Rico, or the U.S. Virgin Islands).

(iii) 52.222-35, Equal Opportunity for Veterans (SEP 2010) (38 U.S.C. 4212) (Applies to contracts of $100,000 or more).

(iv) 52.222-36, Affirmative Action for Workers with Disabilities (Oct 2010) (29 U.S.C. 793). (Applies to contracts over $15,000, unless the work is to be performed outside the United States by employees recruited outside the United States.) (For purposes of this clause, United States includes the 50 States, the District of Columbia, Puerto Rico, the Northern Mariana Islands, American Samoa, Guam, the U.S. Virgin Islands, and Wake Island.)

(v) 52.222-37, Employment Reports on Veterans (SEP 2010) (38 U.S.C. 4212) (Applies to contracts of $100,000 or more).

(vi) 52.222-41, Service Contract Act of 1965 (Nov 2007) (41 U.S.C. 351, et seq.). (Applies to service contracts over $2,500 that are subject to the Service Contract Act and will be performed in the United States, District of Columbia, Puerto Rico, the Northern Mariana Islands, American Samoa, Guam, the U.S. Virgin Islands, Johnston Island, Wake Island, or the outer continental shelf lands).

(vii) 52.223-5, Pollution Prevention and Right-to-Know Information (Aug 2003) (E.O. 13148) (Applies to services performed on Federal facilities).

(viii) 52.223-15, Energy Efficiency in Energy-Consuming Products (DEC 2007) (42 U.S.C. 8259b) (Unless exempt pursuant to 23.204, applies to contracts when energy-consuming products listed in the ENERGY STAR Program or Federal Energy Management Program (FEMP) will be--

(A) Delivered;

(B) Acquired by the Contractor for use in performing services at a Federally-controlled facility;

(C) Furnished by the Contractor for use by the Government; or

(D) Specified in the design of a building or work, or incorporated during its construction, renovation, or maintenance.)

(ix) 52.225-1, Buy American Act--Supplies (FEB 2009) (41 U.S.C. 10a-10d) (Applies to contracts for supplies, and to contracts for services involving the furnishing of supplies, for use in the United States or its outlying areas, if the value of the supply contract or supply portion of a service contract exceeds the micro- purchase threshold and the acquisition--

(A) Is set aside for small business concerns; or

(B) Cannot be set aside for small business concerns (see 19.502-2), and does not exceed $25,000.)

**Page 17 of 20**

**Department of Veterans Affairs**          **BLANKET PURCHASE AGREEMENT**

(x) 52.232-33, Payment by Electronic Funds Transfer--Central Contractor Registration (Oct 2003). (Applies when the payment will be made by electronic funds transfer (EFT) and the payment office uses the Central Contractor Registration (CCR) database as its source of EFT information.)

(xi) 52.232-34, Payment by Electronic Funds Transfer--Other than Central Contractor Registration (May 1999). (Applies when the payment will be made by EFT and the payment office does not use the CCR database as its source of EFT information.)

(xii) 52.247-64, Preference for Privately Owned U.S.-Flag Commercial Vessels (Feb 2006) (46 U.S.C. Appx 1241). (Applies to supplies transported by ocean vessels (except for the types of subcontracts listed at 47.504(d).)

(2) Listed below are additional clauses that may apply:

(i) 52.209-6, Protecting the Government's Interest When Subcontracting with Contractors Debarred, Suspended, or Proposed for Debarment (DEC 2010) (Applies to contracts over $30,000). (Not applicable to subcontracts for the acquisition of commercially available off-the-shelf items).

(ii) 52.211-17, Delivery of Excess Quantities (Sept 1989) (Applies to fixed-price supplies).

(iii) 52.226-6, Promoting Excess Food Donation to Nonprofit Organizations. (MAR 2009)(Pub. L. 110-247)(Applies to contracts greater than $25,000 that provide for the provision, the service, or the sale of food in the United States.)

(iv) 52.247-29, F.o.b. Origin (Feb 2006) (Applies to supplies if delivery is f.o.b. origin).

(v) 52.247-34, F.o.b. Destination (Nov 1991) (Applies to supplies if delivery is f.o.b. destination).

(c) FAR 52.252-2, Clauses Incorporated by Reference (Feb 1998). This contract incorporates one or more clauses by reference, with the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available. Also, the full text of a clause may be accessed electronically at this/these address(es):

http://www.acquisition.gov/far/index.html http://www.va.gov/oamm/oa/ars/policyreg/vaar/index.cfm

(d) Inspection/Acceptance. The Contractor shall tender for acceptance only those items that conform to the requirements of this contract. The Government reserves the right to inspect or test any supplies or services that have been tendered for acceptance. The Government may require repair or replacement of nonconforming supplies or reperformance of nonconforming services at no increase in contract price. The Government must exercise its postacceptance rights--

(1) Within a reasonable period of time after the defect was discovered or should have been discovered; and

(2) Before any substantial change occurs in the condition of the item, unless the change is due to the defect in the item.

(e) Excusable delays. The Contractor shall be liable for default unless nonperformance is caused by an occurrence beyond the reasonable control of the Contractor and without its fault or negligence, such as acts of God or the public enemy, acts of the Government in either its sovereign or contractual capacity, fires, floods, epidemics, quarantine restrictions, strikes, unusually severe weather, and delays of common

**Page 18 of 20**

Department of Veterans Affairs          **BLANKET PURCHASE AGREEMENT**

carriers. The Contractor shall notify the Contracting Officer in writing as soon as it is reasonably possible after the commencement of any excusable delay, setting forth the full particulars in connection therewith, shall remedy such occurrence with all reasonable dispatch, and shall promptly give written notice to the Contracting Officer of the cessation of such occurrence.

(f) Termination for the Government's convenience. The Government reserves the right to terminate this contract, or any part hereof, for its sole convenience. In the event of such termination, the Contractor shall immediately stop all work hereunder and shall immediately cause any and all of its suppliers and subcontractors to cease work. Subject to the terms of this contract, the Contractor shall be paid a percentage of the contract price reflecting the percentage of the work performed prior to the notice of termination, plus reasonable charges that the Contractor can demonstrate to the satisfaction of the Government, using its standard record keeping system, have resulted from the termination. The Contractor shall not be required to comply with the cost accounting standards or contract cost principles for this purpose. This paragraph does not give the Government any right to audit the Contractor's records. The Contractor shall not be paid for any work performed or costs incurred that reasonably could have been avoided.

(g) Termination for cause. The Government may terminate this contract, or any part hereof, for cause in the event of any default by the Contractor, or if the Contractor fails to comply with any contract terms and conditions, or fails to provide the Government, upon request, with adequate assurances of future performance. In the event of termination for cause, the Government shall not be liable to the Contractor for any amount for supplies or services not accepted, and the Contractor shall be liable to the Government for any and all rights and remedies provided by law. If it is determined that the Government improperly terminated this contract for default, such termination shall be deemed a termination for convenience.

(h) Warranty. The Contractor warrants and implies that the items delivered hereunder are merchantable and fit for use for the particular purpose described in this contract.

(End of Clause)


## C.2  NOTICE LISTING CLAUSES INCORPORATED BY REFERENCE

The following clauses are hereby incorporated by reference (by Citation Number, Title, and Date) in accordance with the clause at FAR "52.252-2  CLAUSES INCORPORATED BY REFERENCE" contained in this document. FAR 52.252-2 contains the internet address for electronic access to the full text of a clause.

| NUMBER | TITLE | DATE |
|---|---|---|
| | FEDERAL ACQUISITION REGULATION (48 CFR Chapter 1) | |
| 52.222-42 | STATEMENT OF EQUIVALENT RATES FOR FEDERAL HIRES | MAY 1989 |
| 52.222-50 | COMBATING TRAFFICKING IN PERSONS | FEB 2009 |
| 52.223-18 | CONTRACTOR POLICY TO BAN TEXT MESSAGING WHILE DRIVING | SEP 2010 |
| 52.225-13 | RESTRICTIONS ON CERTAIN FOREIGN PURCHASES | JUN 2008 |
| 52.233-1 | DISPUTES | JUL 2002 |
| 52.233-3 | PROTEST AFTER AWARD | AUG 1996 |
| 52.233-4 | APPLICABLE LAW FOR BREACH OF | OCT 2004 |

**Department of Veterans Affairs**          **BLANKET PURCHASE AGREEMENT**

|            | CONTRACT CLAIM        |          |
|------------|-----------------------|----------|
| 52.243-1   | CHANGES--FIXED-PRICE  | AUG 1987 |
| 852.203-70 | COMMERCIAL ADVERTISING| JAN 2008 |
| 852.216-70 | ESTIMATED QUANTITIES  | APR 1984 |

| AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT | | BPA NO. VA248-BP-0218 | 1. CONTRACT ID CODE | PAGE 1 | OF 3 |
|---|---|---|---|---|---|

| 2. AMENDMENT/MODIFICATION NO. P00003 | 3. EFFECTIVE DATE 08-31-2012 | 4. REQUISITION/PURCHASE REQ. NO. | | 5. PROJECT NO. (If applicable) |
|---|---|---|---|---|
| | | NONE | | |

| 6. ISSUED BY                     CODE  0024 0E | 7. ADMINISTERED BY  (If other than Item 6)     CODE  0024 0E |
|---|---|
| US Department of Veterans Affairs<br>Veterans Health Administration<br>Service Area Organization (SAO) East<br>323 North Shore Drive, Suite 500<br>Pittsburgh PA 15212-5319 | US Department of Veterans Affairs<br>Veterans Health Administration<br>Service Area Organization (SAO) East<br>323 North Shore Drive, Suite 500<br>Pittsburgh PA 15212-5319 |

| 8. NAME AND ADDRESS OF CONTRACTOR   (No., street, county, State and ZIP Code) | (X) | 9A. AMENDMENT OF SOLICITATION NO. |
|---|---|---|
| GUARDIAN ANGELS MEDICAL SERVICE DOGS, INC.<br><br>3251 NE 180TH AVE<br><br>WILLISTON FL 326966812 | | |
| | | 9B. DATED (SEE ITEM 11) |
| | | 10A. MODIFICATION OF CONTRACT/ORDER NO. VA248-BP-0218 |
| CODE                          FACILITY CODE | X | 10B. DATED (SEE ITEM 13) 06-24-2011 |

**11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS**

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended.
Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods:
(a) By completing Items 8 and 15, and returning _____ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR AC-KNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

| 12. ACCOUNTING AND APPROPRIATION DATA   (If required) |
|---|

**13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS,**
**IT  MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.**

| (X) | |
|---|---|
| | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO:   (Specify authority)   THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. |
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES   (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b). |
| X | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF:   in accordance with FAR clause 52.212-4(m) |
| | D. OTHER (Specify type of modification and authority) |

**E. IMPORTANT:**  Contractor ☒ is not, ☐ is required to sign this document and return _____ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION   (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

This supplemental agreement terminates for default: BPA VA248-BP-0218, in its entirety, in accordance with FAR 52.212-4(m), and the cancellation clause in the BPA. This also includes any open delivery or task orders issued on the BPA.

Adherence to confidentiality and nondisclosure as listed in the BPA shall continue. Information gathered as a direct result of the performance of this BPA shall be considered confidential and shall not be disclosed without proper consent of the VA.

See Continuation Page

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER   (Type or print) | 16A. NAME AND TITLE OF CONTRACTING OFFICER   (Type or print)<br>Cheryl Homison<br>Contract Officer |
|---|---|
| 15B. CONTRACTOR/OFFEROR<br><br>(Signature of person authorized to sign)  15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA<br>BY _____  16C. DATE SIGNED<br>(Signature of Contracting Officer)    8/31/2012 |

| NSN 7540-01-152-8070<br>PREVIOUS EDITION NOT USABLE | STANDARD FORM 30   (REV. 10-83)<br>Prescribed by GSA - FAR (48 CFR) 53.243 |
|---|---|

EXHIBIT B

(1) Contract number: VA248-BP-0218; Dated: 06-24-2011

(2) The acts or omissions constituting the default (BPA, Sections C {Specific Mandatory Tasks and Associated Deliverables}, H {Confidentiality and Nondisclosure}, and E {Changes to Statement of Work/Modification of Contract})

A) Improper/inadequate Veterinary Care Program, including a lack of needed professional veterinary care and diagnosis [Section C, Tasks 3 and 4]:

  1) Pairing underweight dogs and at least one dog exhibiting diarrhea at the time of pairing;

  2) Pairing at least two dogs with clinical signs of hip dysplasia, another dog with radiographic evidence of hip dysplasia, and a lack of a hip dysplasia screening program to prevent premature retirement of service dogs;

  3) Pairing dogs with undiagnosed yet very serious potential hereditary problems such as a suspected coagulation disorder;

  4) Refusal to obtain timely veterinary care for dogs on the property with severe medical needs such as corneal lacerations and extensive ear damage due to bites by other dogs.

  5) Inadequate diagnosis of skin lesions, resulting in a failure to rule out potentially zoonotic agents in paired dogs.

  6) Lack of oversight by a licensed veterinarian in the veterinary medical program, including the parasite control program.

B) Pairing dogs prior to microchip placement. [Section C, Task 2]

C) Lack of a consistent and effective de-worming and parasite control program at Contractor facility, resulting in chronic zoonotic parasitic infections which are a threat to dogs and people. [Section C, Task 4]

D) Failure to provide healthy and trained service dogs in accordance with BPA, including the violation of the prohibition against placing dogs with known aggressive behavior toward people or other animals. [Section C, Task 3]

E) Violations of the confidentiality and nondisclosure provisions by allowing videography of veteran images in the study without VA approval. [Section H items 1, 2, and 4]

F) Pairing at VA expense before contract execution and during contract performance suspensions. [Section E]

(3) Guardian Angels Medical Service Dogs, Incorporated's right to proceed further under the contract (or a specified portion of the contract) is hereby terminated;

(4) The supplies and/or services terminated may be purchased against Guardian Angels Medical Service Dogs, Inc. account, and that Guardian Angels Medical Service Dogs, Inc. will be held liable for any excess costs, including those incurred by VA to return paired dogs to an acceptable state of health;

(5) Guardian Angels Medical Service Dogs, Incorporated's failure to perform under this BPA is not excusable, and this notice of termination constitutes as such a decision.  Accordingly, Guardian Angels Medical Service Dogs, Inc. has the right to appeal such decision under the Disputes clause;

(6) The Government reserves all rights and remedies provided by law or under the contract, in addition to charging excess costs; and

(7) This notice hereby constitutes a decision that Guardian Angels Medical Service Dogs, Inc. is in default as specified and that the contractor has the right to appeal under the Disputes clause.



# DAVIDOW LAW, P.A.

**Practice Areas**
- Business Litigation
- Personal Injury
- DUI & Criminal Defense

**Joseph A. Davidow**
975 6th Avenue South, Suite 200
Naples, FL 34102
Tel: (239) 465-0531
Fax: (239) 465-0530
jdavidow@davidowlaw.net

*"keeping the doors of the courthouse open"*

February 28, 2013

**VIA U.S. Certified Mail**
Cheryl Homison
Veterans Health Administration
U.S. Dept. of Veterans Affairs
Service Area Organization (SAO) East
323 North Shore Drive, Suite 500
Pittsburgh, P.A. 15212-5319

RE:   **Formal Dispute – BPA No. VA248-BP-0218**

Dear Ms. Homison:

Please be informed that the above addressed law firm represents Guardian Angels Medical Service Dogs, Inc., ("GA") with regard to its disputes and request for review and appeal of your decision in the attached **Exhibit A.**

Pursuant to FAR 52.233-1, GA is hereby making a formal demand against the United States Department of Veterans Affairs ("VA") over the contract ("Contract") attached herein and marked as **Exhibit B.** On December 21, 2013, GA sent a demand letter directly to the VA and has not received an answer or response. This letter is attached herein as though fully and specifically set out and marked as **Exhibit C.**

In your decision, you state that the Contract between GA and VA is terminated for cause pursuant to FAR 52.212-4(m). GA materially disagrees with this decision as it is unsupported by the Contract itself and the laws governing contracts similar in nature. None of the allegations set forth in **Exhibit A** rise to the level of a "default" as described in the Contract.

Since there was no default by GA, this Contract must be determined to have been terminated by VA pursuant to FAR 52.212-4(l)- termination for convenience. With regard to terminations for convenience the VA is obligated to pay a percentage of the contract price reflecting the percentage of work performed prior to the notice of termination, plus reasonable charges that have resulted and will continue to result from

*EXHIBIT C*

the termination. GA has calculated those costs to be one million forty-six thousand four hundred and seventy-four dollars and thirty cents ($1,046,474.30). The costs incurred by GA are attached herein and marked as **Exhibit D**.

GA hereby demands reimbursement for those costs in the amount of $1,046,474.30 dollars. In addition, GA certifies this claim pursuant to the 41 U.S.C § 7103(b) as attached herein and marked as **Exhibit E**. GA also hereby expressly reserves its right to seek resolution of this dispute before a Federal Circuit Court pursuant to 41 U.S.C. § 7104(b).

We anticipate your cooperation and response within the timeframe set forth by 41 U.S.C § 7103(d).

Sincerely,

Joseph A. Davidow, Esq.

cc      Government Accountability Office



VETERANS HEALTH ADMINISTRATION

SERVICE AREA OFFICE ★ *EAST*

March 21, 2013

Joseph A. Davidow, Esq.
Davidow Law, P.A.
975 6th Avenue South, Suite 200
Naples, FL 34102

RE: Response to "Formal Dispute – BPA No. VA248-BP-0218"

Mr. Davidow,

VA has received your claim dated February 28, 2013, referenced above on March 1, 2013. At this time VA is unable to reasonably evaluate or respond to your claim due to the lack of supporting documentation provided with the claim in reference to actual expenses incurred as alleged in Exhibit D.

The claimant does not present any documentation whatsoever that substantiates or supports its cost claims. Summaries of costs incurred without the supporting receipts, checks paid with supporting documents, and receipts for costs should have been included in its claim for VA to reasonably address it.

In accordance with FAR 33.207 and the Contractor Certification provided with the claim, please provide all expense documentation to support the claim at your earliest convenience. Once VA has received supporting documentation from the claimant, VA can then proceed with a review of the material and provide a response as required by the Federal Acquisition Regulation.

Further correspondence should be directed to the undersigned, and the Administrative Contract Officer, Paula Stankovic, at the SAO East Office.

Sincerely,

Cheryl Homison
Contracting Officer

cc: VHA/OGC

**323 North Shore Drive          Suite 500          Pittsburgh, PA 15212**

EXHIBIT D



VETERANS HEALTH ADMINISTRATION

**SERVICE AREA OFFICE · EAST**

May 3, 2013

Joseph A. Davidow, Esq.
Davidow Law, P.A.
975 6th Avenue South, Suite 200
Naples, FL 34102

RE: Response to Formal Dispute – BPA No. VA248-BP-0218

Mr. Davidow,

We received your Formal Dispute, dated February 28, 2013, on behalf of Guardian Angels Medical Service Dogs, Inc. (GAMSD) with regard to the BPA referenced above on March 1, 2013. As of the date of this letter, I have not received any response to my March 21, 2013, letter requesting documentation supporting your claim.

In any event, your Formal Dispute provides that GAMSD "materially disagrees" with my decision, dated August 31, 2012, terminating this BPA for cause and asserts a claim in the amount of $1,046,474.30.

As my August 31, 2012, decision set forth, GAMSD was in default, the rationale supporting the failure to perform was explicitly detailed in my decision, GAMSD's failure to perform was not excusable, and GAMSD's BPA, including any open delivery or task orders issued pursuant to the BPA, was terminated for cause. My August 31, 2012, decision stated:

> This notice hereby constitutes a decision that Guardian Angels Medical Service Dogs, Inc, is in default as specified and that the contractor has the right to appeal under the Disputes clause.

I have not and shall not reconsider that decision. As your February 28, 2013, correspondence also noted, you have the right to appeal my decision at the U.S. Court of Federal Claims pursuant to 41 U.S.C. § 7104(b).

Sincerely,

Cheryl Homison
Contracting Officer

cc: VHA/OGC

**323 North Shore Drive**          **Suite 500**          **Pittsburgh, PA 15212**

*EXHIBIT E*