IN THE UNITED STATES COURT OF FEDERAL CLAIMS

GUARDIAN ANGELS MEDICAL
SERVICE DOGS, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

Case No. 14-20C
Judge Coster Williams

## PLAINTIFF'S MOTION FOR RECONSIDERATION OF AUGUST 29, 2014 ORDER OF DISMISSAL

COMES NOW, the plaintiff, Guardian Angels Medical Service Dogs, Inc. ("Plaintiff"), by and through undersigned counsel, pursuant to Rule 59, Rules of United States Court of Federal Claims, or alternatively Rule 60, Rules of United States Court of Federal Claims, hereby files this Motion for Reconsideration of August 29, 2014 Order of Dismissal in favor of the defendant, The United States ("Defendant"), and respectfully requests this Honorable Court reconsider and reverse its decision granting Defendant's Motion to Dismiss and provide Defendant thirty (30) days to Answer the Complaint, and in support thereof would state the following:

### PROCEDURAL HISTORY

1.      On August 29, 2014, this Honorable Court entered an Order of Dismissal granting Defendant's Motion and subsequently entered a Judgment pursuant to said Order in favor of Defendant. Please see a copy of the Order of Dismissal and Judgment attached hereto as **Exhibits A & B, respectively.**

2.      On April 1, 2014, Defendant filed a Motion to Dismiss alleging the Court does not possess jurisdiction of the above-captioned matter because Plaintiff failed to file

its Complaint within twelve (12) months of receiving the Contracting Officer's decision terminating the contract for default.

3.      As indicated in the Court's August 29, 2014 Order, Plaintiff's contract with Defendant (the "Contract") incorporated F.A.R. 52.233-1, which provides "[a] claim by a Contractor **shall** be made in writing, and, unless otherwise stated in th[e] contract, submitted within 6 years after accrual of the claim to the Contracting Officer for a written decision." August 29, 2014 Order. (emphasis added).

### FACTS

4.      For the purposes of this Motion, as well as the issues at hand, it is important to point out the series of events leading up to the filing of the Complaint with this Court.

5.      On August 31, 2012, the Contracting Officer sent Plaintiff a letter terminating the Contracts between Plaintiff and Defendant ("Termination Letter"). Please see a copy of the Termination Letter attached hereto and incorporated herein as **Exhibit C.** The letter specifically states that the "agreement terminates for default".

6.      On February 28, 2013, Plaintiff sent the Contracting Officer a Formal Dispute Letter under F.A.R. 52.233-1 in regards to the Contracting Officer's August 31, 2012 Termination Letter. In addition, Plaintiff made a claim demanding payment for a percentage of the contract price for the work performed prior to the notice of termination and the reasonable charges incurred that have resulted from the termination of the contract for convenience. Please see the Formal Dispute Letter attached herein and marked as **Exhibit D**.

7.     On May 3, 2013, Plaintiff was in the process of putting together the materials for its response to the Contracting Officer's request for additional information, but before Plaintiff actually responded, the Contracting Officer sent Plaintiff a letter indicating that Plaintiff had not responded to the Contracting Officer's March 21, 2013 letter. However, at that time, Plaintiff was still in the process of gathering receipts and calculating damages to disclose to the Contracting Officer. Further, the Contracting Officer's May 3, 2013 letter indicated the Contracting Officer would not reconsider her August 31, 2012 decision. Please see the Contracting Officer's May 3, 2013 letter attached herein and marked as **Exhibit E**.

8.     On January 7, 2014, Plaintiff filed the Complaint in the present matter with the Court.

9.     Plaintiff respectfully requests this Court reconsider the August 29, 2014 Order, and vacate the Judgment in favor of Defendant.

<u>APPLICABLE LEGAL STANDARD</u>

10.     Rule 59, Rules of United States Court of Federal Claims governs Motion for Reconsideration. Said Rule provides three (3) bases upon which reconsideration may be granted:

(A)    for any reason for which a new trial has heretofore been granted in an action at law in federal court;

(B)    for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court; or

(C)    upon a showing of satisfactory evidence, cumulative or otherwise, that any fraud, wrong, or injustice has been done to the United States.

RCFC59(a)(1).

11.     Rule 60, Rules of United States Court of Federal Claims describes the forms of relief from a judgment or order: "[t]he court may correct a . . . mistake arising from oversight or omission whenever one is found in a judgment, order, or other party of the record . . . [o]n motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: . . . mistake inadvertence, surprise, or excusable neglect; . . . or . . . any other reason that justifies relief." RCFC 60(a)-(b).

12.     A motion for reconsideration must be supported "by a showing of exceptional circumstances justifying relief, based on manifest error of law or mistake of fact." *Cohen v. United States,* 98 Fed. Cl. 156, 160 (2011). A motion for reconsideration should be considered with "exceptional care." *Fru-Con Constr. Corp. v. United States,* 44 Fed. Cl. 298, 300 (1999) (citations omitted). In order to prevail on a motion for reconsideration, a movant must show an intervening change in controlling law; evidence not previously available has become available; or the motion is necessary to prevent injustice. *Prati v. United States,* 82 Fed. Cl. 373, 376 (2008). Plaintiff asserts that they will be able to demonstrate all three of the aforementioned grounds warranting reconsideration and reversal of the Court's August 29, 2014 Order of Dismissal.

## LEGAL ANALYSIS

13.     Plaintiff respectfully moves this Honorable Court to reconsider the August 29, 2014 Order of Dismissal and vacate the August 29, 2014 Judgment in favor of Defendant for three (3) reasons: (1) the August 29, 2014 Order is inconsistent with the procedural requirements outlined by this very Court, and Your Honor, Judge Mary Ellen Coster Williams, in *Delaware Cornerstone Builders, Inc. v. United States,* No. 10-588C

(Fed. Cl. 2014); (2) the August 29, 2014 Order is contrary to this Court's holding in *Arono, Inc. v. United States,* No. 98-704C (Fed. Cl. 2001); and (3) the August 29, 2014 Order violates Plaintiff's statutory and constitutional rights to due process.

> 1.      *The August 29, 2014 Order Is Inconsistent With The*
> *Procedural Requirements Outlined By Your Honor In*
> *Delaware Cornerstone Builders, Inc. v. United States, No. 10-588C (Fed. Cl. 2014)*

14.     Plaintiff asserts that reconsideration of the August 29, 2014 Order is necessary pursuant to *Delaware Cornerstone Builders, Inc. v. United States. Delaware Cornerstone Builders, Inc.* which constitutes an intervening change in law, evidence not previously available that has subsequently become available *and* the application of said case to the present matter is necessary to prevent injustice. See *Prati,* 82 Fed. Cl. 373, 376 (2008).

15.     In the August 29, 2014 Order, this Court stated that Plaintiff herein failed to file its complaint within 12 months of receiving the Contracting Officer's August 31, 2012 decision to terminate the contract for default. In explaining the alleged untimely nature of Plaintiff's Complaint, the Court stated that "[c]ontrary to Plaintiff's misconception, it was not required to file a certified claim with the Contracting Officer prior to filing in this Court to appeal its default termination." August 29, 2014 Order.[1]

16.     Nevertheless, a contrary position was reached by Your Honor in *Delaware Cornerstone Builders, Inc.* In the *Delaware Cornerstone Builders, Inc.* case, Your Honor found that after the assigned Contracting Officer's death, the plaintiff, DCB,

---

[1] Plaintiff is aware that Your Honor has cited *Educators* for the principle that the Termination Letter is the triggering letter and date upon which the twelve (12) month timeframe for Section 7104 begins to run. It is important to note, however, the language used there and the language required by the Plaintiff's Contract and F.A.R. provisions. In the *Educators* case, the operative language of the contract at issue contained the permissible term "may" in reference to filing a claim with a contracting officer. Contrarily, the F.A.R. provisions in Plaintiff's Contract contains the mandatory term "shall," which requires Plaintiff to file a claim with a Contracting Officer as a prerequisite to filing with this Court.

communicated with another contracting officer, a staff attorney, and even the Chief of Contracting. However, "[DCB] never sent any of them a claim, even though these VA officials repeatedly advised DCB's counsel that Plaintiff needed to submit a formal written claim." *Id.*

17.    Your Honor in *Delaware Cornerstone Builders, Inc.* recognized the necessity of making a claim to a contracting officer. "Moreover, the statutory requirement that a contractor submit a claim is important, as the contractor's claim triggers both the running of interest and the time period for the contracting officer's final decision." *Id.*

18.    Plaintiff asserts that pursuant to *Prati v. United States,* 82 Fed. Cl. 373, 376 (2008), the decision in *Delaware Cornerstone Builders, Inc. v. United States* constitutes both a change in intervening law and evidence not previously available to this Court as it was decided on July 24, 2014. Thus, the *Delaware Cornerstone Builders* case was decided after Plaintiff filed their Response in Opposition to Defendant's Motion to Dismiss and while the Parties were awaiting Your Honor's Order on Defendant's Motion to Dismiss.

19.    Imperatively, both *Delaware Cornerstone Builders'* contract and Plaintiff's Contract are controlled by contractual provisions requiring a claim be submitted to a contracting officer prior to filing an action with this Court.[2]

---

[2] See Footnote 4 of the August 29, 2014 Order of Dismissal ("The BPA incorporated by reference Federal Acquisition Regulation ("FAR") 52.233-1(d)(1), which states that '[a] claim by a Contractor shall be made in writing, and, unless otherwise stated in th[e] contract, submitted within 6 years after the accrual of the claim to the Contracting Officer for a written decision." Compl. Ex. A. at 19 of 20. See also *Delaware Cornerstone Builders, Inc. v. United States,* No. 10-588C (Fed. Cl. 2014) (Footnote 7: "F.A.R. requires that a claim be submitted to a contracting officer within six years of the claim's accrual.") Plaintiff submits that the Court in *Educators* did not want to dismiss that plaintiff requiring it to suffer the most severe punishment. Rather it carved an earlier exception for when a plaintiff in a similar circumstance can or may come back before the Court without going to the Contracting Officer first. This procedure, however, is by no means required, which is why the Court didn't use the language "must" or "shall."

20.     As additional support for Plaintiff's position, it must be recognized that Plaintiff, just as DCB, was statutorily required to make such a claim. "[E]ach claim by a contractor against the Federal Government relating to a contract and each claim by the Federal Government against a contractor relating to a contract *shall* be submitted within 6 years after the accrual of the claim." 41 U.S.C. § 7103(a)(4)(A). (emphasis added). "A contractor shall file any action under paragraph (1) or (2) within 12 months from the date of receipt of a contracting officer's decision under section 7103 of this title." 41 U.S.C. § 7104(b)(3).

21.     Plaintiff asserts that this Honorable Court's August 29, 2014 Order seemingly punishes Plaintiff for following the applicable statutory authority of 41 U.S.C. 7103, as well as the F.A.R. contractual obligations recognized by this Court as applicable to Plaintiff's Contract, which are similar to the F.A.R. provisions in *Delaware Cornerstone Builders*. Ironically, Your Honor in *Delaware Cornerstone Builders* punished DCB for doing what it is now telling Plaintiff it should have done, file with this Court within twelve (12) months of the August 31, 2012 Termination Letter. It is imperative to note, however, that Plaintiff had not made any claims until it sent a Formal Dispute Letter on February 28, 2013. Had Plaintiff gone directly to Your Honor prior to making its Formal Dispute Letter on February 28, 2013, Plaintiff would be sadly in the same predicament as DCB.

22.     Furthermore, it was not until the Contracting Officer's Letter on May 3, 2013, that Plaintiff's rights under Section 7103(a)(4)(A) were terminated, thereby triggering the twelve (12) month statute of limitations under Section 7104(b)(3). Thus,

Plaintiff had a deadline of May 2, 2014, to file a complaint. Plaintiff satisfied this deadline when the Complaint in the above-captioned case was filed on January 7, 2014.

23.     The nature of the August 29, 2014 Order in overlooking the changes in the controlling law set out in *Delaware Cornerstone Builders*, the fact that said decision was not previously available to the Court, and the necessity in preventing an injustice to Plaintiff based on the application of *Delaware Cornerstone Builders* requires granting the present Motion for Reconsideration.

24.     Accordingly, Plaintiff respectfully requests this Honorable Court reconsider its August 29, 2014 Order of Dismissal and enter an Order denying the Motion to Dismiss, vacating the Judgment in favor of Defendant, and providing Defendant thirty (30) days to provide an Answer to the Complaint.

>    2.    *The August 29, 2014 Order Is Contrary To This Court's Holding*
>          *In Arono, Inc. v. United States, No. 98-704C (Fed. Cl. 2001)*

25.     Plaintiff asserts that reconsideration of the August 29, 2014 Order is necessary pursuant to *Arono, Inc. v. United States,* No. 98-704C (Fed. Cl. 2001). The *Arono, Inc.* case constitutes evidence not previously available that has subsequently become available *and* the application of said case to the present matter is necessary to prevent injustice. See *Prati,* 82 Fed. Cl. 373, 376 (2008).

26.     In analyzing the present Motion for Reconsideration, the holding in *Arono, Inc. v. United States,* No. 98-704C (Fed. Cl. 2001) cannot be ignored given its striking similarity in light of the applicable law and facts in relation to the present matter.

27.     In *Arono, Inc.,* the United States asserted the court lacked jurisdiction because Arono, Inc.'s Complaint was filed on September 3, 1998, which it argued was more than twelve months after the contracting officer issued her final decision

terminating the lease for default. *Arono, Inc.,* No. 98-704C (Fed. Cl. 2001). However, Arono, Inc. argued that the contracting officer reconsidered her February 3, 1997 decision; thus suspending the finality of the decision until either October 27, 1997, or January 12, 1998, based on two letters Arono, Inc. received from the contracting officer.

The Court recognized that "[w]here a plaintiff timely submits a request for reconsideration, the time for appeal under the CDA does not commence until the disposition of the request for reconsideration because such a request suspends the finality of the decision pending a ruling on the application . . ." *Id.*; *Vepco of Sarasota, Inc. v. United States*, 26 Cl. Ct. 639, 645 (1992), 6 F.3d 786 (Fed. Cir. 1993) (internal citations omitted) (quoting *Precision Piping, Inc. v. United States,* 230 Ct. Cl. 741, 743 (1982) (quoting *Dayley v. United States,* 169 Ct. Cl. 305, 309 (1965))).

The United States subsequently argued that pursuant to *Educators Assocs., Inc. v. United States,* 41 Fed. Cl. 811, 813 (1998), a contracting officer's reaffirmation of a final decision does not constitute reconsideration of that decision. *Arono, Inc.,* No. 98-704C (Fed. Cl. 2001). The Court disagreed and noted that, unlike *Educators,* the contracting officer acknowledged and reviewed Arono, Inc.'s requests for reconsideration of the February 3, 1997 final decision. Thus, the Court stated "[w]hile the October 27, 1997 letter indicates that the Contracting Officer was considering plaintiff's request, the January 12, 1998 letter demonstrates that the Contracting Officer came to a definitive conclusion in the matter to reaffirm her February 3, 1997 decision to cease rent, effective a date certain." *Id.* Therefore, the Court determined that Arono, Inc. submitted its claim to the court on September 3, 1998, within a twelve-month period following the contracting officer's later and final January 12, 1998 letter. *Id.*

28.    In applying *Arono, Inc.* to the present matter, the Court will recognize that reconsideration should be granted. Under *Arono, Inc.,* the Court should have determined that it was the Contracting Officer's second letter of May 3, 2013, that actually began the twelve month tolling period pursuant to Section 7104.

29.    *Arono, Inc.*, after receiving the Contracting Officer's August 31, 2012 letter, Plaintiff sent the Contracting Officer a Formal Dispute Letter in regards to the Termination Letter. In that letter, Plaintiff made its initial claim demanding payment for a percentage of the contract price for the work performed prior to the notice of termination and the reasonable charges incurred that have resulted from the Contracting Officer's actual termination for convenience.

30.    As the Contracting Officer did in *Arono, Inc.,* on March 21, 2013, Plaintiff received a response from the Contracting Officer to the Formal Dispute Letter requesting that Plaintiff provide all expense documentation supporting its claim at its earliest convenience. Thus, Plaintiff asserts said conduct indicates the Contracting Officer acknowledged and was in the process of reviewing Plaintiff's Dispute Letter or claim.

31.    Your Honor has even acknowledged the communication between the Contracting Officer and Plaintiff in the August 29, 2014 Order: "[i]n a letter dated March 21, 2013, the Contracting Officer requested that Plaintiff provide documentation supporting a termination for convenience, explaining that '[o]nce VA ha[d] received supporting documentation from [Plaintiff], VA [could] then proceed with a review of the material and provide a response as required by the Federal Acquisition Regulation.'" August 29, 2014 Order.

32.     However, while Plaintiff was in the process of putting together the materials for its response, but before it actually responded, the Contracting Officer sent Plaintiff a letter indicating that Plaintiff had not responded to the Contracting Officer's March 21, 2013 letter. Further, the May 3, 2013 letter indicated the Contracting Officer would not reconsider her August 31, 2012 decision, which is exactly the same as the Contracting Officer in *Arono, Inc.*

33.     Therefore, pursuant to *Arono, Inc.*, and the precedent cited therein, the twelve (12) month statute of limitations, in our case, was tolled while the Contracting Officer was reconsidering the August 31, 2012 Letter. As such, Plaintiff asserts it was not until the Contracting Officer's Letter on May 3, 2013, that Plaintiff's rights under Section 7103(a)(4)(A) were terminated, thereby triggering the twelve (12) month statute of limitations under Section 7104(b)(3). Accordingly, Plaintiff had a deadline of May 2, 2014, to file a complaint, which Plaintiff satisfied when the Complaint in the above-captioned case was filed on January 7, 2014.

34.     In light of the aforementioned analysis pursuant to *Arono, Inc.,* No. 98-704C (Fed. Cl. 2001), Plaintiff submits that pursuant to RFCP 59, the Court mistakenly concluded that August 31, 2012, triggered the twelve (12) months statute of limitations. Accordingly, as the appropriate remedy Plaintiff respectfully requests this Honorable Court reconsider its August 29, 2014 Order of Dismissal and enter an Order denying the Motion to Dismiss, vacating the Judgment in favor of Defendant, and providing Defendant thirty (30) days to provide an Answer to the Complaint.

> 3.     *The August 29, 2014 Order Violates*
> *Plaintiff's Statutory And Constitutional Rights*

35.     Plaintiff asserts the analysis articulated in the August 29, 2014 Order essentially bars Plaintiff's statutory and constitutional rights. As such, reconsideration of the August 29, 2014 Order is necessary to prevent an injustice from befalling Plaintiff. See *Prati,* 82 Fed. Cl. 373, 376 (2008).

36.     Section 7103 unambiguously sets out that: "each claim by a contractor against the Federal Government relating to a contract and each claim by the Federal Government against a contractor relating to a contract shall be submitted within 6 years after the accrual of the claim." 41 U.S.C. § 7103(a)(4)(A). Section 7104 provides that "[a] contractor shall file any action under paragraph (1) or (2) within 12 months from the date of receipt of a contracting officer's decision under section 7103 of this title." 41 U.S.C. § 7104.

37.     It must be understood that Plaintiff's Contract included the operative provisions of F.A.R. 52.233-1(d)(1). F.A.R. 52.233-1(d)(1), provides "[a] claim by the Contractor **shall** be made in writing, and, unless otherwise stated in this contract, submitted within 6 years after accrual of the claim to the Contracting Officer for a written decision." (emphasis added). Thus, Plaintiff was **required** to make a claim to a Contracting Officer prior to filing a complaint.

38.     It is undisputed that Plaintiff filed a timely claim pursuant to F.A.R. 52.233-1(d)(1) and Section 7103. Upon receipt of the Contracting Officer's August 31, 2012 Termination Letter, Plaintiff sent the Contracting Officer a Formal Dispute Letter on February 28, 2013, making its initial claim contesting termination for cause. The Contracting Officer, acknowledging the Formal Dispute Letter and upon consideration of said letter, then requested several documents from Plaintiffs on March 21, 2013.

However, on May 3, 2013, while Plaintiff was gathering the requested documents, the Contracting Officer advised Plaintiff that she would not reconsider the previous decision. Thus, Plaintiff's Complaint, which was filed January 7, 2014, was within the permissible twelve (12) month timeframe pursuant to Section 7104.

39.     However, the statutory analysis set out in the August 29, 2014 Order by this Court seemingly contradicts itself in favor of barring Plaintiff of due process or really any relief whatsoever.

40.     The August 29, 2014 Order accurately cites and agrees with Plaintiff that Plaintiff's Contract includes the language of F.A.R. 52.233-1(d)(1), which requires that *prior to filing a complaint*, Plaintiff file a claim within 6 years after the accrual of the claim. Furthermore, said Order cites that, pursuant to Section 7104, Plaintiff is required to file an action within 12 months of the date of receipt of the contracting officer's opinion.

41.     However, the Court then proceeds to determine that the twelve (12) month statute of limitations begins to run from the date of the Termination Letter no matter what. This conclusion is directly in contrast to the analysis previously set out in *Arono, Inc.*, which provided that upon the submission of a timely request for reconsideration to the Contracting Officer, the time for appeal under the CDA does not commence until the disposition of the request for reconsideration because such a request suspends the finality of the decision.

42.     Notably, the Court's August 29, 2014 Order states that pursuant to *Educators Associates, Inc. v. United States*, 41 Fed. Cl. 811 (1998), Plaintiff was not

required to submit a certified claim with a Contracting Officer prior to filing its

Complaint in this Court.[3]

43.    However, the Court overlooks the statutory requirement that Plaintiff

**must** submit a claim to the Contracting Officer as explained in *Kenney Orthopedic, LLC*

*v. United States,* No. 08-0003C (Fed. Cl. 2008). In *Kenney Orthopedic, LLC*, the Court

stated "Congress, however, requires that a government contractor must submit any other

claim arising under a contract in writing to the relevant CO for a decision **as a**

**jurisdictional prerequisite** to filing a complaint in the United States Court of Federal

Claims." *Id.* (emphasis added). See 41 U.S.C. § 605(a) ("All claims by a contractor

against the government relating to a contract shall be in writing and shall be submitted to

a contracting officer for a decision."); see also *Greenhill Reforestation v. United States,*

39 Fed. Cl. 683, 685 (1997) ("The requirement in the CDA that claims 'shall be in

writing and submitted to the contracting officer for a decision,' has been construed as a

jurisdictional prerequisite to proceeding in this court.") (citation omitted).

44.    Therefore, pursuant to *Kenney Orthopedic, LLC,* Plaintiff was required to

file a claim with a Contracting Officer as a jurisdictional prerequisite to filing an action in

this Court. See *Kellogg Brown & Root Services, Inc.,* No. 13-169C (Fed. Cl. 2014)

("Both the presentment requirement and the six-year limitations period for the

submission of CDA claims are deemed to be jurisdictional requirements for the litigation

of CDA claims in this court.); see also *Arctic Slope Native Ass'n v. Sebelius*, 583 F.3d

785, 793 (Fed. Cir. 2009) (stating that "the timely submission of a claim to a contracting

officer is a necessary predicate to the exercise of jurisdiction by a court or board of

contract appeals over a contract dispute governed by the CDA"). Thus, Plaintiff avers

---

[3] See Footnote 1, p. 5.

that this Court should reverse its August 29, 2014 Order to prevent Plaintiff from suffering a procedural injustice.

45.    Additionally, the Court's August 29, 2014 Order notes that Plaintiff's Response in Opposition to Defendant's Motion to Dismiss cited *Uniglobe General Trading & Contracting Co., W.L.L. v. United States,* 115 Fed. Cl. 494 (2014). However, the Court determined "*Uniglobe* is inapposite as that decision addressed a contractor's claim, not a Government claim like default termination." August 29, 2014 Order.

46.    Plaintiff is a contractor and brought a contractor's claim pursuant to Section 7103 and Section 7104. This is not a Government claim. Accordingly, the Court misunderstood the analysis set out originally in Plaintiff's Response to Defendant's Motion to Dismiss and then misapplied the application of *Uniglobe* in its August 29, 2014 Order.[4] Furthermore, in the case of *Palafox Street Associates, L.P. v. United States,* No. 13-247C (Fed. Cl. 2014), this Court made clear that regardless of whether it is the government or a contractor that makes a claim to a contracting officer, either claiming party must wait for a final decision prior to pursuing an appeal. *Palafox Street Associates, L.P.,* No. 13-247C (Fed. Cl. 2014) ("Whether a claim is made by a contractor or the government, the CDA requires that a contracting officer issue a final decision on the claim before it can be appealed.").

47.    Finally, Plaintiff asserts that the statutory requirement of Section 7103 which required it to submit a claim to the Contracting Officer must be read together with the language of Section 7104 providing that upon receipt of a Contracting Officer's final decision, a contractor has twelve months to file an action with this Court. This is not a

---

[4] Even in the event the Court determines that the termination in the present case was a Government claim, *Arono, Inc.* stands for the proposition that the twelve (12) month statute of limitations was tolled while the Contracting Officer was reconsidering the determination made in the August 31, 2012 Termination Letter.

novel approach, but instead a cardinal rule of statutory construction and interpretation, which the US Supreme Court has consistently recognized. For example, in *United Sav. Assn. of Tex. v. Timbers of Inwood Forest Associates, Ltd.*, 484 US 365 (1988), Justice Scalia stated "[s]tatutory construction . . . is a holistic endeavor. A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes its meaning clear, or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." *Id.* at 371.

48.     Accordingly, in order to enforce and give the full effect to the provisions of both Sections 7103 and 7104, the Court must interpret said provisions together to stand for the proposition that because Plaintiff's contract required compliance with Section 7103, Plaintiff was obligated to wait to receive a decision pursuant to Section 7103 prior to filing a Complaint pursuant to Section 7104. See *Palafox Street Associates, L.P. v. United States,* No. 13-247C (Fed. Cl. 2014) ("Whether a claim is made by a contractor or the government, the CDA requires that a contracting officer issue a final decision on the claim before it can be appealed."); see also *Sharmon Co. v. United States,* 2 F.3d 1564, 1568 (Fed. Cir. 1993) ("Under the CDA, a final decision by a contracting officer on a claim . . . is a jurisdictional prerequisite to further legal action thereon."). This is, in fact, exactly what Your Honor said in *Delaware Cornerstone Builders.*

49.     The necessity in receiving a decision from a Contracting Officer prior to filing an action stands for the principle that a contractor cannot be before two different judges at the same time. See *Nat'l Neighbors, Inc. v. United States*, 839 F.2d 1539, 1542 (Fed. Cir. 1988) ("Once a contractor makes a binding election under the Election

Doctrine to appeal a contracting officer's adverse decision to the appropriate board of contract appeals, that election must stand and the contractor can no longer pursue its claim in the alternate forum.").

50.     Thus, it is clear that on August 31, 2012, Plaintiff had not even made the statutory claim required. The statutorily required claim was made on February 28, 2013 and Plaintiff had no other choice but to wait for a final determination from the Contracting Officer before filing with this Court.

51.     Had Plaintiff filed any action in this Court prior to making a claim with the Contracting Officer, Plaintiff would have suffered a dismissal as in *Delaware Cornerstone Builders* and *Nat'l Neighbors, Inc.* As such, this Court's current interpretation of Section 7103 and Section 7104 offers Plaintiff Morton's Fork. In effect, Plaintiff has no means for a redress of grievances because had Plaintiff filed with this Court on September 1, 2012,[5] the Court would have dismissed the case as in *Delaware Cornerstone Builders* and *Nat'l Neighbors, Inc.* To the contrary, in the present matter, Plaintiff has done the opposite and filed with the Contracting Officer and then the Court, yet it still suffered the same result of dismissal.

52.     The Court's August 29, 2014 Order of Dismissal granting Defendant's Motion creates an injustice to Plaintiff and deprives it of its most basic statutory and constitutional rights. Therefore, in order to ameliorate and prevent any further injustice to Plaintiff, this Court must reverse the August 29, 2014 Order of Dismissal, vacate the Judgment in favor of Defendant, and provide Defendant thirty (30) days to file an Answer to the Complaint.

---

[5] One day after the initial Termination Letter from the Contracting Officer on August 31, 2012, but before any actual claims or disputes were made with the Contracting Officer.

Respectfully submitted,


s/ JOSEPH A. DAVIDOW
Joseph A. Davidow
Attorney for the Plaintiff
Florida Bar No. 66356
WILLIS & DAVIDOW, L.L.C.
851 5th Avenue N., Suite 301
Naples, Florida 34102
(239) 465-0531

# In the United States Court of Federal Claims

## No. 14-20C
### (Filed: August 29, 2014)

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * | | |
| | * | |
| **GUARDIAN ANGELS MEDICAL** | * | |
| **SERVICE DOGS, INC.,** | * | |
| | * | **Contracts Disputes Act, 41 U.S.C.** |
| **Plaintiff,** | * | **§ 7104 (b); Government Claim;** |
| | * | **Failure to Appeal Default** |
| **v.** | * | **Termination Within 12 months.** |
| | * | |
| **THE UNITED STATES,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * * * * * | | |

_Joseph A. Davidow_, Davidow Law, P.A., 975 6th Avenue South, Suite 200, Naples, FL 34105, for Plaintiff.

_Stuart F. Delery_, _Robert E. Kirschman, Jr._, _Deborah A. Bynum_, _Robert C. Bigler_, United States Department of Justice, Civil Division, Commercial Litigation Branch, P.O. Box 480, Ben Franklin Station, Washington, D.C. 20044, for Defendant.

---

## MEMORANDUM OPINION AND ORDER OF DISMISSAL

---

**WILLIAMS**, Judge.

This Contract Disputes Act case comes before the Court on Defendant's motion to dismiss the complaint for lack of subject-matter jurisdiction. Because Plaintiff did not appeal the Contracting Officer's default termination to this Court within 12 months of receipt of the decision, the action is time-barred.

### Background[1]

On June 26, 2011, Plaintiff, Guardian Angels Medical Service Dogs, Inc., entered into a firm fixed-price blanket purchase agreement ("BPA"), No. VA248-BP-0218, with the Department of Veteran Affairs ("VA"). Compl. ¶ 5, Ex. A. Under the BPA, Plaintiff was to "provide service dogs to veterans suffering from post-traumatic stress disorder and the VA

---

[1] This background is derived from the complaint and the appendix to Defendant's motion to dismiss.

*EXHIBIT A*

would cover the cost of the service dogs." Id. at ¶ 7, Ex. A at 2 of 3, 13 of 20.  The parties modified the BPA on August 5, 2011, to increase the number of dogs to be provided, and again on June 18, 2012, to adjust the cost schedule.  Id. at Ex. B.

On July 5, 2012, the VA issued Delivery Order No. 508D27128 under the BPA for delivery of 10 service dogs.  Id.  On August 1, 2012, the VA Contracting Officer, Cheryl Homison, instructed Plaintiff to suspend work on the contract "because of questions raised about services" that Plaintiff provided.  Def.'s Mot. 2 (citing Def.'s App. A30).  The Contracting Officer issued Plaintiff a Stop Work Order on August 9, 2012, followed by a modification terminating the contract for default on August 31, 2012.  Id. (citing Def.'s App. A31); Compl. Ex. C.[2]

In addition to outlining the "acts or omissions" that constituted Plaintiff's default, the modification read in pertinent part:

> (5) Guardian Angels Medical Service Dogs, Incorporated's failure to perform under this BPA is not excusable, and this notice of termination constitutes . . . [the contracting officer's decision].  Accordingly, Guardian Angels Medical Services Dogs, Inc. has the right to appeal [this] decision under the Disputes clause;
>
> (6) The Government reserves all rights and remedies provided by law or under the contract, in addition to charging excess costs; and
>
> (7) This notice hereby constitutes a decision that Guardian Angels Medical Service Dogs, Inc. is in default as specified and that the contractor has the right to appeal such decision under the Disputes clause.

Id. at 2-3.[3]

The BPA's referenced Disputes clause incorporated by reference FAR 52.233-1.  Compl. Ex. A at 19 of 20.  FAR 52.233-1(f) provides that "The Contracting Officer's decision shall be final unless the Contractor appeals or files suit as provided in 41 U.S.C. chapter 71."  FAR 52.233-1(f).  41 U.S.C. § 7104(b) states:

> (1) In General - Except as provided in paragraph (2), and in lieu of appealing the decision of a contracting officer under section 7103 of this title to an agency board, a contractor may bring an action directly on the claim in the United States Court of Federal Claims, notwithstanding any contract provision, regulation, or rule of law to the contrary.

***

---

[2]  The Contracting Officer terminated the BPA and all orders issued for default.

[3]  Plaintiff does not allege when it received this modification.

2

(3) Time for filing.-A contractor shall file any action under paragraph (1) or (2) within 12 months from the date of receipt of a contracting officer's decision under section 7103 of this title.

41 U.S.C. § 7104(b)(1)-(3).

In a letter dated December 21, 2012, addressed to Dr. Sunil Sen-Gupta at the VA's Rehabilitation Research & Development Office, Plaintiff argued that the default termination was unjustified and that the termination should be converted to a termination for convenience. Def.'s App. A32. On February 28, 2013, Plaintiff sent the Contracting Officer a letter disputing Defendant's default termination, claiming that Defendant should have terminated the contract for convenience and paid Plaintiff for work performed. Compl. Ex. D.

In a letter dated March 21, 2013, the Contracting Officer requested that Plaintiff provide documentation supporting a termination for convenience, explaining that "[o]nce VA ha[d] received supporting documentation from [Plaintiff], VA [could] then proceed with a review of the material and provide a response as required by the Federal Acquisition Regulation." Id. at Ex. E. Plaintiff apparently failed to respond to this letter.

In a letter to Plaintiff dated May 3, 2013, the Contracting Officer stated:

We received your Formal Dispute, dated February 28, 2013, on behalf of Guardian Angels Medical Service Dogs, Inc. (GAMSD) with regard to the BPA referenced above on March 1, 2013. As of the date of this letter, I have not received any response to my March 21, 2013, letter requesting documentation supporting your claim.

In any event, your Formal Dispute provides that GAMSD "materially disagrees" with my decision, dated August 31, 2012, terminating this BPA for cause and asserts a claim in the amount of $1,046,474.30.

As my August 31, 2012, decision set forth, GAMSD was in default, the rationale supporting the failure to perform was explicitly detailed in my decision, GAMSD's failure to perform was not excusable, and GAMSD's BPA, including any open delivery or task orders issued pursuant to the BPA, was terminated for cause. My August 31, 2012 decision stated:

This notice hereby constitutes a decision that Guardian Angels Medical Service Dogs, Inc. is in default as specified and that the contractor has the right to appeal under the Disputes clause.

I have not and shall not reconsider that decision. As your February 28, 2013, correspondence also noted, you have the right to appeal my decision at the U.S. Court of Federal Claims pursuant to 41 U.S.C. § 7104(b).

Id. at Ex. F.

On January 7, 2014, Plaintiff filed a complaint in this Court, challenging Defendant's decision to terminate the contract for default and seeking $1,046,474.30 for termination for convenience damages. Id. at 9.  On April 1, 2014, Defendant filed a motion to dismiss, arguing that the Court lacks subject-matter jurisdiction because Plaintiff failed to file its Complaint within 12 months of receiving the contracting officer's final decision to terminate for default.

## **Discussion**

The Tucker Act grants the Court jurisdiction to hear claims "against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages not sounding in tort." 28 U.S.C. § 1491(a)(1) (2012).  In "reviewing a motion to dismiss for lack of subject matter jurisdiction, a court accepts only uncontroverted factual allegations as true for purposes of the motion," viewing the facts in the light most favorable to the plaintiff. Banks v. United States, 741 F.3d 1268, 1277 (Fed. Cir. 2014) (citing Gibbs v. Buck, 307 U.S. 66, 72 (1939)); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 747 (Fed. Cir. 1988).  The party seeking jurisdiction bears the burden of establishing jurisdiction by a preponderance of the evidence. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Reynolds, 846 F.2d at 748 (citations omitted).  If a plaintiff does not establish subject-matter jurisdiction, the Court must dismiss the plaintiff's complaint. Rule 12(h)(3); see also Tindle v. United States, 56 Fed. Cl. 337, 341 (2003).

Section 1491(a)(2) provides that "[t]he Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 7104(b)(1) of title 41, including a dispute concerning termination of a contract . . . ." Thus, a contracting officer's decision to terminate for default is a Government claim over which this Court has jurisdiction. See Malone v. United States, 849 F.2d 1441, 1443 (Fed. Cir. 1988); K & S Constr. v. United States, 35 Fed. Cl. 270, 275-76 (1996), aff'd, 121 F.3d 727 (Fed. Cir. 1997).

Here, Defendant argues that the Court lacks jurisdiction over Plaintiff's claim because Plaintiff failed to file its complaint within 12 months of receiving the Contracting Officer's August 31, 2012 decision to terminate the contract for default.  Plaintiff counters that its February 28, 2013 letter to the Contracting Officer was a timely "claim," and as such, the 12-month statutory period did not begin to run until May 3, 2013, the date of the Contracting Officer's letter reiterating her August 31, 2012 decision to terminate for default.  Citing Uniglobe General Trading & Contracting Co., W.L.L. v. United States, 115 Fed. Cl. 494 (2014), Plaintiff argues that this Court should examine when Plaintiff submitted a written claim to the Contracting Officer and received a final decision from the Contracting Officer, and whether Plaintiff filed this suit within one year of receiving the final decision. See Pl.'s Opp'n 5-6.[4]

---

[4] Plaintiff cites FAR 52.233-1(d)(1) to argue that it was required to submit a certified claim to the Contracting Officer prior to filing the complaint in this Court.  The BPA incorporated by reference Federal Acquisition Regulation ("FAR") 52.233-1(d)(1), which states that "[a] claim by the Contractor shall be made in writing, and, unless otherwise stated in th[e] contract, submitted within 6 years after accrual of the claim to the Contracting Officer for a written decision." Compl. Ex. A at 19 of 20.

Plaintiff's argument evinces its fundamental misunderstanding of the nature of a termination for default under the procedural regime established by the Contract Disputes Act. A default termination is a <u>Government</u> claim that is immediately appealable to this Court. <u>Malone</u>, 849 F.2d at 1443 (citations omitted). Thus, to challenge a contracting officer's decision to terminate for default under the CDA, a contractor must file an action in this Court within 12 months from the date of receipt of the contracting officer's decision. <u>Educators Assocs., Inc. v. United States</u>, 41 Fed. Cl. 811, 814 (1998) (citing <u>Malone</u>, 849 F.2d at 1443 and <u>K & S Constr.</u>, 35 Fed. Cl. at 275-76 ("[A] default termination notice labeled as a final decision fulfills the statutory requirements of the Contracts Dispute Act and triggers the twelve month running of time in which plaintiff may file claim with this court.").[5]   Plaintiff was on notice of this procedure for challenging a default termination. The modification terminating the contract for default expressly stated in two places, paragraphs 5 and 7, that Plaintiff "has the right to appeal this [or such] decision under the Disputes Clause." The Disputes Clause in the BPA incorporated FAR 52.233-1, providing that the decision to terminate was final "unless the contractor appeals" as provided in the CDA, 41 U.S.C. chapter 71. The CDA in turn expressly states that a contractor may bring an action directly in this Court within "12 months from the date of receipt of a contracting officer's decision." 41 U.S.C. § 7104(b).

As the termination for default referenced, the CDA required Plaintiff to file its suit within 12 months from the date of receipt of the Contracting Officer's August 31, 2012 decision. Plaintiff does not indicate when it received this letter, but Plaintiff acknowledged the default termination in its December 21, 2012 letter to Dr. Sen-Gupta. Because Plaintiff received the Contracting Officer's termination for default decision no later than December 21, 2012, Plaintiff was at least required to file its appeal in this Court within 12 months of December 21, 2012. <u>Educators</u>, 41 Fed. Cl. at 814 (citation omitted). Plaintiff did not file its Complaint until January 7, 2014, beyond the 12-month statutory period.

While Plaintiff sought to challenge the default termination in its February 28, 2013 letter to the VA's contracting officer, this letter had no impact on Plaintiff's pursuit of its CDA appeal rights in this Court. Although this letter was characterized as a "formal dispute" and a "claim," it did not alter the requirement that Plaintiff appeal the termination decision. Indeed, the Contracting Officer's May 3, 2013 letter to Plaintiff responding to its February 28, 2013 letter reiterated that Plaintiff had the right to appeal the August 31, 2012 termination for default to this Court as stated in the termination decision. Contrary to Plaintiff's misconception, it was not required to file a certified claim with the Contracting Officer prior to filing in this Court to appeal its default termination. As the Court recognized in <u>Educators Associates, Inc. v. United States</u>, when challenging a default termination, the filing of a certified claim with the contracting officer is "irrelevant for the purpose of counting the twelve-month statutory period." 41 Fed. Cl. at 814.

---

<u>Uniglobe</u> is inapposite as that decision addressed a contractor's claim, not a Government claim like default termination.

[5] There is no indication in the record either that the Government sought reprocurement costs or that Plaintiff filed a claim regarding such costs.

### Conclusion

Defendant's motion to dismiss is **GRANTED.** The Clerk of Court is directed to dismiss the complaint for lack of jurisdiction.

<u>s/ Mary Ellen Coster Williams</u>
**MARY ELLEN COSTER WILLIAMS**
**Judge**

# In the United States Court of Federal Claims

### No. 14-20 C

**GUARDIAN ANGELS MEDICAL
SERVICE DOGS, INC.**

                                                          **JUDGMENT**

    **v.**

**THE UNITED STATES**

Pursuant to the court's Memorandum Opinion and Order, filed August 29, 2014, granting defendant's motion to dismiss,

IT IS ORDERED AND ADJUDGED this date, pursuant to Rule 58, that the complaint is dismissed, for lack of jurisdiction.

                                        Hazel C. Keahey
                                        Clerk of Court

**August 29, 2014**                By:    s/ Debra L. Samler

                                          Deputy Clerk

<u>NOTE</u>: As to appeal, 60 days from this date, see RCFC 58.1, re number of copies and listing of <u>all plaintiffs</u>.  Filing fee is $505.00.

*EXHIBIT B*

| AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT | BPA NO. VA248-BP-0218 | | 1. CONTRACT ID CODE | PAGE 1 | OF 3 |
|---|---|---|---|---|---|

| 2. AMENDMENT/MODIFICATION NO. P00003 | 3. EFFECTIVE DATE 08-31-2012 | 4. REQUISITION/PURCHASE REQ. NO. | 5. PROJECT NO.(if applicable) NONE |
|---|---|---|---|

| 6. ISSUED BY                                   CODE | 00240E | 7. ADMINISTERED BY (if other than Item 6)        CODE | 00240E |
|---|---|---|---|

6. ISSUED BY

US Department of Veterans Affairs
Veterans Health Administration
Service Area Organization (SAO) East
323 North Shore Drive, Suite 500
Pittsburgh PA 15212-5319

7. ADMINISTERED BY (if other than Item 6)

US Department of Veterans Affairs
Veterans Health Administration
Service Area Organization (SAO) East
323 North Shore Drive, Suite 500
Pittsburgh PA 15212-5319

8. NAME AND ADDRESS OF CONTRACTOR    (No., street, county, State and ZIP Code)

GUARDIAN ANGELS MEDICAL SERVICE DOGS, INC.

3251 NE 180TH AVE

WILLISTON FL 326966812

| (X) | 9A. AMENDMENT OF SOLICITATION NO. |
|---|---|
| | 9B. DATED (SEE ITEM 11) |
| | 10A. MODIFICATION OF CONTRACT/ORDER NO. VA248-BP-0218 |
| X | 10B. DATED (SEE ITEM 13) 06-24-2011 |

CODE                          FACILITY CODE

## 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended.

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods: (a) By completing Items 8 and 15, and returning _____ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA   (if required)

## 13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS, IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

| 00 | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO:   (Specify authority)   THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. |
|---|---|
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES   (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b). |
| X | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF:   in accordance with FAR clause 52.212-4 (m) |
| | D. OTHER (Specify type of modification and authority) |

E. IMPORTANT:   Contractor [X] is not, ☐ is required to sign this document and return _____ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION   (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

This supplemental agreement terminates for default: BPA VA248-BP-0218, in its entirety, in accordance with FAR 52.212-4 (m), and the cancellation clause in the BPA. This also includes any open delivery or task orders issued on the BPA.

Adherence to confidentiality and nondisclosure as listed in the BPA shall continue. Information gathered as a direct result of the performance of this BPA shall be considered confidential and shall not be disclosed without proper consent of the VA.

See Continuation Page

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER   (Type or print) | 16A. NAME AND TITLE OF CONTRACTING OFFICER   (Type or print) Cheryl Homison Contract Officer |
|---|---|
| 15B. CONTRACTOR/OFFEROR

(Signature of person authorized to sign) | 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA

BY

(Signature of Contracting Officer) | 16C. DATE SIGNED 8/31/2012 |

NSN 7540-01-152-8070
PREVIOUS EDITION NOT USABLE

EXHIBIT C

(1) Contract number: VA248-BP-0218; Dated: 06-24-2011

(2) The acts or omissions constituting the default (BPA, Sections C {Specific Mandatory Tasks and Associated Deliverables}, H {Confidentiality and Nondisclosure}, and E {Changes to Statement of Work/Modification of Contract})

A) Improper/inadequate Veterinary Care Program, including a lack of needed professional veterinary care and diagnosis [Section C, Tasks 3 and 4]:

1) Pairing underweight dogs and at least one dog exhibiting diarrhea at the time of pairing;

2) Pairing at least two dogs with clinical signs of hip dysplasia, another dog with radiographic evidence of hip dysplasia, and a lack of a hip dysplasia screening program to prevent premature retirement of service dogs;

3) Pairing dogs with undiagnosed yet very serious potential hereditary problems such as a suspected coagulation disorder;

4) Refusal to obtain timely veterinary care for dogs on the property with severe medical needs such as corneal lacerations and extensive ear damage due to bites by other dogs.

5) Inadequate diagnosis of skin lesions, resulting in a failure to rule out potentially zoonotic agents in paired dogs.

6) Lack of oversight by a licensed veterinarian in the veterinary medical program, including the parasite control program.

B) Pairing dogs prior to microchip placement. [Section C, Task 2]

C) Lack of a consistent and effective de-worming and parasite control program at Contractor facility, resulting in chronic zoonotic parasitic infections which are a threat to dogs and people. [Section C, Task 4]

D) Failure to provide healthy and trained service dogs in accordance with BPA, including the violation of the prohibition against placing dogs with known aggressive behavior toward people or other animals. [Section C, Task 3]

E) Violations of the confidentiality and nondisclosure provisions by allowing videography of veteran images in the study without VA approval. [Section H items 1, 2, and 4]

F) Pairing at VA expense before contract execution and during contract performance suspensions. [Section E]

(3) Guardian Angels Medical Service Dogs, Incorporated's right to proceed further under the contract (or a specified portion of the contract) is hereby terminated;

(4) The supplies and/or services terminated may be purchased against Guardian Angels Medical Service Dogs, Inc. account, and that Guardian Angels Medical Service Dogs, Inc. will be held liable for any excess costs, including those incurred by VA to return paired dogs to an acceptable state of health;

(5) Guardian Angels Medical Service Dogs, Incorporated's failure to perform under this BPA is not excusable, and this notice of termination constitutes as such a decision. Accordingly, Guardian Angels Medical Service Dogs, Inc. has the right to appeal such decision under the Disputes clause;

(6) The Government reserves all rights and remedies provided by law or under the contract, in addition to charging excess costs; and

(7) This notice hereby constitutes a decision that Guardian Angels Medical Service Dogs, Inc. is in default as specified and that the contractor has the right to appeal under the Disputes clause.

# DAVIDOW LAW, P.A.

**DL**

Practice Areas
- Business Litigation
- Personal Injury
- DUI & Criminal Defense

Joseph A. Davidow
975 6th Avenue South, Suite 200
Naples, FL 34102
Tel: (239) 465-0531
Fax: (239) 465-0530
jdavidow@davidowlaw.net

*"keeping the doors of the courthouse open"*

February 28, 2013

**VIA U.S. Certified Mail**
Cheryl Homison
Veterans Health Administration
U.S. Dept. of Veterans Affairs
Service Area Organization (SAO) East
323 North Shore Drive, Suite 500
Pittsburgh, P.A. 15212-5319

   RE: **Formal Dispute – BPA No. VA248-BP-0218**

Dear Ms. Homison:

Please be informed that the above addressed law firm represents Guardian Angels Medical Service Dogs, Inc., ("GA") with regard to its disputes and request for review and appeal of your decision in the attached **Exhibit A.**

Pursuant to FAR 52.233-1, GA is hereby making a formal demand against the United States Department of Veterans Affairs ("VA") over the contract ("Contract") attached herein and marked as **Exhibit B**. On December 21, 2013, GA sent a demand letter directly to the VA and has not received an answer or response. This letter is attached herein as though fully and specifically set out and marked as **Exhibit C.**

In your decision, you state that the Contract between GA and VA is terminated for cause pursuant to FAR 52.212-4(m). GA materially disagrees with this decision as it is unsupported by the Contract itself and the laws governing contracts similar in nature. None of the allegations set forth in **Exhibit A** rise to the level of a "default" as described in the Contract.

Since there was no default by GA, this Contract must be determined to have been terminated by VA pursuant to FAR 52.212-4(l)- termination for convenience. With regard to terminations for convenience the VA is obligated to pay a percentage of the contract price reflecting the percentage of work performed prior to the notice of termination, plus reasonable charges that have resulted and will continue to result from

EXHIBIT D

the termination. GA has calculated those costs to be one million forty-six thousand four hundred and seventy-four dollars and thirty cents ($1,046,474.30). The costs incurred by GA are attached herein and marked as **Exhibit D**.

GA hereby demands reimbursement for those costs in the amount of $1,046,474.30 dollars. In addition, GA certifies this claim pursuant to the 41 U.S.C § 7103(b) as attached herein and marked as **Exhibit E**. GA also hereby expressly reserves its right to seek resolution of this dispute before a Federal Circuit Court pursuant to 41 U.S.C. § 7104(b).

We anticipate your cooperation and response within the timeframe set forth by 41 U.S.C § 7103(d).

Sincerely,

Joseph A. Davidow, Esq.

cc      Government Accountability Office



VETERANS HEALTH ADMINISTRATION

# SAO EAST

### SERVICE AREA OFFICE *EAST*

May 3, 2013

Joseph A. Davidow, Esq.
Davidow Law, P.A.
975 6ᵗʰ Avenue South, Suite 200
Naples, FL 34102

RE: Response to Formal Dispute – BPA No. VA248-BP-0218

Mr. Davidow,

We received your Formal Dispute, dated February 28, 2013, on behalf of Guardian Angels Medical Service Dogs, Inc. (GAMSD) with regard to the BPA referenced above on March 1, 2013. As of the date of this letter, I have not received any response to my March 21, 2013, letter requesting documentation supporting your claim.

In any event, your Formal Dispute provides that GAMSD "materially disagrees" with my decision, dated August 31, 2012, terminating this BPA for cause and asserts a claim in the amount of $1,046,474.30.

As my August 31, 2012, decision set forth, GAMSD was in default, the rationale supporting the failure to perform was explicitly detailed in my decision, GAMSD's failure to perform was not excusable, and GAMSD's BPA, including any open delivery or task orders issued pursuant to the BPA, was terminated for cause. My August 31, 2012, decision stated:

> This notice hereby constitutes a decision that Guardian Angels Medical Service Dogs, Inc, is in default as specified and that the contractor has the right to appeal under the Disputes clause.

I have not and shall not reconsider that decision. As your February 28, 2013, correspondence also noted, you have the right to appeal my decision at the U.S. Court of Federal Claims pursuant to 41 U.S.C. § 7104(b).

Sincerely,

Cheryl Homison
Contracting Officer

cc: VHA/OGC

**323 North Shore Drive**          **Suite 500**          **Pittsburgh, PA 15212**

*EXHIBIT E*